**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT HUNTINGTON**

**CHRISTOPHER FAIN; ZACHARY**
**MARTELL; and BRIAN MCNEMAR,**
**individually and on behalf of all others similarly**
**situated,**

**Plaintiffs,**

**vs.**                                                    **Case No.:  3:20-cv-00740**
                                                           **Judge Robert C. Chambers**

**WILLIAM CROUCH, in his official capacity as**
**Cabinet Secretary of the West Virginia**
**Department of Health and Human Resources;**
**CYNTHIA BEANE, in her official capacity as**
**Commissioner for the West Virginia Bureau for**
**Medical Services; WEST VIRGINIA**
**DEPARTMENT OF HEALTH AND HUMAN**
**RESOURCES, BUREAU FOR MEDICAL**
**SERVICES; TED CHEATHAM, in his official**
**capacity as Director of the West Virginia Public**
**Employees Insurance Agency; and THE**
**HEALTH PLAN OF WEST VIRGINIA, INC.,**

**Defendants.**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TED CHEATHAM'S**
**MOTION TO DISMISS THE COMPLAINT**

**I.        Introduction**

Defendant Ted Cheatham, in his official capacity as Director of the West Virginia Public

Employees Insurance Agency ("this Defendant"), by and through counsel, Perry W. Oxley, David

E. Rich, Eric D. Salyers, Christopher K. Weed, and the law firm of Oxley Rich Sammons, PLLC,

hereby submits the Memorandum of Law in support of his Motion to Dismiss the Complaint.

**II.       Statement of Facts**

Plaintiffs filed their Complaint against this Defendant on November 12, 2020. *See* ECF 1.

Therein, the Plaintiffs allege that this Defendant deprived the Plaintiffs of equal protection under

the law pursuant to the Fourteenth Amendment of the United States Constitution and claim this Defendant also violated Section 1557 of the Patient Protection and Affordable Care Act. *Id*. at 27-35. Plaintiff Christopher Fain is enrolled in Medicaid and does not assert any claims against this Defendant. *Id*. at 4. Only Plaintiffs McNemar and Martell allege claims against this Defendant.

This Defendant is the Director of the West Virginia Public Employees Insurance Agency ("PEIA"). *Id*. at 6. Plaintiff McNemar is a state employee at Mildred Mitchell-Bateman Hospital in Huntington, West Virginia. *Id.* at 21. Plaintiff Martell is married to Plaintiff McNemar and is enrolled as an eligible dependent on Plaintiff McNemar's health insurance. *Id.*  Plaintiffs Martell and McNemar are enrolled in an insurance plan offered by The Health Plan of West Virginia, Inc. ("Health Plan"), and is titled HMO Plan A. *Id.* at 7, 21. According to Plaintiffs' Complaint, though no language is cited from the policy, the HMO Plan A includes "a blanket exclusion of coverage for gender-confirming care." *See* ECF 1 at 17-18. Plaintiffs assert this blanket exclusion is discriminatory. *Id*. at 18.

The Health Plan is a 501(c)(4) non-profit entity established separate and apart from the PEIA. *Id.* at 7. Unlike the Health Plan, Defendant Cheatham is the Director of the PEIA, a state agency created by statute. *See* W. Va. Code §§5-16-1 et seq. They are two different entities with a business relationship in which the Health Plan offers multiple health insurance options to state employees through PEIA. *See* HMO Managed Care Agreement between West Virginia Public Employees Insurance Agency and The Health Plan, attached hereto as **Exhibit A**. [1] The HMO Managed Care Agreement between West Virginia Public Employees Insurance Agency and The Health Plan (the "Agreement") states: "PEIA and the HMO enter into this agreement as

---

[1] This Defendant offers Exhibit A solely under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See Al Shimari v. CACI Premier Tech., Inc*., 840 F.3d 147, 154 (4th Cir. 2016) ("The district court is authorized to resolve factual disputes in evaluating its subject matter jurisdiction."). The addendums to Exhibit A are omitted for the sake of brevity but available upon request.

independent contractors. Nothing in this Agreement or otherwise is intended to create or shall be deemed or construed to created any other relationship between the parties, including one of employment, agency, partnership, or joint venture." *See* Exhibit A, pg. 5, ¶ 22. Further, the Agreement provides:

> "Neither PEIA nor the HMO shall be liable to third parties for acts or omissions of the other party hereto or its agent. The responsibility for determining and providing appropriate health care services in a competent manner to enrollees shall remain with the HMO and the enrollees; treating physicians and other health care professionals and facilities, not PEIA."

*See* Exhibit A, pg. 5-6, ¶ 24. The Health Plan determines what the Health Plan covers, not PEIA.

Plaintiff Martell asserts that he is a man even though his biological sex at birth was female. *See* ECF 1 at 21. Allegedly, Plaintiff Martell struggled with his gender throughout his life, and at age 30 "came to understand himself as a transgender." *Id*. Since that time, Plaintiff Martell asserts that he has been diagnosed with "gender dysphoria." *Id*. As a result, Plaintiff Martell changed his legal name on February 19, 2019, and updated the gender marker on his West Virginia Driver's License and Social Security documents to reflect his decision to identify as a male. *Id*. at 22. Plaintiff Martell claims that he wears a "binder" to hide the presence of his female appearing breasts. *Id*. However, Plaintiff Martell also states that he is unable to wear this binder all the time because it causes him discomfort. *Id*.

Plaintiff Martell began counseling sessions with his mental health provider in April of 2018. *Id*. at 23. On or about November 13, 2018, the mental health provider recommended that Plaintiff Martell begin "hormone replacement therapy." *Id*. According to the Complaint, Plaintiff Martell was notified on February 13, 2019, that the hormone treatment had been denied by ***The Health Plan***. *Id*. After that notification was received, Plaintiffs McNemar and Martell allegedly began paying-out-of-pocket for Plaintiff Martell's testosterone prescriptions. *Id*. Additionally,

3

Plaintiff Martell stated in the Complaint that he requires a bilateral mastectomy because it is "medically necessary" to treat his gender dysphoria and "eliminate the need for the ongoing use of a binder." *Id*. at 22. Unfortunately, it is not clear from Plaintiffs' Complaint whether the bilateral mastectomy was ever officially requested by Plaintiff Martell and denied by this Defendant or any other Defendant. *Id*. at 22-23.

Moreover, the language of the policy cited in Plaintiff McNemar and Martell's Complaint also includes a provision that sets out an administrative process that allows enrollees under the policy to challenge determinations of coverage. *Id*. at 21; *See also* W. Va. Code R. 151-1 Attachment A at pg. 148. There is no mention of this provision in the Complaint, and Plaintiffs McNemar and Martell included no allegations in the Complaint that they availed themselves to the administrative remedies provided for therein. *See* ECF 1.

As a result of The Health Plan's denial of coverage, the Complaint asserts that both Plaintiff McNemar and Martell have suffered emotional distress, stigmatization, humiliation, loss of dignity, and out-of-pocket expenses. *Id*. at 24. Plaintiff McNemar also asserts that he was discriminated against in terms of the compensation he receives for his employment because the insurance policy at issue did not cover his transgender spouse to the same extent a cisgender spouse would have been covered. *Id*. Further, the Complaint asserts that the language of HMO Plan A is discriminatory, and any interest the government could assert in defense of such language fails to meet the "heightened scrutiny" that is demanded when a government policy discriminates based on sex or transgender status. *Id*. at 31. Therefore, Plaintiffs McNemar and Martell brought suit against this Defendant, and others, for an alleged violation of the Fourteenth Amendment to the U.S. Constitution and Section 1557 of the Patient Protection and Affordable Care Act. *Id*. at 27-35.

### III.    Legal Standard

This Defendant's Motion arises under both Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Under Rule 12(b)(1), a party may move for lack of subject matter jurisdiction. When subject matter jurisdiction is challenged in a 12(b)(1) motion to dismiss, the burden of proving subject matter jurisdiction is on the plaintiff. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Under a Rule 12(b)(1) motion to dismiss, a defendant has two different avenues of attack. *Id*. First, the defendant may assert that the complaint fails to "allege facts upon which subject matter jurisdiction can be based." *Id*. Alternatively, a defendant may argue that the "jurisdictional allegations in the complaint were not true." *Id*. In this second scenario, "the district court is to regard the pleadings' allegations as mere evidence on the issue and may consider evidence outside the pleadings *without* converting the proceeding to one for summary judgment." *Id*.; *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (emphasis added).

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss for failure to state a claim upon which relief may be granted. A complaint must contain sufficient facts, if accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007). Moreover, when analyzing a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986)). A complaint fails to state a claim when, viewing the factual

allegations as true and in a light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).

Determining whether the complaint states a facially plausible claim for relief is a "context-specific task that requires the court to draw upon its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).  While a court must accept the material facts alleged in the complaint as true, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

## IV.  Argument

### A.  The claims against this Defendant should be dismissed pursuant to Rule 12(b)(1) because Plaintiff McNemar and Plaintiff Martell have failed to establish subject matter jurisdiction as they have no standing to bring their claims against this Defendant.

"Article III of the U.S. Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017) (citing U.S. Const. Art. III, § 2). "'One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue.'" *Id*. (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)). "Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant challenging standing may move to dismiss an action for lack of subject-matter jurisdiction." *Brown v. R&B Corp. of Va.*, 267 F. Supp. 3d 691, 695 (E.D. Va. 2017).

Importantly, the party invoking federal jurisdiction bears the burden of establishing that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016) (citing

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992));

*Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 320 (4th Cir. 2002). For the purpose

of the instant litigation, Plaintiffs have failed to demonstrate elements two and three of Article III

standing.

### i. Plaintiffs' alleged injuries are not fairly traceable to the conduct of Defendant Cheatham.

To establish an injury is fairly traceable to the conduct of Defendant Cheatham, the

Plaintiffs must show that there is a "causal connection between the injury and the conduct

complained of" and that the injury was not the result of the "*independent action of some third*

*party*." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351

(1992); *Doe v. Obama*, 631 F.3d 157, 161 (4th Cir. 2011). (emphasis added). "Thus, a plaintiff

must show that the actual or threatened injury complained of in the case is 'fairly . . . traceable to

the challenged action of the defendant,'" not some other individual or entity. *Crutchfield v. United*

*States Army Corps of Eng'rs*, 230 F. Supp. 2d 687, 694 (E.D. Va. 2002) (quoting *Lujan*, 504 U.S.

at 560).

Here, Defendant Health Plan drafted, created, and offered the insurance policy at issue, not

Defendant Cheatham. As the Agreement and the regulations dealing with the PEIA make clear,

"the managed care plans are non-governmental entities wholly separate and distinct from the

PEIA..." *See* W. Va. Code R.  151-1 Attachment A at pg. 143. While participants in the HMO Plan

A are technically regarded as PEIA members, PEIA merely facilities the relationship between the

insureds and the Health Plan. The specific plan that Plaintiffs are insured through is created by a

totally different entity than the PEIA. *Id*. In other words, no causal connection between Plaintiffs'

alleged injuries and the conduct of Defendant Cheatham exists.

Instead, the true cause of Plaintiffs' alleged injuries is the alleged language in the HMO Plan A offered by the Health Plan, not PEIA. The regulations suggest that the decision to allow other entities to offer HMO plans to state employees is done through a competitive bidding process. *Id*. at 37-38. This means that Defendant Cheatham and PEIA do not contract with outside entities on the basis of what is covered under their policies. Instead, PEIA permits entities like the Health Plan to offer insurance based on a competitive economic bidding system that focuses on the cost of the plans. Plaintiffs McNemar and Martell are enrolled under HMO Plan A that is offered by Defendant Health Plan. Defendant Cheatham controls the PEIA policies, while Defendant Health Plan develops the HMO Plan A independently as a way to provide government employees additional insurance options. *See* Exhibit A. The Health Plan is an independent contractor of PEIA. Thus, Plaintiffs' injuries are not fairly traceable to Defendant Cheatham's actions because he does not control the language of the policy at issue.

Moreover, to be clear, PEIA and the Health Plan are different and distinct entities. Specifically, the Health Plan was established "through provisions under the federal Health Maintenance Organization Act, 42 U.S.C. §300, et seq." The Plaintiff's Complaint alleges that the Health Plan is a 501(c)(4) non-profit organization, which is a designation that falls under 26 U.S.C.A. § 501. PEIA is not the type of entity that can qualify as a 501(c)(4). As a result, PEIA cannot statutorily be a 501(c)(4) organization. Any injury caused by the language of the Health Plan's HMO policy cannot be fairly traced back to the specific actions of Defendant Cheatham, a director of a state agency created by the legislature that controls the language of its specific policies.

**ii. Plaintiffs' alleged injuries cannot be redressed by a decision from this Court regarding Defendant Cheatham because he is not responsible for the drafting or issuance of the insurance policy at issue.**

The Supreme Court of the United States has previously stated that redressability requires a plaintiff to show that it is likely, rather than merely speculative, that a favorable decision will redress the injury at issue. *Lujan*, 504 U.S. at 560. Stated another way, "the redressability requirement ensures that a plaintiff personally would benefit in a tangible way from the court's intervention*." Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 162 (4th Cir. 2000).

In the case at bar, Plaintiffs McNemar and Martell have requested relief against Defendant Cheatham. However, even if the Court unequivocally grants the relief sought against Defendant Cheatham, the Court's decision to do so would not provide Plaintiffs with the tangible benefit they seek. Specifically, if this Court were to hold that the language of the HMO Plan A is discriminatory and grant an injunction as a result, the PEIA insurance plans will not be affected. The HMO Plan A is the work product and policy of Defendant Health Plan—not Defendant Cheatham and the PEIA.

Because the alleged injury of discriminatory policy language cannot be addressed by a judgment against Defendant Cheatham and PEIA, the Plaintiffs cannot establish that they would benefit in a tangible way from receiving any of the requested relief from Defendant Cheatham. Accordingly, Defendant Cheatham is entitled to the dismissal of the claims levied against him because Plaintiffs lack Article III standing to assert those claims in the first place.

**B. Because the government policy is substantially related to sufficiently important governmental interests, the Plaintiffs have failed to make allegations sufficient to state a claim for violation of the Fourteenth Amendment.**

Pursuant to the Fourteenth Amendment to the United States Constitution, "no state shall… deny any person within its jurisdiction the equal protection of the laws." "Put another way, state action is unconstitutional when it creates 'arbitrary or irrational' distinctions between classes of people out of 'a bare ... desire to harm a politically unpopular group.'" *Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586, 607 (4th Cir. 2020), *as amended* (Aug. 28, 2020). The level of scrutiny a court uses to analyze a distinction between classes of people, depends on the class of individuals being targeted by the policy distinction. *Id.* Specifically, when it comes to policy distinctions based on sex or transgender status, intermediate or "heightened scrutiny" is used to determine whether the classification survives the prohibition against discrimination within the U.S. Constitution. *Id.*; *Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1747, 207 L. Ed. 2d 218 (2020).

Under the heightened scrutiny standard, the government policy at issue must be, "substantially related to a sufficiently important governmental interest." *Id.*; *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 441, 105 S. Ct. 3249, 3255, 87 L. Ed. 2d 313 (1985). The *Grimm* case is the leading case in the Fourth Circuit that applied heightened scrutiny to a government policy that made classifications based on sex and transgender status. 972 F.3d at 586. In *Grimm*, a transgender student was forced to use the restroom that reflected the individual's biological sex rather than the sex to which the individual identified. *Id.* at 599. In defense of the discriminatory policy, the school board asserted that the policy was justified because it protected the privacy rights of the students who went into the bathrooms that were not transgender. In *Grimm*, the Fourth Circuit held that the protection of privacy rights was not an important enough interest, and even if it was, the protection of privacy rights was not substantially related to the

restroom policy's goal. *Id*. at 614. As a result, the court held that the policy could not survive the protections guaranteed to the transgender student under the Fourteenth Amendment. *Id*. at 614-15.

Here, the interests at stake are much different than those in *Grimm* and are not only important, but substantially related to the government policy as well. First, the language of the HMO A plan offered by Defendant Health Plan is meant to guarantee the health and safety of the enrollees. Coverage for procedures or treatment is determined, in part, by whether or not the subject treatment or procedure is approved by the Food and Drug Administration ("FDA"). *See* W. Va. Code R. 151-1 Attachment A at pg. 7. In fact, experimental procedures and treatment cannot be covered under the plans offered by the PEIA. *Id*. at pg. 92. In other words, even if PEIA drafted the language of HMO Plan A, the plan could not cover anything that has been deemed unsafe by the FDA or has not been officially approved by the FDA to protect its enrollees from unsafe or experimental treatments.

Importantly, other courts agree that the health and safety of citizens is an important government interest. The Supreme Court of the United States held that the government "may properly assert important interests in safeguarding health." *Roe v. Wade*, 410 U.S. 113, 154, 93 S.Ct. 705, 727, 35 L.Ed.2d 147 (1973); *Ne. Women's Ctr., Inc. v. McMonagle*, 939 F.2d 57, 63 (3d Cir. 1991). "We repeat… the State does have an important interest in preserving the health of … a resident of the State or a non-resident who seeks medical consultation and treatment there." *Roe v. Wade,* 410 U.S. 113, 162, 93 S. Ct. 705, 731, 35 L. Ed. 2d 147. "Clearly, the protection of public health and safety represents an important function of state and local governments. *Craig v. Boren*, 429 U.S. 190, 199–200, 97 S. Ct. 451, 458, 50 L. Ed. 2d 397 (1976).

Moreover, the insurance plan is meant to maintain the medical standards of physicians and other entities that accept the insurance of its enrollees. While the medical standards of the

physicians in the state are related to the health and safety of those enrolled, this particular interest is focused more on certifying that the enrollees will not only receive a procedure or treatment that is safe, but that the physician will perform the procedure pursuant to the proper and generally accepted medical standards. Simply put, it is one thing to simply receive a treatment that is FDA approved, but much more important to receive treatment that is FDA approved in a manner that also conforms to the appropriate medical standards. Thus, the reliance on FDA approval before having an insurance plan cover procedures and treatment is intended to meet the public policy of upholding and promoting the State's standard of health care that is provided to its employees.

This interest has also been recognized as important by the United States Supreme Court. *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 369, 122 S. Ct. 1497, 1505, 152 L. Ed. 2d 563 (2002). When discussing the FDA's drug approval process, the Supreme Court has stated, "the effectiveness and integrity of the [FDA's] new drug approval process is clearly an important governmental interest." *Id*. Furthermore, the Supreme Court has also held that "the State has a legitimate interest in seeing to it that… any… medical procedure, is performed under circumstances that insure maximum safety for the patient." *Roe v. Wade*, 410 U.S. 113, 150, 93 S. Ct. 705, 725, 35 L. Ed. 2d 147.

Lastly, the insurance plan at issue is meant to save taxpayer dollars by not covering procedures that are not medically necessary and/or FDA approved. The idea being that, if any and all conceivable procedures and treatments were covered in all scenarios, then the ability of the state government to pay for all of those procedures and to provide affordable health care access to its employees will be destroyed. As a result, lines had to be drawn in the policy that promote this interest, and procedures and treatments that appear to be experimental or are not FDA approved are not covered in order to save on the costs of the insurance itself. While it may be true that money

by itself is not always recognized as an important government interest when considered by the courts, it certainly adds weight to this Defendant's position. *Califano v. Goldfarb*, 430 U.S. 199, 217, 97 S. Ct. 1021, 1032, 51 L. Ed. 2d 270 (1977); *Mem'l Hosp. v. Maricopa Cty.*, 415 U.S. 250, 263, 94 S. Ct. 1076, 1085, 39 L. Ed. 2d 306 (1974).

All three of these state interests, considered together, are sufficiently important and substantially relate to the government policy at issue. Each interest helps promote access to safe, proven, and affordable healthcare for state employees. Accordingly, Plaintiffs' Fourteenth Amendment claim against this Defendant should be dismissed because the state interests embodied by the insurance policy at issue prevent Plaintiffs from stating a claim upon which relief can be granted.

**C. Because Plaintiffs McNemar and Martell failed to allege that this specific Defendant accepted any federal funding in their Complaint, the Section 1557 claim under the Patient Protection and Affordable Care Act should be dismissed.**

If this Court determines Plaintiffs have standing, they failed to state sufficient factual allegations in their Complaint to bring a claim under the ACA against the Defendant in his official capacity as the Director of the PEIA. Critically, the second element of the Section 1557 claim asserted by Plaintiffs requires the receipt of "[f]ederal financial assistance." 42 U.S.C. § 18116. However, Plaintiffs' Complaint fails to assert that Director Cheatham ever accepted or approved the acceptance of federal funding.

The Plaintiffs claim Defendants Health Plan and the West Virginia Department of Health and Human Resources, Bureau of Medical Services accepted federal funds. However, the Complaint does not directly allege that PEIA receives federal funding. The closest the Plaintiffs come to this is Paragraph 140 of the Complaint.

In Paragraph 140 of the Complaint, the Plaintiffs allege "The categorical Exclusions maintained by Defendants BMS, The Health Plan, Crouch, Beane, and Cheatham, on their face and as applied to Plaintiffs and members of the proposed Classes, violate Section 1557's prohibition against discrimination on the basis of sex in a health program or activity receiving federal financial assistance." This allegation is an overly broad allegation, which makes no specific allegation that PEIA received federal financial assistance. Instead, it attempts to lump of these entities together to allege a violation of Section 1557.

Because the Plaintiffs fail to make the allegation that PEIA received federal funding, the Plaintiffs' allegations in the Complaint fail to state a Section 1557 claim upon which relief can be granted against this Defendant, Director Cheatham. In particular, there is no set of facts in Plaintiffs' Complaint that demonstrate he is entitled to relief from this Defendant under Section 1557 because there is no allegation that Director Cheatham accepted federal funding at any point in the Complaint. Thus, Plaintiffs' claim against this Defendant under the Affordable Care Act should be dismissed by this Court.

### D. Plaintiffs failed to allege that they exhausted the available remedies under the Affordable Care Act and the Insurance Policy prior to filing suit.

"Where relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed." *Reiter v. Cooper*, 507 U.S. 258, 269, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993).

In this case, the Plaintiffs have administrative remedies available to them both under the underlying policy and the ACA for a denied claim. *See* W. Va. Code R. 151-1 Attachment A at pg. 148 and 45 C.F.R. § 147.136. The Plaintiffs do not allege that they pursued any appeal at all, or took any step to appeal, and certainly do not allege they exhausted the available appeals. Thus,

the Complaint must be dismissed because the Plaintiffs failed to allege they exhausted their administrative remedies.

> **E. Pursuant to the doctrine of sovereign immunity, Defendant Cheatham is incapable of being sued by the Plaintiffs in federal court under Section 1557 of the Patient Protection and Affordable Care Act.**

The State of West Virginia has sovereign immunity from suit pursuant to the Eleventh Amendment of the United States Constitution and Article VI, § 35 of the W*est Virginia Constitution*. The Eleventh Amendment bars lawsuits against a State brought by its own citizens or any citizens of another State. *Port. Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299 (2009). This protection not only protects the State itself, it also protects a State's *agencies, divisions, departments, officials,* and other "arms of the State." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 78 (1989) (emphasis added); *see also, Roach v. Burch*, 825 F.Supp. 116, 118 (N.D. W. Va. 1993). As a result, suits against state agencies are considered as suits against the state itself. *Will*, 491 U.S. at 71.

State department with Eleventh Amendment immunity from suit is not a "person" within meaning of civil rights statute § 1983. *Thompson by Jacobs v. Illinois Dept. of Mental Health and Developmental Disabilities*, N.D.Ill.1990, 753 F.Supp. 219. To the extent a defendant is entitled to Eleventh Amendment immunity, defendant is not a "person" within the meaning of statute allowing suit against a "person" acting under color of state law for violation of civil rights. *Grabow v. Southern State Correctional Facility*, D.N.J.1989, 726 F.Supp. 537.

One way waiver can be accomplished is by a State's acceptance of federal funding that is conditioned on a waiver of sovereign immunity. *Madison v. Virginia*, 474 F.3d 118, 128 (4th Cir. 2006). As argued herein, Director Cheatham did not accept federal funding, and, as a result, he did not waive his immunity.

Specifically, in order for the waiver to be effective, "[a] State's consent to suit must be '*unequivocally expressed*' in the text of the relevant statute. *Sossamon v. Texas*, 563 U.S. at 284 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99, 104 S. Ct. 900, 907, 79 L. Ed. 2d 67 (1984)). (emphasis added). This waiver of immunity is akin to "the nature of a contract" where "the States agree to comply with federally imposed conditions," and, in return, the States receive the "federal funds" that are attached to those "federally imposed conditions." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17, 101 S. Ct. 1531, 1540, 67 L. Ed. 2d 694 (1981).

Accordingly, the "relevant statute" that must "unequivocally express" the waiver of sovereign immunity is Section 1557. *Sossamon*, 563 U.S. at 284. Here, Section 1557 of the Patient Protection and Affordable Care Act says nothing about sovereign immunity, lawsuits, or States. Section 1557 declares:

> [A]n individual shall not, on the ground prohibited under title VI…title IX…the Age Discrimination Act…or section 794 of Title 29, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance…. The enforcement mechanisms provided for and available under such title VI, title IX, section 794, or such Age Discrimination Act shall apply for purposes of violations of this subsection.

42 U.S.C. §18116(a).

When determining whether a federal law provides clear notice of a waiver of sovereign immunity, the Court "must view the [statute] from the perspective of a state official who is engaged in the process of deciding whether the State should accept [federal] funds and the obligations that go with those funds." *Arlington Cent. Sch. Dist. Bd. Of Educ. V. Murphy*, 548 U.S. 291, 296 (2006). Specifically, "[s]tates cannot knowingly accept conditions of which they are unaware or which they are unable to ascertain." *Id*. This Defendant, or any other in his position, would not be able to

determine sovereign immunity is waived, let alone even implicated by the statute, when the Affordable Care Act fails to address sovereign immunity.

Therefore, because the Affordable Care Act fails to explicitly discuss a waiver of sovereign immunity, no state official accepting the funds would be able to ascertain that the funds would allow future plaintiffs to pierce the State's constitutional protections provided by the Eleventh Amendment. Defendant Cheatham is a state official with the protection of immunity. Thus, Plaintiffs' Section 1557 claim against Defendant Cheatham should be dismissed as he is immune from suit and no claim can be stated upon which relief may be granted under the statute.

## V.    <u>Conclusion</u>

**WHEREFORE,** for the reasons stated above, this Defendant respectfully requests that all claims against him be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) because the Plaintiffs have failed to meet their burden of establishing standing. As a result, the Complaint should be dismissed against Ted Cheatham as the Director of PEIA.

Likewise, pursuant to Rule 12(b)(6), the Court should dismiss the Complaint for failure to state a claim upon which relief may be granted. Specifically, the Complaint fails to establish a violation of the Fourteenth Amendment, fails to set forth that this Defendant received federal funding, and failed to allege the Plaintiffs exhausted administrative remedies. In addition, the Complaint is prohibited by sovereign immunity.

**TED CHEATHAM, in his official capacity as Director of the West Virginia Public Employees Insurance Agency,**

**BY COUNSEL**


s/ Perry W. Oxley
Perry W. Oxley (WVSB #7211)
David E. Rich (WVSB #9141)
Eric D. Salyers (WVSB #13042)
Christopher K. Weed (WVSB #13868)
Oxley Rich Sammons, PLLC
517 9th Street, P.O. Box 1704
Huntington, WV 25718-1704
Phone: (304) 522-1138
Fax: (304) 522-9528
poxley@oxleylawwv.com
drich@oxleylawwv.com
esalyers@oxleylawwv.com
cweed@oxleylawwv.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON**

**CHRISTOPHER FAIN; ZACHARY
MARTELL; and BRIAN MCNEMAR,
individually and on behalf of all others similarly
situated,**

**Plaintiffs,**

**vs.**                                                                    **Case No.:  3:20-cv-00740
Judge Robert C. Chambers**

**WILLIAM CROUCH, in his official capacity as
Cabinet Secretary of the West Virginia
Department of Health and Human Resources;
CYNTHIA BEANE, in her official capacity as
Commissioner for the West Virginia Bureau for
Medical Services; WEST VIRGINIA
DEPARTMENT OF HEALTH AND HUMAN
RESOURCES, BUREAU FOR MEDICAL
SERVICES; TED CHEATHAM, in his official
capacity as Director of the West Virginia Public
Employees Insurance Agency; and THE
HEALTH PLAN OF WEST VIRGINIA, INC.,**

**Defendants.**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, as undersigned counsel for Defendant Ted Cheatham, in his official

capacity as Director of the West Virginia Public Employees Insurance Agency, I electronically

filed the foregoing **"Memorandum of Law in Support of Defendant Ted Cheatham's Motion

to Dismiss the Complaint"** on this **11**[th] day of **January, 2021,** with the Clerk of the Court using

the CM/ECF system, which will send notification of filing, and a copy of the same, to the following

CM/ECF participants:

Walt Auvil, WVSB No. 190
THE EMPLOYMENT LAW CENTER,
PLLC
1208 Market Street
Parkersburg, WV 26101
Phone: 304-485-3058
Facsimile: 304-485-6344
auvil@theemploymentlawcenter.com
*Counsel for Plaintiffs*

Anna P. Prakash, Visiting Attorney
Nicole J. Schladt, Visiting Attorney
NICHOLS KASTER, PLLP
IDS Center, 80 South 8th Street
Suite 4600
Minneapolis, MN 55402
Phone: 612-256-3200
Facsimile: 612-338-4878
aprakash@nka.com
nschladt@nka.com
*Counsel for Plaintiffs*

Sasha Buchert, Visiting Attorney
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
1776 K Street, N.W., 8th Floor
Washington, DC 20006-2304
Phone: 202-804-6245
Facsimile: 202-429-9574
sbuchert@lambdalegal.org
*Counsel for Plaintiffs*

Avatara Smith-Carrington, Visiting Attorney
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
3500 Oak Lawn Avenue, Suite 500
Dallas, TX 75219
Phone: 214-219-8585
Facsimile: 214-219-4455
asmithcarrington@lambdalegal.org
*Counsel for Plaintiffs*

Tara L. Borelli, Visiting Attorney
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
730 Peachtree Street NE, Suite 640
Atlanta, GA 30308
Phone: 470-225-5341
Facsimile: 404-897-1884
tborelli@lambdalegal.org
*Counsel for Plaintiffs*

Nora Huppert, Visiting Attorney
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
4221 Wilshire Boulevard, Suite 280
Los Angeles, CA 90010
Phone: 213-382-7600
Facsimile: 213-351-6050
nhuppert@lambdalegal.org
*Counsel for Plaintiffs*

Lou Ann S. Cyrus, Esquire
Roberta F. Green, Esquire
Caleb B. David, Esquire
Kimberly M. Bandy, Esquire
Shuman McCuskey Slicer PLLC
Post Office Box 3953
Charleston, West Virginia 25339
(304) 345-1400
Fax: (304) 343-1826
lcyrus@shumanlaw.com
rgreen@shumanlaw.com
cdavid@shumanlaw.com
kbandy@shumanlaw.com
*Counsel for Defendants William Crouch,
Cynthia Beane and West Virginia Department
of Health and Human Resources*

Stuart A. McMillan
BOWLES RICE LLP
600 Quarrier Street
Charleston, West Virginia 25301
(304) 347-1110
Fax: (304) 347-1746
smcmillan@bowlesrice.com

Aaron C. Boone
BOWLES RICE LLP
Fifth Floor, United Square
501 Avery Street, Post Office Box 49
Parkersburg, West Virginia 26102
(304) 420-5501
Fax: (304) 420-5587
aboone@bowlesrice.com
*Counsel for Defendant The Health Plan of
West Virginia, Inc.*

s/ Perry W. Oxley
Perry W. Oxley (WVSB #7211)
David E. Rich (WVSB #9141)
Eric D. Salyers (WVSB #13042)
Christopher K. Weed (WVSB #13868)