## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## HUNTINGTON DIVISION

**CHRISTOPHER FAIN; ZACHARY MARTELL;** and **BRIAN MCNEMAR,**
Individually and on behalf of all others
similarly situated,

                **Plaintiffs,**

**v.**

**WILLIAM CROUCH,** in his official capacity as
Cabinet Secretary of the West Virginia
Department of Health and Human Resources;
**CYNTHIA BEANE,** in her official capacity as
Commissioner for the West Virginia Bureau for
Medical Services; **WEST VIRGINIA
DEPARTMENT OF HEALTH AND HUMAN
RESOURCES, BUREAU FOR MEDICAL
SERVICES; TED CHEATHAM,** in his official
Capacity as Director of the West Virginia Public
Employees Insurance Agency; and **THE
HEALTH PLAN OF WEST VIRGINIA, INC.**

                **Defendants.**

Civil Action No. 3:20-cv-00740
Hon. Robert C. Chambers, Judge

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS WILLIAM CROUCH, CYNTHIA BEANE, AND WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES, BUREAU FOR MEDICAL SERVICES'S MOTION FOR <u>PARTIAL DISMISSAL OF PLAINTIFFS' CLASS ACTION COMPLAINT</u>

Now come Defendants William Crouch, Cynthia Beane, and the West Virginia Department

of Health and Human Resources, Bureau for Medical Services ("WVDHHR"), by counsel Lou

Ann S. Cyrus, Roberta F. Green, Caleb B. David, Kimberly M. Bandy, and Shuman McCuskey

Slicer PLLC, and submit this memorandum of law in support of their request that the Plaintiffs'

Class Action Complaint be dismissed in part against them. The WVDHHR moves, pursuant to

Rule 12(b)(1) of the Federal Rules of Civil Procedure, or, in the alternative, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for dismissal of Plaintiff Christopher Fain's claim for compensatory damages asserted in Count II of the Complaint on the basis that the claim is barred by the Eleventh Amendment to the United States Constitution. Additionally, Defendants William Crouch, Cynthia Beane, and the WVDHHR move to dismiss Plaintiffs' request for class certification.

## FACTUAL/PROCEDURAL BACKGROUND

Plaintiffs' Class Action Complaint was filed on November 12, 2020, in the United States District Court for the Southern District of West Virginia. Plaintiff Christopher Fain brings suit against William Crouch, Cynthia Beane, and the WVDHHR, claiming that he has been the subject of discrimination as a Medicaid participant on the basis of his sex and his transgender status.[1] On behalf of himself, and on behalf of a proposed class of Medicaid participants, Plaintiff Fain seeks declaratory and injunctive relief against Defendants Crouch, Beane, and the WVDHHR.[2] Mr. Fain individually seeks compensatory damages from the WVDHHR for violation of Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. §18116.[3] Plaintiffs Zachary Martell and Brian McNemar assert discrimination claims against Defendants Ted Cheatham and The Health Plan of West Virginia, Inc., related to health insurance for State employees and their dependents.[4] The claims of Martell and McNemar (and the related proposed state employee class or subclass) are not directed at Defendants Crouch, Beane, or the WVDHHR.

---

[1] Compl., at ¶¶1, 82-87.
[2] Compl., Counts One, Two, Three, and Four.
[3] Compl., Count Two.
[4] Compl., Counts One and Two.

## **STANDARD OF REVIEW**

Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." F.R.C.P. 8(a)(2).  Defendants Crouch, Beane, and the WVDHHR are entitled to dismissal of the claims for class action certification pursuant to Federal Rule of Civil Procedure 12(b)(6) because the subject portions of the Complaint fail to state a claim upon which relief can be granted.

While no specific form of pleading is required, the Plaintiffs must set forth sufficient factual allegations in the Complaint that, if true, would constitute a legal cause of action.  For purposes of a motion to dismiss under Rule 12(b)(6), Courts must consider the Complaint's factual allegations as true, but need not do so with respect to mere conclusory legal allegations, which need not be given such consideration.  "To survive a motion to dismiss, a Complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868, 884 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Additionally, the WVDHHR is entitled to dismissal of Mr. Fain's claim for compensatory damages pursuant to the Eleventh Amendment to the United States Constitution. It appears to be unsettled in the United States Court of Appeals for the Fourth Circuit whether Eleventh Amendment immunity is to be considered under Rule 12(b)(1) for lack of subject matter jurisdiction, or Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[5] To the extent that the specific Rule to be utilized is unsettled, relief is requested in the alternative.

---

[5] *Andrews v. Daw*, 201 F.3d 521, 524 n.2 (2000) ("Our cases have been unclear on whether a dismissal on Eleventh Amendment immunity grounds is a dismissal for failure to state a claim under Rule 12(b)(6) or a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)").

However, under either Rule, the WVDHHR is entitled to immunity from suit for compensatory damages.

## ANALYSIS

**I.      THE WVDHHR IS ENTITLED TO DISMISSAL OF PLAINTIFF CHRISTOPHER FAIN'S CLAIM FOR COMPENSATORY DAMAGES PURSUANT TO THE ELEVENTH AMENDMENT TO THE UNITED STATES CONSTITUTION BECAUSE IT IS A STATE AGENCY.**

Mr. Fain's claim against the WVDHHR for compensatory damages is a claim against the State of West Virginia and is barred by the Eleventh Amendment to the United States Constitution.

The Eleventh Amendment to the United States Constitution states, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or Citizens or Subjects of any Foreign State." THE CONSTITUTION OF THE UNITED STATES, Amendment XI.  The Supreme Court of the United States has construed the Amendment to "establish that 'an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state.'"[6]

The WVDHHR is a State agency as recognized in Chapter 9 of the West Virginia Code.[7] Suits against a State or a State agency in federal court for monetary damages are barred by the Eleventh Amendment to the United States Constitution.[8]  Therefore, Mr. Fain cannot maintain his claim for compensatory damages against the WVDHHR.

---

[6] *Port Authority Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304, 110 S.Ct. 1868, 1872, 109 L. Ed. 2d 264, 271 (1990), (additional citations omitted).

[7] W.Va. Code §§9-1-2, 9-2-1a.

[8] *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 66, 109 S. Ct. 2304, 2309, 105 L. Ed. 2d 45, 55 (1989).

4

Sovereign immunity constitutes "an important constitutional limitation on the power of the federal courts."[9] Eleventh Amendment immunity can be waived in certain limited circumstances. For example, in enacting legislation, the United States Congress can condition the receipt of federal funds on waiver of sovereign immunity. However, such condition must be "'unequivocally expressed' in the text of the relevant statute."[10] The State receiving such funds must be able to clearly ascertain and understand the condition, in order to make a knowing and voluntary waiver of sovereign immunity.[11] To determine whether the declaration is clear and unambiguous, the court "must view the [statute] from the perspective of a state official who is engaged in the process of deciding whether the State should accept [federal] funds and the obligations that go with those funds."[12] The Supreme Court of the United States has directed that the "test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one."[13]

Without a clear declaration of such intent, waiver does not occur. "A State's consent to suit must be 'unequivocally expressed' in the text of the relevant statute." [14] "Only by requiring this 'clear declaration' by the State can we be 'certain that the State in fact consents to suit.'"[15] Waiver

---

[9] *Sossamon v. Texas*, 563 U.S. 277, 284, 131 S. Ct. 1651, 1657, 179 L. Ed. 2d 700, 708 (2011), citing *Pennhurst State School and Hospital v. Halderman*, 465 US.89, 98, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984).

[10] *Sossamon,* 563 U.S. at 284, 131 S. Ct. at 1658, 179 L. Ed. 2d at 708, quoting *Pennhurst State School and Hospital v. Halderman*, 465 U.S. at 99, 104 S. Ct. 900, 79 L. Ed. 2d 67 (additional citation omitted).

[11] *Arlington Cent. Sch. Dist. Bd. Of Educ. v. Murphy*, 548 U.S. 291, 296, 126 S. Ct. 2455, 2459, 165 L. Ed. 2d 526, 533-534 (2006), citing *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17, 101 S. Ct. 1531, 67 L. Ed. 2d 694 (1981).

[12] *Arlington Cent. Sch. Dist. Bd. Of Educ. v. Murphy*, 548 U.S. at 296, 126 S. Ct. at 2459, 165 L. Ed. 2d at 534.

[13] *Sossamon v. Texas*, 563 U.S. at 284, 131 S. Ct. at 1658, 179 L. Ed. 2d at 708, quoting *College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.,* 527 U.S. 666, 675, 119 S. Ct. 2219, 144 L. Ed. 2d 605 (1999) (internal quotation marks omitted).

[14] *Sossaman,* 563 U.S. at 284, 131 S. Ct. at 1658, 179 L. Ed. 2d at 708-709 (additional citation omitted).

[15] *Id.*

will not be implied."[16]  Waiver of sovereign immunity "will be strictly construed, in terms of its

scope, in favor of the sovereign."[17]  Additionally, the waiver of sovereign immunity "must extend

unambiguously" to claims for money damages.[18]

Plaintiff Fain seeks compensatory damages for violation of § 1557 of the Patient Protection

and Affordable Care Act ("ACA"), 42 U.S.C. §18116, which states:

> Except as otherwise provided for in this title (or an amendment made by this title),
> an individual shall not, on the ground prohibited under title VI of the Civil Rights
> Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of
> 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101
> et seq.), or section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794), be
> excluded from participation in, be denied the benefits of, or be subjected to
> discrimination under, any health program or activity, any part of which is receiving
> Federal financial assistance, including credits, subsidies, or contracts of insurance,
> or under any program or activity that is administered by an Executive Agency or
> any entity established under this title (or amendments). The enforcement
> mechanisms provided for and available under such title VI, title IX, section 504, or
> such Age Discrimination Act shall apply for purposes of violations of this
> subsection.[19]

On its face, 42 U.S.C. §18116 does not specify an unequivocal expression of waiver

of sovereign immunity in exchange for the receipt of federal funds under the ACA.

Therefore, it does not meet the strict requirements for waiver as outlined by the Supreme

Court of the United States. Accordingly, the WVDHHR is entitled to sovereign immunity

and the claims against the WVDHHR for money damages are barred.

## II.     PLAINTIFFS' CLASS ALLEGATIONS MUST BE DISMISSED BECAUSE PLAINTIFFS' ALLEGED CAUSES OF ACTION REQUIRE PARTICULAR PROOF OF INDIVIDUALIZED HARM TO EACH ALLEGED CLASS MEMBER.

Class action claims constitute a deviation from the general rule that litigation must be

---

[16] *Id.*

[17] *Sossamon v. Texas*, 563 U.S. at 285, 131 S. Ct. at 1658, 179 L. Ed. 2d at 709, quoting *Lane v. Pena*, 518 U.S. 187, 192, 116 S. Ct. 2092, 135 L. Ed. 2d 486 (1996).

[18] *Sossamon*, 563 U.S. at 285, 131 S. Ct. at 1658, 179 L. Ed. 2d at 709, quoting *Lane v. Pena*, 518 U.S. at 192, 116 S. Ct. 2092, 135 L. Ed. 2d 486.

[19] 42 U.S.C. §18116(a).

conducted by and on behalf of the individual named parties only.[20] That deviation is justified only to the extent the class representatives possess *inter alia* the same interests and suffer the same injury as the proposed class members.[21] The Supreme Court of the United States has found that class form is appropriate only where economical to combine the claims and that the determination as to whether it is economical is a practical one – when a common injury can be addressed and resolved by a class litigation without doing damage to either, it makes sense to do so as a class action. Here, however, the economies of the class form are unavailable, as particularized discovery would be necessary to determine the individualized facts relative to Defendants' duty to each class member, the underlying facts of the breach of that duty as experienced by each class member, and any causation between that breach and each particular class member's alleged damages, such that the class structure would be counterproductive, uneconomical, and contraindicated.[22] Plaintiffs' class claims fall outside Federal Rule of Civil Procedure Rule 23 (a)(2), which requires that "there are questions of law or fact common to the class," such that dismissal as a matter of law of the class claims herein is necessary and proper at this time.

A class action for monetary damages to determine the scope of Medicaid regulations in any number of specific factual health situations and claims histories undercuts any economies inherent in the Rule 23 process and is substantively improper for class treatment. To the extent Plaintiffs have particularized their claims to their precise diagnosis, their precise medical needs, and their precise claims histories, then Rule 23 offers no economies to what must become multiple separate litigations, joined only in the broadest sense.  Even taking Plaintiffs' claims in the light

---

[20] *Wal-Mart Stores, Inc., v. Dukes,* 564 U.S. 338, 349 (2011), quoting *Califano v. Yamasaki,* 442 U.S. 682, 700-01 (1979).
[21] *Dukes,* 564 U.S. at 349, quoting *East Tex. Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 403 (1977) (quoting *Schlessinger v. Reservists Comm. To Stop the War,* 418 U.S. 208 (1974)).
[22] *Cyrus ex rel. McSweeney v. Walker,* 233 F.R.D. 467, 470 (SD WV 2005), relying upon *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 157 n.13 (1982).

7

most favorable to them, the class is 'common' only in the very broadest sense, in that, allegedly, each of the Plaintiffs would like to ensure that coverage, and thereby, the requisite care, would not be denied them on the basis that they are transgender, suggesting that the best remedy might be legislative or administrative in nature. *See* Complaint, generally.[23] While more usually commonality would be addressed at the certification stage,[24] where, as here, the proposed class action by logical necessity inescapably falls outside Rule 23, the time to address the issue is now. After all, pursuant to Federal Rule of Civil Procedure Rule 23, a plaintiff may bring suit on behalf of a class of individuals "only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).[25] Because the majority of the factual, and, therefore, legal questions are unique to each class member, Plaintiffs' class claim must fail as a matter of law.

Plaintiffs have alleged by pertinent example that  Defendants "[v]iolate[d] Section 1557 of the Affordable Care Act, 42 U.S.C. § 18116 [ACA], by discriminating against Plaintiffs and all similarly situated individuals on the basis of sex (including transgender status, sex characteristics,

---

[23] Indeed, in the broadest sense and taken as a matter of fact and law, the Plaintiffs are challenging the healthcare underwriting system itself, such that their claims are largely unrelated to any particular person's experience, suggesting that the true remedy is through administrative or legislative challenge.

[24] *Rhodes v. E.I. DuPont de Nemours & Co.,* 253 F.R.D. 365, 367, 370 (SD WV 2008), noting that this liberal standard must be subjected to rigorous analysis, especially in the instance of medical claims, which finally are not 'cohesive enough' to gain any economies through class action.

[25] While Plaintiffs have alleged a class of 'more than forty' or in any event, a number sufficient to meet Plaintiffs' numerosity mandate under Rule 23(a), Compl. at 112, it is more striking that the number of affected persons and the need to particularize the claims both mitigate in favor of jettisoning the class format and adding the putative plaintiffs as named parties. In point of fact, Plaintiffs' Complaint includes requisite language: the class is so large that it would be impractical or impossible to add the persons as named parties. However, to the extent that Plaintiffs fail to identify sufficient numbers and given the need for such individualized claims, Plaintiffs will have a high hurdle at certification if they have the same small number of exceedingly individual claims. *See American Pipe & Const. Co. v. Utah,* 414 U.S. 538, 552-53 (1974).

gender, gender identity, sex assigned at birth, nonconformity with sex stereotypes, and gender transition),"[26] which creates a class of injured persons that would be either overly particularized (if this litigation needs to determine diagnosis, medical care requested, basis for the request, and claims history relative to that request) or insufficiently particularized to the extent that this litigation would focus solely on the catchall: violation of the ACA on the basis of sex. Any effort to particularize the allegations more pointedly would further complicate use of the class format for these claims in that each class member will need to be vetted for inclusion within the rubric (diagnosis, presenting complaints, claim submission, outcome, basis for denial, review sought). Additionally, Plaintiffs' effort to "enjoin enforcement or application of the Exclusions,"[27] while seeking common relief, is meaningless with healthcare claims, which by their very nature are dependent upon particularized assessment and review of individual claims – once again, a poor fit for Rule 23. Whereas Plaintiffs allege the State engaged in categorical denials, even assuming *arguendo* that it was true for purposes of this motion, it would be improper – arguably unconstitutional -- to change contractual relationships and burdens by enforcing coverage categorically.[28]

The Supreme Court of the United States in *Wal-Mart Stores, Inc., v. Dukes* clarified and particularized the issue of which claims are suitable for class consideration, in particular, as relates to commonality. Specifically, in *Dukes,* the Supreme Court recognized that, if plaintiffs generalize their claims broadly enough, certainly any and all persons could qualify as class members so as to meet the commonality mandate. However, the *Dukes* Court cautioned that, while such artful

---

[26] Compl. at Prayer for Relief at D (2).
[27] Compl. at Prayer for Relief at C.
[28] *See, e.g., General Motors Corp. v. Romein,* 503 U.S. 181, 186-87 (1992), questioning whether a change in state law that undercuts contractual relationships violates the due process and contract clauses of the Constitution.

pleading alone may appear to reflect commonality,[29] it is incumbent on courts, indeed, this Court, to probe beyond the pleadings to ensure that Plaintiffs do not raise common questions, but rather, seek to generate common answers. In *Dukes,* the Court considered common questions that, finally, were generalized to the point that they no longer meaningfully constituted a basis of commonality: "Do all of us plaintiffs indeed work for Wal-Mart? Do our managers have discretion over pay? Is that an unlawful employment practice? What remedies should we get?"[30]  While all of the *Dukes* plaintiffs truly had these questions at the heart of their claims, the *Dukes* Court found the questions too broad to provide meaningful class inquiry or relief.

Per *Dukes,* it is insufficient to achieve commonality by having a would-be class of plaintiffs allege commonality based on nothing more than violations of the same statute or law. The fact that the *Dukes* plaintiffs alleged violations of Title VII was insufficient alone to make plaintiffs' claims 'common' pursuant to Federal Rules of Civil Procedure Rule 23 (a)(2), which reads that "there are questions of law or fact common to the class." Rather, the class claims must be particularized to a common contention, which the Supreme Court in *Dukes,* an employment discrimination action, suggested could be discriminatory bias on the part of the same supervisor. Yet, the *Dukes* Court declined to extend evidence of one plaintiff's experience to the other class members, absent particularized allegations and proof.[31]  Therefore, citing alleged violations of the Affordable Care Act, absent more, will not constitute commonality. Relying upon the named Plaintiffs' health and claims histories, absent more, will not constitute commonality with the putative plaintiffs. To the extent Plaintiffs were to particularize the experiences of each putative

---

[29] *Dukes,* 564 U.S. at 349, citing Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131-132 (2009).

[30] *Id.*

[31] *Dukes,* 564 U.S. at 356, finding that "[o]ne named plaintiff's experience of discrimination is insufficient to infer that discriminatory treatment is typical of an employer's employment practices."

plaintiff, then the economies of class are lost.  Relative to the instant suit, class claims add nothing to the challenge and complicate any 'class' handling of allegations that are too broad or proof patterns that are too narrow.

Beyond the particulars necessary for commonality, the *Dukes* Court further specified that the class model is only available where common answers are apt to drive the resolution of the litigation.  The relevant inquiry is whether resolution of that particularized common contention is "capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes,* 431 U.S. at 350. Therefore, per *Dukes,* what matters is not raising common questions, regardless of how numerous, but rather, whether the class action process will generate common answers that will resolve the litigation. A failure to ensure true commonality inescapably impedes the generation of common answers. *Dukes,* 431 U.S. at 350, quoting Nagareda, *supra,* at 132.  As the United States District Court for the Northern District of West Virginia has clarified,

> "[a] common question is one that can be resolved for each class member in a single hearing, such as the question of whether an employer engaged in a pattern and practice of unlawful discrimination against a class of its employees. A question is not common, by contrast, if its resolution turns on a consideration of the individual circumstances of each class member." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006) (internal quotations and citations omitted). "The common questions must be dispositive and over-shadow other issues." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001).[32]

The Supreme Court of the United States in *Dukes* further advised that, "[w]ithout some glue holding the alleged reasons for all those decisions together," "it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the

---

[32] *Paulino v. Dollar Gen. Corp.,* 2014 U.S. Dist. LEXIS 64233 (3:12-CV-75) (ND WV 2014).

crucial question *why was I disfavored*." *Dukes,* 431 at 351.[33] Therefore, while the need for a particularized determination of damages alone will not bar class litigation, the claims are unsuitable for class litigation where the initial alleged breach requires particularized factual inquiry: social and health history, diagnosis, scope of coverage, claims history, denial of claim, explanation of benefits, appeal or challenge, outcome.

Applying *Dukes* to the instant matter, Plaintiffs' class allegations must fail as a matter of law on the basis that they have failed to raise claims that can be particularized sufficiently to be meaningful and yet remain available for a single resolution. Because Plaintiffs' claims by necessity focus on coverage determinations under particularized policies and the applicability of coverage to individual health issues, Plaintiffs' claims are inherently poorly suited for class treatment in a post-*Dukes* world. For instance, Plaintiffs' Complaint raises broad claims "about discrimination in health care and employment" and is intended "to challenge discrimination under West Virginia state health insurance plans that deprive transgender people of essential, and sometimes life-saving, health care." Complaint at ¶ 1. Plaintiffs further allege broadly that the suit is necessary because "transgender people are targeted for discrimination by exclusions in the state health plans." Complaint at ¶ 1. In violation of *Dukes,* Plaintiffs' proposed class is broadly cast as well: "All transgender people who are or will be enrolled in West Virginia Medicaid and who

---

[33] *See also Paulino* at *13, citing *Cuming v. South Carolina Lottery Comm. Civil No. 3:05-CV—03608-MBS*, 2008 U.S. Dist. LEXIS 26917, 2008 WL 906705 at *4 (holding plaintiffs failed to establish commonality because "the court would be required to conduct an inquiry into the individual circumstances and motivations of each class member"); *Levitt v. Fax.com*, Civil No. WMN-05-949, 2007 U.S. Dist. LEXIS 83143, 2007 WL 3169078, * 3 (D. Md. May 25, 2007) (holding plaintiffs failed to meet the commonality requirement under Rule 23(a) because of the "need to make a determination for each class member as to whether the facsimile transmission was unsolicited").

are seeking or will seek gender-confirming care barred by Exclusions."[34]  The similarities to the

*Dukes* exemplar of the forbidden class are striking:

> "Do all of us plaintiffs indeed work for Wal-Mart? Do our managers have discretion
> over pay? Is that an unlawful employment practice? What remedies should we get?"

That is, in this instance,

> Are all of us plaintiffs indeed transgender? Do the insurers categorically exclude
> gender-confirming care? Is that an unlawful practice? What remedies should we
> get?

In *General Telephone Co. of Southwest v. Falcon, 457 U.S. 147 (1982)*, the Supreme Court

of the United States struck down a class of persons "comprising all employees wrongfully denied

promotions and all applicants wrongfully denied jobs" for failure of commonality and typicality,

citing a conceptual disconnection:

> "Conceptually, there is a wide gap between (a) an individual's claim that he has
> been denied a promotion [or higher pay] on discriminatory grounds, and his
> otherwise unsupported allegation that the company has a policy of discrimination,
> and (b) the existence of a class of persons who have suffered the same injury as that
> individual, such that the individual's claim and the class claims will share common
> questions of law or fact and that the individual's claim will be typical of the class
> claims."

*Dukes,* 431 U.S. at 353, quoting *Falcon,* 457 U.S. at 157-158. Here, accepting Plaintiffs' claims

as true for the purposes of this motion, Plaintiffs have been denied insurance coverage on

discriminatory grounds. However, there is a wide gap between that allegation and the assertion

that there exists a class of persons who have suffered the same injury, that they all share common

issues of law or fact, and that the Plaintiffs' claims will be typical of that class. Whereas the *Falcon*

Court suggests two workarounds, neither will work for the instant claims.  That is, a diverse group

of plaintiffs could find commonality in a biased testing procedure (not applicable here) or a general

---

[34] Complaint at ¶ 108.

policy of discrimination that applied to all class members. Here, Plaintiffs allege an exclusionary policy related solely on the basis of their transgender status. However, of note, a word search of the Medicaid State Plan contains not a single instance of the use of the words "transgender," "gender-confirming care," or "gender dysphoria," those characterizations and conditions against which the Plaintiffs contend the Medicaid State Plan discriminates – and Plaintiffs have failed to cite to any express provisions of the Plan that so provide.

Beyond the allegations and the State Plan, the Plaintiffs' claims themselves evidence the individualized complexities of coverage determinations, which further mitigate against the commonality necessary for class action. Specifically, the Complaint dedicates twenty paragraphs to particularizing *inter alia* Plaintiff Fain's medical need, presenting history, status of gender transition, and relationships with friends/family. Compl. at ¶¶ 68-87.  The Complaint also dedicates eighteen paragraphs to particularizing *inter alia* Plaintiffs Martell's and McNemar's allegations of domestic situation, employment benefits, medical need, and claim denial history. Compl. at ¶¶ 88-105.  By dedicating nearly one-quarter of the Complaint to the named Plaintiffs' estimations of particularized need and unlawful denial, the Plaintiffs unwittingly prove the wisdom of the *Dukes* Court in that each person's medical need, presenting complaints, documented condition and medical recommendations are by necessity different, individual to that person, such that any determination of whether coverage was, first, for medically indicated care; second, denied; third, on what basis; and, fourth, whether that basis was discriminatory, is cumbersome with an individual plaintiff -- and voluminous and unwieldy with a class of persons. Plaintiffs' claims by necessity will involve a particularized determination of the Defendants' duty, if any, to each Plaintiff and putative plaintiff, such that "it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I*

14

*disfavored*."[35] Whereas the Complaint references 'categorial exclusions,'[36] the terms of the Complaint itself demonstrate through the Plaintiffs' individualized allegations that careful and particularized determinations will have to be made as a predicate to determining, *inter alia,* the applicability of the care and coverage sought.

Pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) as construed,

"a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). To determine whether a claim has crossed "the line from conceivable to plausible," the Court must employ a "context-specific" inquiry, drawing on the court's "experience and common sense." *Iqbal*, 556 U.S. at 679-80 (quoting *Twombly*, 550 U.S. at 570). When performing this inquiry, the Court accepts "all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The Court need not, however, accept unsupported legal conclusions, *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), nor must it agree with legal conclusions couched as factual allegations, *Iqbal*, 556 U.S. at 678, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).[37]

While Plaintiffs must be prepared to defend the suitability of maintaining this suit as a class action at the class certification stage, the class claims can be challenged on 12(b)(6) motion to ensure that, pursuant to *Dukes,* Plaintiffs' claims sounding in coverage determinations and employment benefits are capable of classwide resolution. That is, the Court need not allow discovery on the propriety of any class claims but can determine on a 12(b)(6) motion that the claims are unsuitable for class determination.[38] Here, whereby their very nature, the class claims cannot and will not

---

[35] *Dukes,* 431 at 351.
[36] *See, e.g.,* Complaint at ¶¶ 1, 2, 62, 63, 99.
[37] *Williams v. Potomac Family Dining Group Oper. Co., LLC,* 2019 U.S. Dist. LEXIS 181604, *18.
[38] *Bessett v. Avco Fin. Serv.,* 279 F.R. 442 (2002).

achieve the requisite commonality, dismissal of the class claims alone will allow the named Plaintiffs' claims to proceed. While Defendants maintain that global relief is better achieved through administrative or legislative change, nonetheless, the class of putative plaintiffs have no role in an insurance coverage determination.

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to challenge the sufficiency of a plaintiff's complaint, and that challenge should be granted where plaintiff has failed to 'state a plausible claim for relief.'[39] The Fourth Circuit has joined the Supreme Court in finding that plaintiffs are required in their complaints to provide a "'showing' rather than a blanket assertion of entitlement to relief."[40] Plaintiffs must provide "enough facts to state a claim to relief that is plausible on its face," that is, that "contain[s] 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"[41] The *Fain* Complaint by its express terms demonstrates the impropriety of the class form for this claim. Rather than await class certification only to determine that the class form will not work with medical complaints and coverage determinations, Defendants Crouch, Beane, and WVDHHR move this Court to dismiss the class claims at this time. Whereas Plaintiffs' individual claims would remain as would other avenues more appropriate for systemic challenges,[42] the parties could avoid the investment of time and resources inherent in proving further that, per *Dukes,* the actual, not presumed, conformance with Rule 23(a), including in particular commonality, is a mandate that is undercut by these putative class members' medical complaints and claims-

---

[39] *Walters v. McMahen,* 684 F.3d 435, 439 (4th Cir. 2012).

[40] *Johnson v. Prosperity Mortgage Corp.,* 2011 U.S. Dist. Lexis at *4-5.

[41] *Johnson,* 2011 U.S. Dist. Lexis, quoting *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 554 (4th Cir. 2013) in reliance upon *Ashcroft v. Iqbal,* 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly,* 350 U.S. 544 (2007).

[42] N.B., however, these Defendants attest and assert, and in no manner waive, the additional grounds for dismissal set forth herein.

handling experiences. Defendants seek an early determination that any class claims constitute medical claims, which finally are not 'cohesive enough' to gain any economies through class action.[43]

## CONCLUSION

Plaintiff Christopher Fain's claim for compensatory damages against the WVDHHR is barred by the Eleventh Amendment to the United States Constitution because it is a claim against the State of West Virginia.  Additionally, the Plaintiffs' request for class certification should be dismissed. Wherefore, these Defendants request that their Motion for Partial Dismissal be granted, that the subject claims be dismissed against them, with prejudice, and for such other and further relief as the court may direct.

<div style="margin-left: 4em;">

**WILLIAM CROUCH,**
**CYNTHIA BEANE, and**
**WEST VIRGINIA DEPARTMENT OF**
**HEALTH AND HUMAN RESOURCES,**
**BUREAU FOR MEDICAL SERVICES,**

**By counsel**

</div>

*/s/ Lou Ann S. Cyrus*
Lou Ann S. Cyrus, Esquire (WVSB #6558)
Roberta F. Green, Esquire (WVSB #6598)
Caleb B. David, Esquire (WVSB #12732)
Kimberly M. Bandy, Esquire (WVSB #10081)
SHUMAN MCCUSKEY SLICER PLLC
P.O. Box 3953
Charleston, WV  25339
(304) 345-1400; (304) 343-1826 (fax)
lcyrus@shumanlaw.com
rgreen@shumanlaw.com
cdavid@shumanlaw.com
kbandy@shumanlaw.com

---

[43] *Rhodes v. E.I. DuPont de Nemours & Co.,* 253 F.R.D. 365, 367, 370 (S.D.W. Va. 2008).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**HUNTINGTON DIVISION**

**CHRISTOPHER FAIN; ZACHARY**
**MARTELL;** and **BRIAN MCNEMAR,**
Individually and on behalf of all others
similarly situated,

             **Plaintiffs,**                            **Civil Action No. 3:20-cv-00740**
                                                       **Hon. Robert C. Chambers, Judge**

**v.**

**WILLIAM CROUCH,** in his official capacity as
Cabinet Secretary of the West Virginia
Department Of Health and Human Resources;
**CYNTHIA BEANE,** in her official capacity as
Commissioner for the West Virginia Bureau for
Medical Services; **WEST VIRGINIA**
**DEPARTMENT OF HEALTH AND HUMAN**
**RESOURCES, BUREAU FOR MEDICAL**
**SERVICES; TED CHEATHAM,** in his official
Capacity as Director of the West Virginia Public
Employees Insurance Agency; and **THE**
**HEALTH PLAN OF WEST VIRGINIA, INC.**

             **Defendants.**

## CERTIFICATE OF SERVICE

Now come Defendants, William Crouch, Cynthia Beane and West Virginia Department of Health and Human Resources, by counsel, and do hereby certify that on the 11th day of January, 2021, the foregoing **"MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS WILLIAM CROUCH, CYNTHIA BEANE, AND WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES, BUREAU FOR MEDICAL SERVICES'S MOTION FOR PARTIAL DISMISSAL OF PLAINTIFFS' CLASS ACTION COMPLAINT"** was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to, and constitutes service on:

Walt Auvil (WVSB#190)
The Employment Law Center, PLLC
1208 Market Street

18

Parkersburg, WV 26101-4323
(304) 485-3058
(304) 485-6344 (fax)
auvil@theemploymentlawcenter.com

and

Avatara Smith-Carrington, Visiting Attorney
Lambda Legal
3500 Oak Lawn Avenue, Suite 500
Dallas Texas 75219-6722
(214) 219-8585
(214) 219-4455 (fax)
asmithcarrington@lambdalegal.org


*/s/ Lou Ann S. Cyrus*
Lou Ann S. Cyrus, Esquire (WVSB 6588)
Roberta F. Green, Esquire (WVSB#6598)
Caleb B. David, Esquire (WVSB#12732)
Kimberly M. Bandy, Esquire (WVSB 10081)

19