IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

CHRISTOPHER FAIN; ZACHARY
MARTELL; and BRIAN MCNEMAR,
individually and on behalf of all others similarly
situated,

        Plaintiffs,

v.

WILLIAM CROUCH, in his official capacity as
Cabinet Secretary of the West Virginia
Department of Health and Human Resources;
CYNTHIA BEANE, in her official capacity as
Commissioner for the West Virginia Bureau for
Medical Services; WEST VIRGINIA
DEPARTMENT OF HEALTH AND HUMAN
RESOURCES; TED CHEATHAM, in his official
capacity as Director of the West Virginia Public
Employees Insurance Agency; and THE
HEALTH PLAN OF WEST VIRGINIA, INC.,

        Defendants.

CIVIL ACTION NO. 3:20-cv-00740
JUDGE CHAMBERS

**REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT THE HEALTH PLAN
OF WEST VIRGINIA, INC.'S MOTION TO DISMISS**

      Defendant The Health Plan of West Virginia, Inc., by counsel, submits this Reply

to Plaintiffs' Opposition to The Health Plan of West Virginia, Inc.'s Motion to Dismiss.

**I.       SUMMARY**

      Plaintiffs cannot proceed against The Health Plan under the Affordable Care Act

because Plaintiff Martell's health insurance policy does not receive federal dollars.  In their

Opposition, Plaintiffs incorrectly argue that since The Health Plan's Medicare Advantage's plans

may receive federal dollars, every plan that The Health Plan offers must comply with the

Affordable Care Act's non-discrimination provision.  Plaintiffs are wrong, and cannot proceed with their case against The Health Plan of West Virginia, Inc.

As discussed more fully below, Plaintiffs' Opposition misreads section 1557 of the Affordable Care Act.  Plaintiffs incorrectly construe the phrase "health program or activity" to mean "insurance company," when, in actuality, "health program or activity" refers only to the specific health care program/policy receiving federal assistance.  In the instant matter, there is no dispute that Plaintiff Martell's policy receives no federal assistance; therefore, Plaintiff Martell's policy is not subject to scrutiny under section 1557 of the Patient Protection and Affordable Care Act ("ACA").  As such, Plaintiffs' Complaint as to The Health Plan must be dismissed.

## II.    ARGUMENT

In Reply to the Plaintiffs' Opposition, and in further support of its Motion to Dismiss, The Health Plan submits the following three points:  (A) The plain language of Section 1557 makes clear that it applies only to those health insurance programs/policies that receive federal assistance.  (B) The 2020 Final Rule, which has not been rescinded, supports The Health Plan's position that the plain language of Section 1557 applies only to those policies that receive federal assistance.  (C) The issues presented in The Health Plan's Motion to Dismiss address the fundamental question of jurisdiction, requiring resolution at this early stage of litigation.

### A.    The plain language of Section 1557 makes clear that it applies only to those health insurance programs/policies that receive federal assistance.

Plaintiffs incorrectly argue that the phrase "health program or activity" means health insurance companies such as The Health Plan.  For the reasons noted below, Plaintiffs misconstrue Section 1557.

Here is Section 1557, in its entirety:

(a) In general.  Except as otherwise provided for in this title (or an amendment made by this title), **an individual shall not, on the ground prohibited under title VI of the Civil Rights Act** of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), or section 794 of Title 29, **be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any <u>health program or activity</u>, any part of which is receiving Federal financial assistance**, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments).  The enforcement mechanisms provided for and available under such title VI, title IX, section 794, or such Age Discrimination Act shall apply for purposes of violations of this subsection.

42 U.S.C.A. § 18116 (West) (emphasis added).

First, as a preliminary matter, the phrase "health program or activity" is not defined in the ACA, see 42 U.S.C. § 18111 and 42 U.S.C. §300gg-91[1]; as such, Plaintiffs cannot argue that "health program or activity" in Section 1557, in and of itself, means a private health insurance company such as The Health Plan.

Second, Section 300gg-91 of the ACA contains multiple definitions for companies such as The Health Plan, including, but not limited to: "health insurance issuer" @ 42 U.S.C.A. § 300gg-91(b)(2); "health maintenance organization," @ 42 U.S.C.A. 300gg-91(b)(3); and/or "bona fide association," @ 42 U.S.C.A. 300gg-91(d)(3).  However, Congress used none of these phrases in Section 1557, instead using the phrase "health program or activity."

However, to discern what Congress meant by "health program or activity," one need only look to the enabling statute: Title 42, Chapter 157 of the United States Code, "Quality

---

[1] "§18111. Definitions.  Unless specifically provided for otherwise, the definitions contained in section 300gg-91 of this title shall apply with respect to this title." 42 U.S.C.A. § 18111 (West).

Affordable Health Care for All Americans." In Chapter 157 of Title 42, Congress establishes numerous programs and activities to increase and improve access to health care, including, but not limited to: Qualified Health Plans, 42 USCA 18021, and American Health Benefit Exchanges, 42 USCA 18031 (a)(1). As noted above, Section 1557's non-discrimination provision is also found within Title 42, Chapter 157, specifically at Subchapter VI, "Miscellaneous Provision." It follows that this Subchapter, "Miscellaneous Provisions," is intended to augment and support the provisions in the parent chapter, Chapter 157. As such, given that Chapter 157 establishes programs and activities such as Qualified Health Plans and Benefit Exchanges, it follows that Section 1557's non-discrimination provision is intended to apply to programs and activities established under Chapter 157. *See King v. Burwell,* 576 U.S. 473, 492; 135 S.Ct. 2480, 2492 (2015)(citing *Utility Air Regulatory Group v. E.P.A.*, 573 U.S. 302, 319-20, 134 S.Ct. 2427, 2441 (2014)(noting that "a fundamental canon of statutory construction [is] that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.").

Therefore, in light of the above, this Court should conclude that the phrase "health program or activity" refers to those programs and activities established under Chapter 157 that receive Federal Assistance. In the instant matter, to test whether Section 1557 applies, one need only substitute "Mr. Martell" and "PEIA PPB A" for their counterparts within the text:

> [Mr. Martell] shall not … be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, [PEIA PPB A], any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance …

42 U.S.C.A. § 18116 (see above explanation of bracketed text). Given that no part of "PEIA PPB A" receives Federal financial assistance, no part of PEIA PPB A is subject to scrutiny under 1557.

**B.      The 2020 Final Rule, which has not been rescinded, supports The Health Plan's position that the plain language of Section 1557 makes clear that it applies only to those policies that receive federal assistance.**

In its Motion to Dismiss, The Health Plan cites Final Rules issued June 10, 2020, by the U. S. Department of Health and Human Services ("the Department") to "…clarify the scope of Section 1557." See, *Dep't of HHS Order* ("Final Rules"), dated June 10, 2020, effective August 18, 2020; Fed Register, Vol 85, No. 119, p. 37160. The Final Rules affirm The Health Plan's position that "health program or activity" refers only to those specific policies that receive federal assistance, and not The Health Plan's entire portfolio of health insurance policies.

In their Opposition, Plaintiffs appear to infer that an Executive Order recently issued by the incoming Biden Administration erased the efficacy of the Final Rules. (Plaintiffs' Opposition, p. 7). Plaintiffs are wrong; not only are the Final Rules issued June 10, 2020, still valid and authoritative, but they persuasively support The Health Plan's position.

First, nowhere does the Biden Executive Order direct the Department to rescind the Final Rules issued June 10, 2020. Instead, the Biden Executive Order merely directs the Department to review and rescind regulations inconsistent with the ACA's purpose. (Plaintiffs' Opposition at p. 7). As of the filing of this Reply, Secretary Azar has issued no rules rescinding the June 10, 2020, Final Order. Therefore, the Final Rules issued June 10, 2020, remains valid and authoritative.

Second, although The Health Plan believes that "health program and activity" is clear and unambiguous, The Health Plan recognizes that the test for ambiguity under a *Chevron*

analysis is whether the subject language is "not free from doubt." [2]  If this Court were to conclude

The Health Plan's definition of "health program and activity" is not free from doubt, then this

Court would proceed with step two of a *Chevron* analysis, which requires deference to the Final

Rules:

> If a court determines that the statute is ambiguous on the precise
> question at issue, and therefore proceeds to *Chevron* step two, it
> must defer to the agency's interpretation "so long as the construction
> is a reasonable policy choice for the agency to make.

*West Virginia Dept. of Health & Human Resources v. U.S. Dep.t of Health and Human Services*,

899 F.Supp.2d 477, 482 (S.D.W.Va. 2012)(*citing Nat'l Cable & Telecomms. Ass'n v. Brand X*

*Internet Servs.*, 545 U.S. 967, 986, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005)).

As set forth in the Final Rules issued June 10, 2020, the decision of the Department

is reasonable because the Final Rules "align[] Section 1557's definition of 'health program or

activity' with the standard articulated in the CRRA in order to provide clarity and consistency[,]"

and "advances [the Department's] goal of reducing regulatory burdens under the ACA…" *Final*

*Rules*, @ 37171-72.  Clearly, advancing "consistency" and "reducing regulatory burdens" are

reasonable goals for the Department.  As such, this Court must give the Final Rules "controlling

weight."  *WV DHHR*. at 483 (quoting *Udall v. Tallman*, 380 U.S. 1, 16-17, 85 S.Ct. 792, 13

---

[2] The United States District Court for the Southern District of West Virginia has previously held:

> The Fourth Circuit has proceeded to Chevron's second step "where the statutory
> language 'neither plainly compel [led] nor clearly preclude[d] [an] interpretation,'
> because in such circumstances the 'precise import' of the language 'is ambiguous
> and certainly not free from doubt.' " NEMA, 654 F.3d at 504 (quoting *United
> Seniors Ass'n v. Social Security Admin.*, 423 F.3d 397, 403 (4th Cir.2005)
> (internal quotation marks omitted)).  Similarly, our court of appeals has reached
> Chevron's second step after describing statutory language as "susceptible to more
> precise definition and open to varying constructions."

*Md. Dep't of Health & Mental Hygiene v. Ctrs. for Medicare and Medicaid Servs.*, 542 F.3d 424, 434 (4th Cir.2008)
(internal quotation marks omitted)." *W. Virginia Dep't of Health & Human Res. v. U.S. Dep't of Health & Human
Servs.*, 899 F. Supp. 2d 477, 482 (S.D.W.Va. 2012)

L.Ed.2d 616 (1965)(finding that an "agency's interpretation must be given 'controlling weight' unless it is plainly erroneous or inconsistent with the regulation.")[3]

As noted above, the Final Rules confirm that Section 1557's "program or activity" applies only to the specific policy that receives Federal assistance, and not the entire insurance company. *See infra.*  Under the Final Rules, the only time Section 1557 extends to the entire entity is when that entity is a health care provider:

> [i]n this final rule, the Department is aligning Section 1557's definition of "health program or activity" with the standard articulated in the CRRA … it applied "program or activity" to cover all of the operations of an entity **only when that entity 'is principally engaged in the business of providing … health care**.'

(*Final Rules* @ 37171)(emphasis added).[4]

In the instant matter, The Health Plan is an insurer; there is no allegation that The Health Plan is principally in the business of providing health care. (See e.g. Complaint.)  As such,

---

[3] The Health Plan submits that the Final Rules also support the public policy

[4] Commenters argued that if any part of an entity receives Federal financial assistance, then "the entire entity [] should be covered, not just the portion receiving funding."  Id., at 37171.  The Department rejected that argument, concluding:

> [I]n this final rule, the Department is aligning Section 1557's definition of "health program or activity" with the standard articulated in the CRRA in order to provide clarity and consistency.  The CRRA clarified the scope of nondiscrimination prohibitions under the civil rights statutes that Section 1557 incorporates.  For example, with respect to the health sector, it applied those prohibitions to all health programs or activities receiving Federal financial assistance, but not to all providers of health insurance: **It applied "program or activity" to cover all of the operations of an entity <u>only when that entity is "principally engaged in the business of providing . . . health care</u>** . . . ."    This final rule clarifies that the term "health program or activity" used in Section 1557 should be understood in light of the CRRA's limitations on the term "program or activity" as applied to statutes on which Section 1557 relies.

Id. at 37171. (emphasis added.)

this Court must conclude that Section 1557 does NOT apply to all operations of The Health Plan; but rather, only applies, if at all, to those plans that receive federal assistance. *Id.* Given that Zachary Martell's plan does not receive federal assistance, Mr. Martell's plan is not subject to scrutiny under Section 1557's non-discrimination provision. Accordingly, this Court must conclude that Plaintiffs cannot proceed against The Health Plan under Section 1557 of the ACA.

**C.** **The issues presented in The Health Plan's Motion to Dismiss involve a fundamental question of subject matter jurisdiction and, therefore, should be resolved at this early stage.**

In their Complaint, Plaintiffs allege that jurisdiction against The Health Plan arises under Federal Law, to wit Section 1557 of the ACA, 42 U.S.C. § 18116. (Complaint, ¶ 18). Plaintiffs further allege that all parties are residents of West Virginia; as such, there is no diversity of citizenship. (Complaint, ¶¶ 8-10, 20). Point being, Plaintiffs' only avenue to achieve subject matter jurisdiction against The Health Plan is by Federal Question.

Subject matter jurisdiction must be satisfactorily established, before proceeding against The Health Plan. "Before deciding the merits of plaintiff's case, the court must determine whether it has power to adjudicate the case and need not limit itself to plaintiff's complaint to reach its conclusion." *Kaufman v. United States*, 84 F. Supp. 3d 519, 526 (S.D.W.Va.), aff'd pur curiam, 601 F. Appx. 237 (4th Cir. 2015).[5]

In their Opposition, Plaintiffs suggest that their arguments should be enough to "nudge Plaintiffs' claims 'across the line from conceivable to plausible.'" (Plaintiffs' Objection, p. 7). However, Plaintiffs must produce sufficiently clear authority to support their position, rather

---

[5] "[Q]uestions of subject-matter jurisdiction may be raised at any point during the proceedings and may (or, more precisely, must) be raised sua sponte by the court." *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004), 369 F.3d at 390; see also *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. at 541, 106 S.Ct. 1326.

than proffer arguments that seek to limp across the finish line.  "The burden of proving subject matter jurisdiction on a motion to dismiss is on the plaintiff, the party asserting jurisdiction." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).  As shown above, Plaintiffs have failed in their burden.

In its Motion to Dismiss and Reply, The Health Plan has clearly shown that Section 1557 is not applicable as to The Health Plan.  Therefore, Plaintiffs cannot establish subject matter jurisdiction.  Accordingly, this Court must dismiss Plaintiffs' complaint as to The Health Plan.

## III.    CONCLUSION

Accordingly, for the reasons stated more fully above, and in its Motion to Dismiss, this Court must conclude that Plaintiffs Martell and McNemar cannot proceed against The Health Plan under Section 1557 of the Affordable Care Act.  Therefore, the Court must grant The Health Plan's Motion to Dismiss and enter an Order dismissing The Health Plan from this civil action.

*/s/ Stuart A. McMillan*
Stuart A. McMillan (WVSB #6352)
BOWLES RICE LLP
600 Quarrier Street
Charleston, West Virginia  25301
(304) 347-1110
Fax:  (304) 347-1746
smcmillan@bowlesrice.com

Aaron C. Boone (WVSB #9479)
BOWLES RICE LLP
Fifth Floor, United Square
501 Avery Street, Post Office Box 49
Parkersburg, West Virginia  26102
(304) 420-5501
Fax:  (304) 420-5587
aboone@bowlesrice.com

*Counsel for Defendant The Health Plan of West Virginia, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

CHRISTOPHER FAIN; ZACHARY
MARTELL; and BRIAN MCNEMAR,
individually and on behalf of all others similarly
situated,

        Plaintiffs,

v.

WILLIAM CROUCH, in his official capacity as
Cabinet Secretary of the West Virginia
Department of Health and Human Resources;
CYNTHIA BEANE, in her official capacity as
Commissioner for the West Virginia Bureau for
Medical Services; WEST VIRGINIA
DEPARTMENT OF HEALTH AND HUMAN
RESOURCES; TED CHEATHAM, in his official
capacity as Director of the West Virginia Public
Employees Insurance Agency; and THE
HEALTH PLAN OF WEST VIRGINIA, INC.,

        Defendants.

CIVIL ACTION NO. 3:20-cv-00740
JUDGE CHAMBERS

## CERTIFICATE OF SERVICE

        The undersigned, counsel for The Health Plan of West Virginia, Inc., does hereby

certify that on the **23rd day of February, 2021**, I filed the ***Reply to Plaintiffs' Opposition to***

***Defendant The Health Plan of West Virginia, Inc.'s Motion to Dismiss,*** via the Court's CM/ECF

system, which will send notification of such filing to the following CM/ECF participants:

Walt Auvil, Esquire
THE EMPLOYMENT LAW CENTER,
PLLC
1208 Market Street
Parkersburg, West Virginia  26101
(304) 485-3058
Fax:  (304) 485-6344
auvil@theemploymentlawcenter.com
*Counsel for Plaintiffs*

Avatara Smith-Carrington, Visiting Attorney
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
3500 Oak Lawn Avenue, Suite 500
Dallas, Texas  75219
(214)  219-8585
Fax:  (214) 219-4455
asmithcarrington@lambdalegal.org
*Counsel for Plaintiffs*

Anna P. Prakash, Visiting Attorney
Nicole J. Schladt, Visiting Attorney
NICHOLS KASTER, PLLP
IDS Center, 80 South 8th Street
Suite 4700
Minneapolis, Minnesota  55402
(612) 256-3200
Fax:  612-338-4878
aprakash@nka.com
nschladt@nka.com
*Counsel for Plaintiffs*

Sasha Buchert, Visiting Attorney
 LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC. 1776 K Street,
N.W., 8th Floor Washington, DC 20006-2304
(202) 804-6245
Fax:  (202) 429-9574
sbuchert@lambdalegal.org
*Counsel for Plaintiffs*

Lou Ann S. Cyrus, Esquire
Roberta F. Green, Esquire
Caleb B. David, Esquire
Kimberly M. Bandy, Esquire
Shuman McCuskey Slicer PLLC
Post Office Box 3953
Charleston, West Virginia  25339
(304) 345-1400
Fax:  (304) 343-1826
lcyrus@shumanlaw.com
rgreen@shumanlaw.com
cdavid@shumanlaw.com
kbandy@shumanlaw.com
*Counsel for Defendants William Crouch,
Cynthia Beane and West Virginia Department
of Health and Human Resources*

Tara L. Borelli, Visiting Attorney
 Carl S. Charles, Esquire
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
730 Peachtree Street NE, Suite 640
Atlanta, Georgia  30308
(470) 225-5341
Fax:  (404) 897-1884
tborelli@lambdalegal.org
*Counsel for Plaintiffs*

Nora Huppert, Visiting Attorney
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
4221 Wilshire Boulevard, Suite 280
Los Angeles, California  90010
(213) 382-7600
Fax:  (213) 351-6050
nhuppert@lambdalegal.org
*Counsel for Plaintiffs*

Christopher K. Weed, Esquire
David E. Rich, Esquire
Eric Salyers, Esquire
Perry w. Oxley, Esquire
OXLEY RICH SAMMONS
Post Office Box 1704
Huntington, West Virginia  25718
(304) 522-1138
Fax:  (304) 522-9528
cweed@oxleylawwv.com
drich@oxleylawwv.com
esalyers@oxleylawwv.com
poxley@oxleylawwv.com
*Counsel for Ted Cheatham*

*/s/ Stuart A. McMillan*
 Stuart A. McMillan (WVSB #6352)

11

12540773.1