IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

CHRISTOPHER FAIN, *et al.*, individually
and on behalf of all others similarly situated,

    *Plaintiffs*,

 v.

WILLIAM CROUCH, *et al.*,

    *Defendants*.

CIVIL ACTION NO. 3:20-cv-00740

HON. ROBERT C. CHAMBERS, JUDGE

**PLAINTIFFS' COMBINED OPPOSITION TO DEFENDANTS WILLIAM CROUCH, CYNTHIA BEANE, AND WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES, BUREAU FOR MEDICAL SERVICES' MOTIONS TO DISMISS**

## INTRODUCTION

This lawsuit is about discrimination against transgender Medicaid participants in West Virginia. Plaintiff Christopher Fain ("Mr. Fain") challenges Defendants' policy of denying transgender Medicaid participants access to critical gender-confirming care, including counseling, hormone therapy, and surgical care, despite covering these forms of care for cisgender[1] participants as a matter of course. Defendants' discriminatory policy is memorialized through the West Virginia Medicaid Program's blanket exclusion of gender-confirming care, an exclusion that explicitly targets transgender Medicaid participants based on their sex and transgender status (the "Exclusion"). Because access to gender-confirming care is essential for transgender people, Defendants' Exclusion exposes a marginalized group to significant and

---

[1] A cisgender person is one whose "'deeply felt, inherent sense' of their gender—aligns with their sex-assigned-at-birth." *Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586, 594 (4th Cir. 2020), as amended (Aug. 26, 2020).

avoidable harms to their health and wellbeing, inflicts needless suffering and financial hardship on low-income individuals, and violates the U.S. Constitution, the Affordable Care Act ("ACA"), and the federal Medicaid Act.

Despite this, Defendants Crouch, Beane, and West Virginia Department of Health and Human Resources, Bureau for Medical Services ("WVDHHR") ask this Court to dismiss Mr. Fain's claims through not one, but *two* motions to dismiss.  Defendants first filed a partial motion seeking to dismiss Mr. Fain's claim for compensatory damages against WVDHHR, and asking this Court to prematurely rule that the case cannot move forward as a class action.  More than three weeks later—and without leave of Court—Defendants filed a second motion, raising previously waived arguments under Rule 12(b)(6), and attempting to create improper factual disputes at the pleading stage under Rule 12(b)(1).  All of Defendants' arguments fail.

Defendants' first motion to dismiss must be denied for three reasons.  First, Defendant WVDHHR has no sovereign immunity defense because federal law validly waives sovereign immunity under ACA, and no court has held otherwise in cases involving transgender plaintiffs.

Second, a motion to dismiss or strike class action allegations before discovery is an extreme and rarely granted remedy.  This case is in its very early stages.  No discovery has taken place.  Mr. Fain must be permitted to fully develop the factual record in order to meet his burden under *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) of showing that the case can be certified under Rule 23.  This Court should defer ruling on class certification until Mr. Fain has obtained adequate discovery.

Third, even if the Court is inclined to rule on the merits of Defendants' motion, the Complaint is plainly sufficient under Rule 12.  Mr. Fain has alleged claims pursuant to the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, Section 1557 of the

Patient Protection and Affordable Care Act, 42 U.S.C. § 18116 ("Section 1557"), and the comparability and availability requirements of the federal Medicaid Act, 42 U.S.C. § 1396a(a)(10)(A)-(B).  Mr. Fain's claims are premised on Defendants' facially discriminatory Exclusion of gender-confirming care for all transgender people, giving rise to common questions ideal for class resolution.  Contrary to Defendants' assertion, Mr. Fain's class claims—rather than turning on individualized coverage decisions—challenge Defendants' categorical rule that refuses coverage of gender-confirming care for transgender Medicaid participants.  That rule raises the common issue of whether Defendants' Exclusion uniformly prevents transgender people from receiving coverage for gender-confirming care regardless of the individual details of their medical need.

The additional arguments in Defendants' second motion to dismiss similarly fail, notwithstanding their untimely and improper nature.  <u>First</u>, Mr. Fain has standing to bring his claims, and those claims are ripe.  Defendants' attempt to circumvent discovery by introducing fact evidence cannot defeat the plausibility of Mr. Fain's claims.  <u>Second</u>, the Affordable Care Act does not require Mr. Fain to exhaust his available administrative remedies.  <u>Third</u>, Mr. Fain has adequately alleged his adequacy as a class representative under Rule 23(a).

At the motion to dismiss stage, Mr. Fain is not required to prove his case; he must just plausibly plead his claims, giving notice of the claims and the grounds upon which they rest.  Mr. Fain has more than fulfilled this pleading obligation.  For the foregoing reasons, the Court should deny Defendants' motions in their entirety.

## **STATEMENT OF FACTS**

**A.    Plaintiff Christopher Fain and the Proposed Medicaid Class.**

Plaintiff Christopher Fain is a transgender man.  (Compl. ¶ 8.)  He resides in Huntington,

West Virginia and studies nonprofit leadership at Marshall University.  (*Id.* ¶¶ 8, 69.)  Mr. Fain

is a Medicaid participant enrolled for coverage through a managed care organization that

contracts with WVDHHR, namely UniCare Health Plan of West Virginia, Inc., an Anthem

Company ("UniCare").  (*Id.* ¶¶ 8, 59, 80.)

 Mr. Fain has been aware of his gender identity since he was six years old and, since that

first awareness, has identified as male.  (*Id.* ¶ 73.)  Gender identity is a person's internal sense of

their sex.  (*Id.* ¶ 23.)  It is innate, immutable, and has biological underpinnings.  (*Id.*)  The ability

to live consistent with one's gender identity is vital to the health and wellbeing of all people,

including transgender people, and the scientific consensus recognizes that attempts to force

transgender people to ignore their gender identity are profoundly harmful.  (*Id.* ¶¶ 28-30.)  For

most people, their sex-related characteristics are aligned.  (*Id.* ¶ 26.)  But transgender people

experience an incongruence between their gender identity and other sex-related characteristics

that can result in clinically significant distress known as gender dysphoria.  (*Id.* ¶ 31.)  Mr. Fain

delayed his transition for many years, however, for fear that discrimination and stigma against

transgender people would prevent him from being able to support his family.  (*Id.* ¶ 73.)

 Delaying this vital care took an enormous toll on Mr. Fain, and he eventually came out to

his family.  (*Id.* ¶ 74.)  Mr. Fain's children are very supportive of Mr. Fain's transition.  (*Id.*)  In

2018, Mr. Fain obtained a legal name change through a West Virginia court to reflect his gender

identity and updated his name with the Social Security Administration and on his West Virginia

driver's license.  (*Id.* ¶¶ 76, 77.)  In all ways, Mr. Fain lives in accordance with his male gender

identity and is recognized as male by his family, his friends, his classmates, and his professors.

(*Id.* ¶ 78.)

 Mr. Fain has been diagnosed with gender dysphoria, which is recognized as a serious

medical condition by leading medical and behavioral health groups such as the American Medical Association, the American Psychiatric Association, and the American Psychological Association.  (*Id.* ¶¶ 31, 75.)  Untreated gender dysphoria can result in severe anxiety, depression, and even suicidality.  (*Id.* ¶ 32.)  However, gender dysphoria is highly treatable under standards of care that are widely accepted as the best practices for treatment.  (*Id.* ¶¶ 34, 36.)

Because Mr. Fain has not yet had chest reconstruction surgery to masculinize his chest, he often employs the use of a "binder," a compression garment that flattens or reduces the profile of a person's chest, to avoid being incorrectly identified as a woman.  (*Id.* ¶ 85.)  Prolonged use of a binder, however, causes Mr. Fain intense discomfort and often chafes his skin—sometimes leading to sores and difficulty breathing.  (*Id.* ¶ 86.)  Accordingly, Mr. Fain requires a bilateral mastectomy as medically necessary care to alleviate his gender dysphoria and eliminate the need for the ongoing use of a binder.  (*Id.* ¶ 87.)  The blanket Exclusion in the Medicaid plan, however, bars Mr. Fain from receiving this care.  (*Id.* ¶¶ 61, 62, 87.)

In or around February 2019, Mr. Fain's mental health provider recommended that he begin hormone therapy to alleviate his gender dysphoria by aligning his physical characteristics with his gender identity.  (*Id.* ¶ 81.)  Mr. Fain began hormone care on or around March 2019. (*Id.*)  He was eventually informed by his pharmacist that his hormone therapy is not covered by his insurance plan.  (*Id.* ¶¶ 81-82.)  Mr. Fain's UniCare health plan contains an express, categorical exclusion for all gender-confirming care, excluding coverage for "[s]ex transformation procedures and hormone therapy for sex transformation procedures."  (*Id.* ¶ 61.)

Mr. Fain seeks relief not only for himself, but also on behalf of the following proposed Class:

*Medicaid Class*

> All transgender people who are or will be enrolled in West Virginia Medicaid and who are seeking or will seek gender-confirming care barred by the Exclusions.

(*Id.* ¶ 108.)[2]

**B.      Defendants Crouch, Beane, and WVDHHR.**

Defendants William Crouch and Cynthia Beane are sued in their official capacity.  (*Id.* ¶¶ 11, 12.)  As Cabinet Secretary of WVDHHR, Defendant Crouch is responsible for "[d]evelop[ing] a managed care system to monitor the services provided by the [M]edicaid program to individual clients;" is authorized to "[p]repare and submit state plans which … meet the requirements of federal laws, [and] rules governing federal-state assistance;" and is tasked with developing recommendations that require him to "[r]eview … [M]edicaid services which are optional under federal [M]edicaid law and identif[y] … services to be retained, reduced or eliminated."  (*Id.* ¶ 11 (quoting W. Va. Code § 9-2-9(a)(1); W. Va. Code § 9-2-6(12); W. Va. Code § 9-2-9(b)(1).)  Defendant Beane, as Commissioner of the Bureau of Medical Services ("BMS"), is charged with assuring compliance with federal laws and regulations.  (Compl. ¶ 12.)  Both Defendant Crouch and Beane exercise their authority to ensure that gender-confirming care is designated as a noncovered service for transgender Medicaid participants.  (*Id.* ¶¶ 11, 12.)

Defendant WVDHHR is the single state agency charged with the responsibility of administering the Medicaid program in West Virginia.  (*Id.* ¶ 13.)  WVDHHR is a recipient of federal funds from the U.S. Department of Health and Human Services ("HHS"), including

---

[2] Plaintiffs seek relief from the remaining Defendants in the case—including Defendants Ted Cheatham and The Health Plan of West Virginia, Inc.—on behalf of a separate State Employee Health Plan Class and The Health Plan Subclass.  (*Id.* ¶¶ 109-110.)  No Defendant challenges those class allegations; though, Defendants Cheatham and The Health Plan have each separately moved to dismiss the underlying legal claims.

Medicaid funding.  (*Id.*)  WVDHHR establishes eligibility standards for Medicaid providers, determines benefits, sets payment rates, reimburses providers, and maintains the West Virginia Medicaid State Plan.  (*Id.*)

As alleged in the Complaint, Defendants collectively maintain and enforce a state Medicaid Plan that expressly excludes gender-confirming care for transgender individuals.  This is discrimination.  First, although Defendants say they "strive[] to assure access to appropriate, medically necessary and quality health care services for all members," the Medicaid Policy Manual provides that the Medicaid Plan does not cover "[t]ranssexual surgery."  (*Id.* ¶ 61.)  Second, each managed care organization contains an exclusion of gender-confirming care in its managed care plan.  For example, (1) UniCare excludes coverage for "[s]ex transformation procedures and hormone therapy for sex transformation procedures;" (2) The Health Plan provides that "[s]ex change, hormone therapy for sex transformation, and gender transition procedures/expenses will not be paid for by The Health Plan;" and (3) Aetna Better Health excludes coverage for "[s]ex transformation procedures and hormone therapy for sex transformation procedures."  (*Id.*)  Defendants categorically exclude coverage for gender-confirming care through the Exclusions, even though the same treatments are covered for cisgender Medicaid participants as a matter of course.  (*Id.* ¶ 62.)

C.    **Procedural History.**

After receiving an extension for filing their initial response to Mr. Fain's complaint, Defendants timely filed a ***partial*** motion to dismiss on January 11, 2021, seeking to dismiss only two aspects of Mr. Fain's suit.  (ECF No. 25 ("MTD I").)  First, they argued that Mr. Fain should not be able to recover compensatory damages under the ACA, but did not challenge his claim for injunctive and declaratory relief.  MTD I at 2.  Second, they moved to dismiss Mr. Fain's class

allegations.  *Id.*  On the same day, Defendants answered all of Mr. Fain's other claims.  (ECF No. 26.)  For clarity, Mr. Fain's claims against the respective Defendants are detailed below, along with their treatment in Defendants' timely January 11, 2021 response:

1. ***Count One,*** Deprivation of Equal Protection U.S. Const. amend. XIV, against Defendants Crouch and Beane for declaratory and injunctive relief.  ***Defendants answered this claim.***  (*Id.*)

2. ***Count Two,*** Violation of Section 1557 of the Patient Protection and Affordable Care Act:

   a. Against Defendant BMS, Defendant Crouch, and Defendant Beane for declaratory and injunctive relief.  ***Defendants answered this claim.***  (*Id.*)

   b. Against Defendant BMS for compensatory damages.  ***Defendants moved to dismiss this claim.***  MTD I at 2.

3. ***Count Three,*** Violation of the Medicaid Act's Availability Requirements, against Defendants Crouch and Beane for declaratory and injunctive relief.  ***Defendants answered this claim.***  (ECF No. 26.)

4. ***Count Four,*** Violation of the Medicaid Act's Comparability Requirements, against Defendants Crouch and Beane for declaratory and injunctive relief.  ***Defendants answered this claim.***  (*Id.*)

Twenty-two days after their response to Mr. Fain's complaint was due—with no leave from the Court or consultation with Mr. Fain's counsel—Defendants filed a second motion to dismiss.  (ECF No. 33 ("MTD II").)[3]  Remarkably, Defendants offered no explanation for their

---

[3] The Court granted Mr. Fain additional time to confer with defense counsel and file a combined brief responding to both motions to dismiss.  (ECF No. 35.)  The parties have since conferred

second untimely filing other than stating in a footnote that the "arguments raised in this motion are in addition to those previously asserted, which these Defendants incorporate by reference." *Id.* at 2 n.1.  The second motion raises a series of arguments—at least some of which were fully available to Defendants at the time of their first motion—with no explanation for Defendants' effort to shoehorn them into the case after the midnight hour.

Defendants also claim to have discovered certain facts about some of Mr. Fain's allegations of harm.  MTD II at 3-5.  Specifically, Defendants dispute the dates that Mr. Fain received and was denied coverage.  *Id.* at 3-4.  Additionally, Defendants dispute the ground on which Mr. Fain was first denied coverage, and assert that the claims processor for pharmaceutical coverage does not have a policy of enforcing the Medicaid plan's express Exclusion of gender-confirming hormonal care.  *Id.* at 4-5.   Defendants thus move to dismiss Mr. Fain's claims under Rule 12(b)(1) on the ground that his factual allegations are purportedly untrue.  Defendants further argue—for the first time, and based on no new facts or information— that dismissal under Rule 12(b)(1) is warranted because Mr. Fain did not undertake the futile act of requesting coverage for gender-confirming surgery, even though it is expressly excluded from coverage in his health plan.  MTD II at 5-6.  Finally, Defendants seek dismissal of Mr. Fain's claims under Rule 12(b)(6) because (1) he purportedly failed to exhaust administrative remedies, and (2) Defendants believe he is not an adequate class representative—arguments simply dropped into Defendants' second motion without justification.  MTD II at 2.  Despite the plausibility of the claims alleged in the Complaint, Defendants ask this Court to dismiss them. As explained below, Defendants should not be permitted an untimely second-bite-at-the-apple

---

and engaged in limited informal discovery, but have not been able to reach agreement on topics raised in Defendants' second motion to dismiss.

for arguments they have waived.  But their arguments fail even when considered on the merits. Defendants' motions to dismiss should be denied because the Complaint is plainly sufficient.

## LEGAL STANDARD

All the Federal Rules of Civil Procedure require is for plaintiffs to plead "a short and plain statement of the claim showing that [they are] entitled to relief."  Fed. R. Civ. P. 8(a)(2). To survive a 12(b)(6) motion to dismiss, Mr. Fain must demonstrate that he has pled sufficient facts to state a plausible claim for relief.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).  The Court must draw all reasonable inferences from the facts in Mr. Fain's favor.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

"A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction can follow two tracks."  *Fluharty v. Peoples Bank, NA*, No. 3:17-cv-4220, 2018 WL 1954829, at *2 (S.D.W. Va. Apr. 24, 2018).  Where a defendant contends that a complaint fails to allege sufficient facts for subject matter jurisdiction, this is treated as a "facial challenge" under Rule 12(b)(1), and "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration."  *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quote omitted).  On the other track, a party may assert a "factual attack," claiming that the jurisdictional allegations made in the complaint are inaccurate.  *Fluharty*, 2018 WL 1954829, at *2.  When the jurisdictional allegations are intertwined with merits-related facts, "a trial court should dismiss under Rule 12(b)(1) only when the jurisdictional allegations are 'clearly ... immaterial, made solely for the purpose of obtaining jurisdiction or where such a claim is wholly

unsubstantial and frivolous.'" *Kerns*, 585 F.3d at 193 (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946).)

Here, Mr. Fain's Complaint plainly satisfies the liberal pleading standard set forth in the Federal Rules, alleges sufficient facts for subject matter jurisdiction, and provides Defendants with fair notice of his claims and the basis on which he seeks relief; therefore, Defendants' motions to dismiss should be denied.

## ARGUMENT

## I.    THE COURT MUST DENY DEFENDANTS' FIRST MOTION TO DISMISS.

### A.    The State Has No Sovereign Immunity Defense to Plaintiff's Request for Compensatory Damages Under the ACA.

Defendants erroneously assert that Mr. Fain cannot seek compensatory damages against WVDHHR under the ACA because of Eleventh Amendment sovereign immunity principles. MTD I at 2, 4-6.  The fatal flaw in their argument, however, is that Defendant WVDHHR knowingly and voluntarily waives sovereign immunity by accepting funds conditioned on compliance with the ACA's nondiscrimination obligations.  (Compl. ¶¶ 48, 52, 56, 139(A).)

Defendants recognize that "the United States Congress can condition the receipt of federal funds on waiver of sovereign immunity," as long as that condition is unequivocally expressed.  MTD I at 5.  Their sole argument is that Congress did not effect an unambiguous waiver with respect to the ACA.  But the very cases Defendants cite support Mr. Fain instead, and every court to consider claims by transgender plaintiffs under the ACA—including another district court in this Circuit—has found an effective waiver of sovereign immunity under the ACA.  *See Kadel v. Folwell*, 446 F. Supp. 3d 1, 15-17 (M.D.N.C. 2020)[4]; *Boyden v. Conlin*, 341

---

[4] *Kadel* involved the same sovereign immunity argument by a North Carolina state employee health plan that also excludes gender-confirming care.  The court rejected the health plan's

11

F. Supp. 3d 979, 999 (W.D. Wis. 2018) ("the court rejects defendants' claim of immunity from suit under the ACA"); *Esparza v. Univ. Med. Ctr. Mgmt. Corp.*, No. 17-cv-4803, 2017 WL 4791185, at *7 (E.D. La. Oct. 24, 2017) (if an entity is subject to Section 1557, "then—pursuant to the terms of § 2000d-7—that entity has waived its immunity"); *cf. Flack v. Wis. Dep't of Health Servs.*, 328 F. Supp. 3d 931, 950 (W.D. Wis. 2018) (rejecting Wisconsin's argument that transgender plaintiffs could not hold the state liable because of insufficient notice under the ACA).

Congress often relies on its power under the Spending Clause to condition a grant of federal financial assistance on a promise by the recipient not to discriminate. *See Madison v. Virginia*, 474 F.3d 118, 124 (4th Cir. 2006). This has long been recognized as a permissible method of encouraging conformance with federal policy since states may then decide whether to decline the assistance. *Id.* Congress has no obligation to disburse funds free of conditions because "such funds are gifts" that states may choose to accept or not. *Litman v. George Mason Univ.*, 186 F.3d 544, 552 (4th Cir. 1999) (quote and emphasis omitted). A state waives its immunity by participating in federal spending programs, "so long as Congress has expressed 'a clear intent to condition participation ... on a State's consent to waive its constitutional immunity.'" *Kadel*, 446 F. Supp. 3d at 15 (internal quote omitted).

Defendants argue that no waiver can be found because Section 1557 "does not specify an unequivocal expression of waiver of sovereign immunity in exchange for the receipt of federal funds under the ACA." MTD I at 6. That unequivocal waiver of sovereign immunity, however, is provided by the Civil Rights Remedies Equalization Act ("CRREA"), 42 U.S.C. § 2000d-

---

sovereign immunity argument, and the health plan appealed to the Fourth Circuit, which will hear argument in the appeal on March 11, 2021. *See* ECF No. 57, Remote Oral Argument Notification, *Kadel v. N.C. State Health Plan*, No. 20-1409 (4th Cir.).

7(a)(1) ("A State shall not be immune under the Eleventh Amendment … from suit in Federal court for a violation of section 504 of the Rehabilitation Act …, title IX …, the Age Discrimination Act …, title VI …, or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance"), which governs claims under Section 1557 of the ACA.  Essentially, "Congress struck a bargain with the states: if a federal statute prohibits discrimination on a certain basis by recipients of federal money, then a state entity that receives federal money is subject to suit … for violations of that nondiscrimination provision." *Esparza*, 2017 WL 4791185, at *6.

The Fourth Circuit has repeatedly recognized that, "in passing CRREA, 'Congress succeeded in its effort to ***codify a clear, unambiguous, and unequivocal condition of waiver of [sovereign] immunity***,' such that 'any state reading [CRREA] in conjunction with' an applicable nondiscrimination provision 'would clearly understand' that it consents to suit for violations of the statute in question." *See Kadel*, 446 F. Supp. 3d at 15 (quoting *Litman*, 186 F.3d at 554 and *Lane v. Pena*, 518 U.S. 187, 198, 200 (1996) (emphasis added)).  CRREA's waiver of immunity applies equally to the ACA as a "[f]ederal statute prohibiting discrimination by any health program or activity, any part of which is receiving Federal financial assistance."  42 U.S.C. § 2000d-7(a)(1).  While CRREA does not apply to every federal program, it does so where the statute is similar to "the statutes expressly listed." *Kadel*, 446 F. Supp. 3d at 15 (quote omitted). Section 1557 is not only like the statutes listed in CRREA, but expressly incorporates their prohibited grounds of discrimination and enforcement mechanisms. *Compare* 42 U.S.C. § 2000d-7(a)(1) (CRREA's express waiver of immunity under Section 504, Title IX, the Age Discrimination Act, and Title VI) *with* 42 U.S.C. § 18116(a) (Section 1557's prohibition of discrimination on the grounds in those identical statutes).  "In short, it is hard to see how Section

1557 could be any more 'like the statutes expressly listed.'" *Kadel*, 446 F. Supp. 3d at 16; *see also Esparza*, 2017 WL 4791185, at *8 ("[CRREA] is an example of a valid waiver ... and the plain text of § 1557 fits within the four corners of that waiver.").

Mr. Fain's allegations fall squarely within this framework, alleging that Defendant WVDHHR is the "'single state agency' charged with the responsibility of administering 'the [M]edicaid program' in West Virginia[,]" that WVDHHR is "jointly funded by the state of West Virginia and the federal government," and that that WVDHHR "is a recipient of federal funds from HHS, including Medicaid funding." (Compl. ¶ 13.) As the recipient of federal assistance, Defendant WVDHHR has chosen to accept funds conditioned on the nondiscrimination requirements of Section 1557. (*Id*.)

In sum, when read in conjunction with CRREA, Section 1557 effectuates a valid waiver of sovereign immunity, no court considering a similar challenge has held otherwise, and Mr. Fain's pleading stands. As such, Mr. Fain should be permitted to move forward with his claim for compensatory damages from WVDHHR, in addition to the requests for declaratory and injunctive relief that Defendants did not challenge in their first motion to dismiss.

**B.     Mr. Fain's Class Allegations Are More than Adequate and Should Stand.**

**1.     The proper time to make determinations about the proposed classes is upon a motion for class certification.**

As a preliminary matter with respect to Defendants' attack on the Medicaid Class, the Court should deny Defendants' motion as procedurally infirm. Indeed, "[c]ourts consistently deny such motions because class allegations should not be addressed at the pleading stage, before plaintiff has had full opportunity for discovery and to revise the class definition as necessary." *Alig v. Quicken Loans Inc.*, No. 5:12-CV-114, 2015 WL 13636655, at *3 (N.D.W.

Va. Oct. 15, 2015)[5]; *see also Post v. AmerisourceBergen Corp.*, No. 1:19-CV-73, 2020 WL

6385621, at *5 (N.D.W. Va. Oct. 30, 2020); *Gibson v. Confie Ins. Grp. Holdings, Inc.*, No. 2:16-

CV-02872-DCN, 2017 WL 2936219, at *12 (D.S.C. July 10, 2017) ("Defendants can bring up

the same arguments … at the class certification stage, after … discovery."); *Miller v. Baltimore

Gas & Elec. Co.*, 202 F.R.D. 195, 200 (D. Md. 2001) (declining to dismiss and concluding that

"the next step is to allow … appropriate discovery on class certification issues").

Defendants themselves acknowledge "more usually commonality would be addressed at

the certification stage." MTD I at 8. More ironically, Defendants cite *Rhodes v. E.I. du Pont de

Nemours & Co.* to support their position that commonality in this case should be addressed pre-

discovery. 253 F.R.D. 365 (S.D.W. Va. 2008). *Rhodes*, however, is a post-discovery class

certification opinion, not an opinion on a motion to dismiss. *Id.* at 367.[6] Judge Goodwin, who

authored *Rhodes*, later emphasized the significance of this distinction:

> In *Rhodes* … I explained that to succeed on a motion for class certification …, the
> plaintiffs must offer evidence that commonly proves the elements [of the claim] for each
> proposed class member …. In this case, however, because discovery is not complete
> there is no evidence upon which to evaluate … a common method of proof or whether
> individualized assessment … is necessary. Defendant's arguments on the issues of
> commonality and cohesiveness … are merely speculation at this point in the proceedings.

*Letart v. Union Carbide Corp.*, No. 2:19-CV-00877, 2020 WL 2949781, at *3-4 (S.D.W. Va.

June 3, 2020). The same reasoning applies here. This case was only just filed, and discovery has

not begun. On the pleadings, Defendants cannot clear the requisite "high bar of showing that

---

[5] *Alig* involved a motion to strike, not dismiss. *Id.* The standard, however, is the same "when a
defendant files a pre-discovery challenge to class certification on the basis of the allegations in
the complaint only …." *Post v. AmerisourceBergen Corp.*, No. 1:19-CV-73, 2020 WL 6385621,
at *3 (N.D.W. Va. Oct. 30, 2020) (internal quotations omitted).

[6] *Bessette v. Avco Fin. Servs., Inc.*, cited by Defendants, supports Mr. Fain's position. 279 B.R.
442, 452 (D.R.I. 2002). There, the court refused to strike class allegations prior to discovery,
noting "[i]t is not appropriate to require plaintiff to establish that she can maintain a class action
under Rule 23 before plaintiff even attempts to do so." *Id.* at 450.

taking the allegations in the Complaint as true, the proposed class could not plausibly satisfy the requirements of Rule 23." *Sommerville v. Union Carbide Corp.*, No. 2:19-CV-00878, 2020 WL 2945541, at *2 (S.D.W. Va. June 3, 2020); *see also, infra*, Sect. I(B)(2).)  The Court should deny Defendants' motion.

### 2.    Mr. Fain's claims are appropriate for class treatment.

Regardless, the Medicaid Class allegations are sufficiently pled and entirely consistent with Rule 23.  To begin, class actions "save[] the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion[.]" *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (internal quotation marks and modifications omitted).  As discussed herein, utilizing the class action device in this case would both promote such economy and be entirely consistent with the requirements of Rule 23. Indeed, contrary to Defendants' view, Rule 23 is not rigid and inflexible.  Rather, when analyzing class certification under Rule 23, the Fourth Circuit encourages courts to "give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular case best serve the ends of justice for the affected parties and … promote judicial efficiency." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003) (quotation marks omitted).  And, courts have "wide discretion in deciding whether or not to certify a proposed class." *Cent. Wesleyan Coll. v. W.R. Grace & Co.,* 6 F.3d 177, 185 (4th Cir. 1993).  Given all of this and for the reasons set forth below, there is no reason for the Court to dismiss Mr. Fain's allegations as to the Medicaid Class at this stage of litigation.

a.    *Mr. Fain adequately pleaded the prerequisites of Rule 23(a).*

Rule 23(a) requires a showing of numerosity, commonality, typicality, and adequacy. Defendants do not contest adequacy in their first motion to dismiss, and make only passing

reference to typicality within the context of commonality.[7]  MTD I at 13.  Similarly, without actually contesting the sufficiency of Mr. Fain's allegations as to numerosity, Defendants merely opine that Mr. Fain may have trouble with this requirement at the class certification stage.  MTD I at 8 n.25.  At this stage, however, Mr. Fain's allegations are enough.

Thus, the only requirement of Rule 23(a) Defendants truly contest in their first motion to dismiss is commonality, which requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  All questions need not be common; even a single common question will do.  *Dukes*, 564 U.S. at 359.  What matters is "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."  *Id.* at 350.  There must be a contention that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*  Defendants claim this does not exist here.  Defendants are wrong.

***First and foremost***, Mr. Fain's proposed class action framework is both sound and practical because it focuses on the common questions and answers that arise from Defendants' categorial Exclusion.  Specifically, Mr. Fain seeks a liability determination on Defendants' categorical Exclusion, which excludes gender-confirming care for all transgender people.  Mr. Fain seeks only declaratory and injunctive relief for the class, not money damages for the class as Defendants suggest.  *Compare* Compl. ¶¶ 6, 117 *with* MTD I at 7.  The class allegations in this case target Defendants' facially discriminatory Exclusion of gender-confirming care in the health plans Defendants offer to Medicaid participants.  (Compl. ¶¶ 61-62.)  The Exclusion is a blanket one that does not vary from person to person.  For example, the state's Medicaid Policy

---

[7] Defendants do raise adequacy and related typicality concerns in their untimely second motion to dismiss.  Mr. Fain accordingly addresses those topics below in responding to Defendant's second motion.  *See infra* Sect. II.

Manual provides that the Medicaid Plan does not cover "[t]ranssexual surgery." (*Id.* ¶ 61.) The managed care organizations that Defendants contract with have corresponding Exclusions of gender-confirming care in their health plans. (*Id.*) Defendants acknowledge that a "general policy of discrimination that applied to all class members" suffices for commonality, but claim that does not apply here because the Medicaid health plans do not use the word "transgender" or "gender dysphoria." MTD I at 13-14. But that is not the question. *Cf. Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1734 (2020) ("it is irrelevant what an employer might call its discriminatory practice, [or] how others might label it"). The correct question—which is common to all class members—is whether the Exclusion discriminates on the basis of sex and transgender status. It does, as the explicitly sex-based terms in the Exclusion make clear. (*See* Compl. ¶ 61 (the Medicaid Policy Manual excludes "[t]ranssexual surgery" and UniCare excludes coverage for "[s]ex transformation procedures and hormone therapy for sex transformation procedures").)

Mr. Fain alleges that this single policy—which applies to the entire statewide Medicaid program and is carried out uniformly—violates the U.S. Constitution, the Affordable Care Act, and the federal Medicaid Act. (*Id.* ¶¶ 118-56.) Each of Mr. Fain's class claims are premised on this policy, and each give rise to common questions ideal for resolution as a class action. (*Id.* ¶¶ 113-14.) These common questions include (1) whether Defendants' Exclusion, facially and as applied to members of the proposed Class, violates the constitution and federal law; and (2) whether Defendants should be enjoined from enforcing the Exclusion and denying Mr. Fain and members of the proposed Class coverage for and access to gender-confirming care. (*See* MTD I at 13; Compl. ¶ 113.)

Critically, under this framework, liability will not turn on individualized determinations.

The challenged policy here is that Defendants categorically deny coverage for gender-confirming care pursuant to a facially discriminatory policy. If Defendants had no categorical Exclusion and were making individualized determinations about whether, for example, Person A or Person B could receive coverage for gender-confirming care, that would be one thing. But nothing in Mr. Fain's well-pleaded Complaint gives rise to a reasonable inference that Defendants even attempt to make such determinations—in fact, the Exclusion categorically precludes it. Rather, gender-confirming care is prohibited for all transgender plan members. And whether someone is ultimately eligible is neither here nor there because, at present, there is no path to even demonstrate eligibility. By closing off that path in definitive terms and without any regard to individualized circumstances, Defendants discriminate against all plan members on the basis of sex and transgender status.

Consistent with this framework, courts have certified classes where health plan participants challenged blanket exclusions from coverage. *See, e.g.*, *Flack v. Wisconsin Dep't of Health Servs.*, 331 F.R.D. 361, 368 (W.D. Wis. 2019) (certifying a class of transgender people as to Wisconsin's Medicaid exclusions); *Pashby v. Cansler*, 279 F.R.D. 347, 356 (E.D.N.C. 2011), *aff'd and remanded sub nom. Pashby v. Delia*, 709 F.3d 307 (4th Cir. 2013) (certifying a class under the Medicaid Act's comparability requirement); *Hawkins v. Cohen*, 327 F.R.D. 64, 81 (E.D.N.C. 2018), *modified on reconsideration*, No. 5:17-CV-581-FL, 2018 WL 6445416 (E.D.N.C. Dec. 10, 2018) (certifying two classes in a case with federal Medicaid Act and due process claims); *Caldwell v. UnitedHealthcare Ins. Co.*, No. C 19-2861 WHA, 2020 WL 7714394, at *4 (N.D. Cal. Dec. 29, 2020) (certifying a class where the defendant denied all requests for lipedema surgery); *Cyrus ex rel. McSweeney v. Walker*, 233 F.R.D. 467, 471 (S.D.W. Va. 2005) (certifying a class under the Medicaid Act). This Court, following discovery

and upon Mr. Fain's motion for class certification, should do the same.  At this stage, however, the framework described and the cases cited above demonstrate that the class allegations are sufficiently alleged.

**Second**, the arguments Defendants raise about commonality are—at their root—arguments about defining the scope of the proposed Class.  For example, Defendants argue that this case would either (1) require the Court to "[vet each Class Member] for inclusion within the rubric (diagnosis, presenting complaints, claim submission, outcome, basis for denial, review sought)," or (2) "focus solely on the catchall: violation of the ACA on the basis of sex."  MTD I at 9.  But Defendants paint a false dichotomy between the "overly particularized" and the "insufficiently particularized."  *Id.*  The fact of the matter is that Defendants' Exclusion operates in a categorical way such that Mr. Fain's sex and transgender status alone trigger an automatic and blanket denial of gender-confirming care.  (Compl. ¶¶ 125, 143, 152, 156.)

Mr. Fain anticipates that discovery will show that Defendants can identify through billing codes or similar means transgender individuals who were denied health care on the basis of the Exclusion.  Each denial on the basis of the Exclusion points toward a putative Class Member.  And any additional concerns regarding the scope of the Class can be addressed by amending the class definition post-discovery at the class certification stage. *See e.g.*, *Harris v. Rainey*, 299 F.R.D. 486, 490 (W.D. Va. 2014) (amending the class definition to meet ascertainability and cohesiveness requirements at certification).

**Third**, neither *Dukes* nor any of Defendant's other cited cases are to the contrary.  This is not a case where Mr. Fain's theory of commonality depends on statistical and anecdotal evidence, like the plaintiffs in *Dukes*.  564 U.S. at 356.  Instead, commonality in this case stems

20

from Defendants' express decision to exclude gender-confirming care in its Medicaid health plans. Indeed, Defendants' own brief demonstrates how dissimilar *Dukes* is. Defendants argue:

> The similarities to the *Dukes* exemplar of the forbidden class are striking:

>> "Do all of us plaintiffs indeed work for Wal-Mart? Do our managers have discretion over pay? Is that an unlawful employment practice? What remedies should we get?"

> That is, in this instance,

>> Are all of us plaintiffs indeed transgender? Do the insurers ***categorically*** exclude gender-confirming care? Is that an unlawful practice? What remedies should we get?

MTD I at 13 (emphasis added). All of Defendants' questions can be answered for the proposed Class as a whole. Defendants' use of the word "categorically" only serves to highlight the uniformity with which Defendants deny gender-confirming care to transgender individuals, regardless of medical necessity or individualized circumstances. This is the definition of commonality needed for a class action. *See Dukes*, 564 U.S. at 355.

Despite common questions driving Mr. Fain's claims, Defendants insist that such claims could never be amenable to class treatment. MTD I at 7. Defendants cite *Cyrus ex rel. McSweeney* to support this assertion.[8] Yet *Cyrus* counsels in ***favor*** of class certification in this case. Like the plaintiffs in *Cyrus*, Mr. Fain and members of the proposed Class in this case have been denied benefits due to uniform state-level policy. *Id.* at 471 (granting certification). As a

---

[8] Defendants also point to *Paulino v. Dollar Gen. Corp.*, No. 3:12-CV-75, 2014 WL 1875326 (N.D.W. Va. May 9, 2014) and *Levitt v. Fax.com*, No. CIV. WMN-05-949, 2007 WL 3169078 (D. Md. May 25, 2007) to argue that particularized issues defeat commonality. Notably, these are both class certification decisions made post-discovery. Additionally, neither case applies to the present situation. *Paulino* tackles the issue of fail-safe cases and administrative hurdles in the context of commonality, an issue that is not articulated directly by Defendants in their briefing. 2014 WL 1875326 at *3-5. And *Levitt* involved a previously certified class that the court decertified only after Fax.com went out of business and stopped participating in litigation, thereby creating an ascertainability issue. 2007 WL 3169078 at *1.

result, common questions of law and fact bear more on the outcome of this case than the particularities of the proposed Class Members' health histories.[9] *See id.* at 471.  Defendants even make this point themselves: "Indeed, in the broadest sense and taken as a matter of fact and law, the Plaintiffs are challenging the healthcare underwriting system itself, such that their claims are largely unrelated to any particular person's experience …."  MTD I at 8 n.23. Additionally, Mr. Fain does not seek a determination that any or all class members are entitled to specific care—merely that the Exclusion must fall so that class members can seek to demonstrate eligibility for care like every other plan member.

> b.  *Mr. Fain adequately pleaded the requirements of Rule 23(b)(2).*

In addition to the prerequisites of Rule 23(a), a class action must also be maintainable under Rule 23(b).  Under Rule 23(b)(2), a class may be certified if the defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive or declaratory relief is appropriate respecting the class as a whole."  Mr. Fain's claims can be maintained under Rule 23(b)(2) for purposes of determining liability and class-wide injunctive and declaratory relief.  As the Supreme Court clarified in *Dukes*, certification under (b)(2) is appropriate where "a single injunction or declaratory judgment would provide relief to each member of the class."

---

[9] Defendants also cite *Rhodes*, 253 F.R.D. at 367, 370 for the proposition that "medical claims" are uniquely unsuited to class action treatment for reasons of commonality.  MTD I at 8 n.4, 17 n.43.  However, Defendants' characterization of *Rhodes* is disingenuous at best.  *Rhodes* involved a medical monitoring claim.  253 F.R.D. at 373.  The elements of a medical monitoring claim do not bear on the certifiability of Mr. Fain's class claims.  Moreover, Defendants' underlying assumption—that "medical claims" are inherently uncertifiable—is patently untrue. Class actions like the one proposed here have been used to determine the scope of Medicaid regulations and the legality of insurance coverage in many other cases throughout the nation. *See, e.g., Flack,* 331 F.R.D. at 368; *Pashby,* 709 F.3d at 307; *Hawkins,* 327 F.R.D. at 81; *Caldwell*, 2020 WL 7714394, at *4; *Cyrus,* 233 F.R.D. at 467.

564 U.S. at 360.  This is precisely the case here, where Mr. Fain seeks relief to address a uniform

Exclusion, applicable to the entire proposed Class.[10]  (Compl. ¶ 117.)

Although Rule 23(b)(2) does not incorporate a predominance requirement, courts in the

Fourth Circuit require plaintiffs "to provide an intelligible description of a cohesive class."

*Kennedy v. Sullivan*, 138 F.R.D. 484, 489 (N.D.W. Va. 1991) (quoting *Christman v. Am.*

*Cyanamid Co.*, 92 F.R.D. 441, 446 (N.D.W. Va. 1981)).  That said, the Fourth Circuit has held

that "Rule 23(b)(2)'s categorical exclusion of class actions seeking primarily monetary relief,

like Rule 23(b)(3)'s predominance requirement, therefore ensures that the class is sufficiently

cohesive that the class-action device is properly employed."  *Thorn v. Jefferson-Pilot Life Ins.*

*Co.*, 445 F.3d 311, 330 (4th Cir. 2006).[11]  Mr. Fain adequately pleaded a Rule 23(b)(2) class in

this case, and his class claims should not be dismissed.

Finally, Defendants' arguments regarding contractual relationships do not bear on the

sufficiency of the Medicaid Class allegations under Rule 23(b)(2).  MTD I at 9.  The case

Defendants cite, *General Motors Corp. v. Romein*, 503 U.S. 181 (1992), examines the

constitutionality of a state statute in a case where the plaintiffs argued the statute substantially

impaired contracts with their employees.  Not only are the facts of *General Motors* wholly

unrelated to the facts in Mr. Fain's case, but also the Supreme Court in *General Motors* never

even reached the issue of contract impairment.  *Id.* at 186-87.  Further, the fact that Defendants

contracted with health insurance companies to purchase health plans that facially discriminate

against transgender individuals in West Virginia does not give Defendants carte blanche to flout

---

[10]Again, Defendants incorrectly characterize Mr. Fain's case as "[a] class action for monetary damages."  MTD I at 7.)  Mr. Fain is not seeking class certification under Rule 23(b)(3).

[11] *Christman* also demonstrated that district courts have the discretion to redefine classes at the certification stage to make them more cohesive if necessary.  92 F.R.D. at 446.

the Constitution and federal law.  Because Mr. Fain seeks to enjoin enforcement of the Exclusion such that the state of West Virginia no longer categorically denies health care to individuals on the basis of sex and transgender status, Mr. Fain's proposed Class is certifiable under Rule 23(b)(2).  *See Flack*, 331 F.R.D. at 370 ("[C]ertification of the Proposed Class is warranted under Rule 23(b)(2) because the categorical coverage ban on gender-confirming care under the Challenged Exclusion is generally applicable to the class, making a final injunction and corresponding declaratory judgment appropriate to the full class.")[12]

## II.    THE UNTIMELY ARGUMENTS IN DEFENDANTS' SECOND MOTION TO DISMISS SHOULD NOT BE CONSIDERED, BUT ALL ARGUMENTS FAIL ON THE MERITS IN ANY EVENT.

Defendants' arguments about standing and ripeness under Rule 12(b)(1) distort the standards applicable to testing a plaintiff's claim at the pleading stage and create—at most—a factual dispute that must be resolved after discovery.  For Defendants' remaining arguments, the Federal Rules of Civil Procedure are clear: "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."  Fed. R. Civ. P. 12(g)(2).[13]  In violation of this rule, Defendants filed an unauthorized second motion raising untimely arguments under Rule 12(b)(6), attempting to resuscitate an exhaustion defense they have already waived, and tacking on an argument related to Mr. Fain's adequacy as representative of the proposed Medicaid Class.

---

[12] Defendants suggest that the proper avenue for seeking Mr. Fain's desired remedy is administrative or legislative challenge.  MTD I at 8.  But the very purpose of constitutional protections is "to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts."  *Bostic v. Schaefer*, 760 F.3d 352, 379 (4th Cir. 2014) (quote omitted).  Mr. Fain's requested injunctive and declaratory relief is proper under Rule 23.

[13] Rule 12(h)(2) allows parties to raise a defense of failure to state a claim upon which relief can be granted in additional limited circumstances, none of which apply here.

Defendants' untimely arguments should thus be stricken.

> **A.      Mr. Fain Has Standing and His Claims Are Ripe.**

Defendants argue that Mr. Fain lacks standing to pursue his claims, and that they are not

ripe.  MTD II at 7-11.  Defendants are wrong.  To demonstrate standing, a plaintiff must "present

[1] an injury that is concrete, particularized, and actual or imminent; [2] fairly traceable to the

defendant's challenged behavior; and [3] likely to be redressed by a favorable ruling."  *Dep't of*

*Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019) (citation omitted).  With respect to

ripeness, a claim should only be "dismissed as unripe if the plaintiff has not yet suffered injury

and any future impact 'remains wholly speculative.'"  *Doe v. Va. Dep't of State Police*, 713 F.3d

745, 758 (4th Cir. 2013) (quoting *Gasner v. Bd. of Sup'rs of the Cty. of Dinwiddie, Va.*, 103 F.3d

351, 361 (4th Cir. 1996)).  When determining whether a case is ripe, courts "balance the fitness

of the issues for judicial decision with the hardship to the parties of withholding court

consideration."  *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006) (quote omitted).

"Although the phrasing makes the questions of who may sue and when they sue seem

distinct, in practice there is an obvious overlap between the doctrines of standing and ripeness."

*South Carolina v. United States*, 912 F.3d 720, 730 (4th Cir. 2019) (quote omitted).

Accordingly, "[a]nalyzing ripeness is similar to determining whether a party has standing."

*Miller*, 462 F.3d at 319.  Because of the doctrines' close relationship, and the fact that

Defendants raise standing and ripeness challenges based on the same nucleus of facts, Mr. Fain

discusses the doctrines together here.  *See* MTD II at 7 (challenging Mr. Fain's standing on the

ground that he allegedly has not been denied coverage for hormone therapy or surgery) and 11

(challenging the ripeness of Mr. Fain's claims because he allegedly has not been denied coverage

for hormone therapy or surgery).

A "defendant may challenge subject matter jurisdiction [under Rule 12(b)(1)] in one of two ways." *Kerns*, 585 F.3d at 192.  First, a defendant can argue that the complaint "simply fails to allege facts upon which subject matter jurisdiction can be based." *Id.* (quote omitted).  Second, the defendant can argue that the jurisdictional allegations of the complaint [are] not true." *Id.* (quote omitted).  The standard of review differs between the two forms of argument, and because Defendants challenge Mr. Fain's surgical and hormonal denials on different grounds, they must be evaluated under different standards.

### 1.     Mr. Fain's surgery-related allegations.

Defendants do not claim that any of the facts surrounding Mr. Fain's lack of access to surgery are untrue, merely that because Mr. Fain has not taken the futile step of requesting the excluded surgery, he lacks standing and his claims are not ripe.  MTD II at 5-6.  In this "situation, the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192.

Defendants claim that because Mr. Fain has not yet sought preauthorization for a bilateral mastectomy "a denial is merely hypothetical and contingent on a series of events that Mr. Fain has not yet set in motion."  MTD II at 10.  This is incorrect.  Mr. Fain has alleged that he requires this care, which is medically necessary for him, and suffers harm from being denied access to it. (Compl. ¶¶ 85-87.)  He also alleges—and Defendants do not dispute—that this care is expressly excluded in his health plan.  (*Id.* ¶ 61 (Mr. Fain's UniCare health plan excludes coverage for "[s]ex transformation procedures," in addition to "hormone therapy for sex transformation procedures").)  Given the great lengths to which Defendants go to claim, contrary to their plans' express Exclusion, that hormone therapy is not denied by their pharmaceutical claims processor,

their silence on the availability of surgery is piercing.  Defendants submit an improper affidavit

from the President of UniCare attesting in a single sentence that the plan has not received a

request for gender-confirming care from Mr. Fain.  (ECF No. 32-3.)  But the affidavit says

nothing further, and the Exclusion in the UniCare plan speaks for itself.  (Compl. ¶ 61.)

Defendants' claim that Mr. Fain fails to satisfy standing and ripeness standards—by

having not requested coverage that the plan expressly denies—contravenes the principle that

"[t]he law does not require [] a futile act." *Townes v. Jarvis*, 577 F.3d 543, 547 n.1 (4th Cir.

2009).  As the Supreme Court has held, "[i]f an employer should announce his policy of

discrimination by a sign reading 'Whites Only' on the hiring-office door, his victims would not

be limited to the few who ignored the sign and subjected themselves to personal rebuffs ….

When a person's desire for a job is not translated into a formal application solely because of his

unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who

goes through the motions of submitting an application." *Int'l Bhd. of Teamsters v. United States*,

431 U.S. 324, 365-66 (1977)).  So too here.  Despite the fact that Defendants have pushed three

affidavits into the record at the motion to dismiss stage, there is no hint anywhere that such care

would be covered, and the UniCare plan confirms that it is not.

Defendants also argue that Mr. Fain's claims "are not ripe because they rely upon

hypothetical agency decisions that have not been made."  MTD II at 11.  But the agency decision

appears on the face of the health plans offered to Medicaid participants, all three of which

contain Exclusions for gender-confirming care.  (Compl. ¶ 61.)  Where an agency has adopted "a

clear and inflexible policy," the courts have found that exhaustion should be understood to be

futile. *Murdock v. Gutierrez*, 631 F. Supp. 2d 758, 763 (N.D.W. Va. 2007).  "Litigants are not

required to make ... futile gestures to establish ripeness." *Hamilton v. Pallozzi*, 165 F. Supp. 3d

315, 321 (D. Md. 2016), *aff'd*, 848 F.3d 614 (4th Cir. 2017) (quoting *Sammon v. New Jersey Bd. of Med. Exam'rs*, 66 F.3d 639, 643 (3d Cir.1995)); *see also Hamilton*, 165 F. Supp. 3d at 321 ("The law does not require Plaintiff to avail himself of a hopeless administrative process before looking to the courts for relief.").

Defendants assert that Mr. Fain must demonstrate a "realistic danger of sustaining a direct injury," MTD II at 8, but that is precisely what he has alleged based on the express terms of his plan.  Mr. Fain is expressly barred from surgery ***today*** by the terms of the plan and Defendants do not suggest otherwise.  Defendants' continued enforcement of the Exclusion is thus "connected to a concrete injury, and for ripeness purposes, an ongoing hardship."  *Ohio Valley Envtl. Coal. v. Caperton*, No. 3:20-cv-0470, 2020 WL 6703129, at *5 (S.D.W. Va. Nov. 13, 2020).  (*See e.g.*, Compl. ¶¶ 85-87 (Mr. Fain's chest "is an ongoing source of his gender dysphoria"; he "experiences intense discomfort with prolonged use of a binder, which often chafes his skin, and sometimes creates sores and leads to difficulty breathing"; and the denial of a mastectomy has caused his "symptoms of gender dysphoria and related distress [to] increase[]").)

### 2.    Mr. Fain's hormone-related allegations.

Mr. Fain's surgical care allegations alone provide him with standing to pursue his claims under the Equal Protection Clause, ACA, and Medicaid Act.  But his hormone-related claims provide an additional basis for standing to pursue his claims.

Defendants challenge Mr. Fain's hormone-related claims by asserting that the facts alleged in the complaint are untrue.  MTD II at 9-10.  The legal standard for that form of Rule 12(b)(1) challenge requires the Court to determine whether "the jurisdictional facts are intertwined with the facts central to the merits of the dispute."  *Kerns*, 585 F.3d at 193 (quote

omitted).  In that circumstance, "a presumption of truthfulness should attach to the plaintiff's allegations," and the "trial court should then afford the plaintiff the procedural safeguards—such as discovery—that would apply were the plaintiff facing a direct attack on the merits."  *Id.*  This is because "[j]udicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits."  *Id.* (quote omitted).

The Supreme Court has defined a clear test for determining when the jurisdictional allegations are intertwined with merits-related facts: "a trial court should dismiss under Rule 12(b)(1) only when the jurisdictional allegations are 'clearly ... immaterial, made solely for the purpose of obtaining jurisdiction or where such a claim is wholly unsubstantial and frivolous.'"  *Id.* (quoting *Bell*, 327 U.S. at 678.)  Defendants cannot satisfy this test.

While further discovery may be needed on dates of Mr. Fain's insurance coverage—and despite Defendants' claim that their contractor does not have a policy of denying hormone therapy for gender dysphoria—***all*** health plans available to Medicaid participants contain explicit and blanket Exclusions of this care.  (Compl. ¶ 61.)  In fact, Mr. Fain's plan expressly and specifically excludes "***hormone therapy*** for sex transformation procedures."  (*Id.*)  Accordingly, Mr. Fain's allegations that he is denied hormone therapy because of the Exclusion are neither "immaterial" nor made "solely for the purpose of obtaining jurisdiction."  *Kerns*, 585 F.3d at 193 (quote omitted).  Because Mr. Fain's health plan continues to exclude coverage for hormone-related care on its face, Mr. Fain's allegations certainly are not frivolous.  Defendants raise—at most—a factual dispute about the nature of the hormone therapy denials that Mr. Fain has received over time, which is inextricably bound up in the merits of Mr. Fain's claim.  Accordingly, where the challenged facts are "intertwined with the facts central to the merits of

the dispute," as here, Rule 12(b)(1) requires that the Court assume jurisdiction and "resolve the relevant factual disputes only after appropriate discovery."  *Kerns*, 585 F.3d at 193.

**B.    Mr. Fain is Not Required to Exhaust Administrative Remedies Under the ACA.**

Defendants' sole Rule 12(b)(6) argument rests on the assertion that "Mr. Fain has failed to exhaust administrative remedies in connection with his claims asserted in Count Two" under the Affordable Care Act.  MTD II at 2.  Defendants' second motion is silent about why this argument was not raised in their first motion, and with good reason.  There is no excuse for their late-discovered argument that Mr. Fain has purportedly failed to exhaust administrative remedies, since this argument does not depend on any newly discovered facts and was fully available to them when they filed their first motion.  Unless a defendant "asserts objections" under Rule 12(b)(6) in a timely manner, including those "related to administrat[ive] exhaustion," defendant waives those arguments.  *McKenzie-El v. Am. Sugar Refinery, Inc.*, No. CV RDB-20-0917, 2020 WL 7489021, at *3 (D. Md. Dec. 21, 2020).

But even on the merits, Defendants' exhaustion arguments fail.  In a single paragraph, Defendants claim that Mr. Fain's ACA claim must be dismissed because he has failed to avail himself of ***optional*** administrative remedies.  MTD II at 13.  Defendants' motion nowhere claims that there is an administrative exhaustion ***requirement*** for any of Mr. Fain's claims, and the law is clear that there is none.

Defendants cite nothing in the ACA or its regulations requiring exhaustion of administrative remedies for sex discrimination claims; nor is Mr. Fain aware of any such requirement.  Section 1557 of the ACA prohibits discrimination "on the ground[s] prohibited under" four enumerated statutes.  These four statutes include Title IX of the Education Amendments of 1974's prohibition on sex discrimination invoked by Mr. Fain here, and Section

30

1557 expressly incorporates "[t]he enforcement mechanisms provided for and available under" the cited statutes.  42 U.S.C. § 18116(a) (providing that those "enforcement mechanisms … shall apply").  Title IX "has no administrative exhaustion requirement."  *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 255 (2009); *see id.* ("plaintiffs can file directly in court" and "obtain the full range of remedies"); *Medley v. Ginsberg*, 492 F. Supp. 1294, 1306 (S.D.W. Va. 1980) (recognizing that Title IX has no exhaustion requirement).  Accordingly, no exhaustion requirement bars Mr. Fain's claims against Defendants under the ACA.

Defendants assert that there are unspecified "administrative remedies available … under the ACA for a denied claim."  MTD II at 13.  But Defendants' only supporting authority is an unpublished Pennsylvania district court decision involving an age discrimination claim.  *Id.* (citing *Papa v. Diamandi*, No. 19-cv-846, 2020 WL 762372 (E.D. Pa. Feb. 14, 2020)).  Defendants misconstrue *Diamandi*, which did not purport to announce a new, generally-applicable exhaustion requirement for ACA claims, but instead explicitly relied upon the "enforcement mechanisms provided for and available under ... [the] Age Discrimination Act."  *Id.* at *2 (quoting Section 1557).  Unlike the Title IX sex discrimination claim that forms the basis of Mr. Fain's Section 1557 claim, the Age Discrimination Act requires exhaustion of administrative remedies.  *Id.* at *3.

Finally, Defendants cite a Medicaid statute permitting—but not requiring—participants an opportunity to seek a hearing "before the State agency" for a claim that has been denied.  42 U.S.C. § 1396a(a)(3).  Their brief also cites a Medicaid regulation specifying due process requirements that state Medicaid programs must meet, MTD II at 13 (citing 42 C.F.R. § 431.205), but nothing in that regulation requires a Medicaid participant to avail themselves of that system before filing federal claims.  In fact, the Fourth Circuit has already examined and

31

rejected Defendants' position in the context of Medicaid challenges brought pursuant to 42

U.S.C. § 1983. *See Doe v. Kidd*, 501 F.3d 348, 356-57 (4th Cir. 2007) (holding that the

Medicaid Act "merely" requires states to provide a fair hearing process, and nothing in the Act

or its regulations bars direct enforcement of one's rights pursuant to 42 U.S.C. § 1983). The

same is true in the context of the ACA, and Defendants' motion to dismiss that claim must be

rejected.

**C.     Mr. Fain Should be Determined an Adequate Class Representative Following Discovery.**

Despite attacking Mr. Fain's class allegations in their first motion to dismiss, Defendants

again raise premature class certification issues in their second motion, this time claiming that Mr.

Fain cannot possibly serve as an adequate representative of the proposed Medicaid Class. As

stated above, it would be inappropriate to dismiss Mr. Fain's class allegations at this early point

in the case without allowing discovery. *See, supra*, Sect. I(B)(1).) This is particularly true with

respect to the new arguments Defendants raise, which are based entirely on disputed facts

asserted in affidavits attached to Defendants' second motion. Defendants' arguments related to

adequacy should be rejected on this basis alone.

However, even if the Court were to address Mr. Fain's adequacy on the merits, Mr.

Fain's class allegations should survive and the Medicaid Class should be certified. *See, supra*,

Sect. I(B)(1).) To be an adequate class representative, Mr. Fain simply "must not have interests

antagonistic to those of the class." *In re Serzone Prod. Liab. Litig.*, 231 F.R.D. 221, 238 (S.D.W.

Va. 2005). Defendants have failed to identify any interests of Mr. Fain that are antagonistic to

those of the class because they cannot do so. Instead, Defendants maintain that Mr. Fain has not

been denied coverage for gender-confirming care. As explained above, this is beside the point as

to surgical coverage and is, at most, a fact question as to hormone coverage. And—accepting as

true the facts in Mr. Fain's Complaint, as this Court must—Mr. Fain has been and continues to be denied coverage for gender-confirming care.  (Compl. ¶¶ 82, 87, 115.)  In this way, Mr. Fain possesses the same interest and suffers the same injury as all other members of the proposed Medicaid Class, thereby satisfying his adequacy requirements under Rule 23(a). *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).[14]

## III.    IF THE COURT IS INCLINED TO GRANT DEFENDANTS' MOTIONS, MR. FAIN SHOULD BE GIVEN LEAVE TO AMEND.

If the Court is inclined to grant any part of Defendants' motions to dismiss, Mr. Fain respectfully requests that the Court grant leave to amend.  *See e.g.*, *Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 118 (4th Cir. 2013).

## CONCLUSION

For the reasons above, Defendants' motions to dismiss Mr. Fain's claims should be denied.

\* \* \*

---

[14] "[T]ypicality … tends to merge with … commonality and adequacy …." *George v. Duke Energy Ret. Cash Balance Plan*, 259 F.R.D. 225, 232 (D.S.C. 2009) (*citing Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006)).  Here, Mr. Fain is transgender, a participant in West Virginia Medicaid, and denied coverage for gender-confirming care because of Defendants' Exclusions.  (Compl. ¶¶ 68-87, 115.)  He shares with the proposed class the common experience of being denied access to health care on the basis of sex, regardless of personal diagnoses and medical needs under a blanket Exclusion that targets transgender people on its face.  (*See also infra* discussing commonality.)  This makes Mr. Fain's claims typical.  *See, e.g., Olvera-Morales v. Int'l Labor Mgmt. Corp.*, 246 F.R.D. 250, 257 (M.D.N.C. 2007).  "Here, the plaintiffs meet the typicality requirement for the same reason that they meet the commonality requirement—the relief sought would benefit all class members in an identical manner."  *Harris*, 299 F.R.D. at 490.

Dated: March 2, 2021

Respectfully submitted,

/s/ Walt Auvil
Walt Auvil, WVSB No. 190
THE EMPLOYMENT LAW CENTER, PLLC
1208 Market Street
Parkersburg, WV 26101
Phone: 304-485-3058
Facsimile: 304-485-6344
auvil@theemploymentlawcenter.com

Avatara Smith-Carrington, Visiting Attorney
LAMBDA LEGAL DEFENSE AND EDUCATION
FUND, INC.
3500 Oak Lawn Avenue, Suite 500
Dallas, TX  75219
Phone: 214-219-8585
Facsimile: 214-219-4455
asmithcarrington@lambdalegal.org

Anna P. Prakash, Visiting Attorney
Nicole J. Schladt, Visiting Attorney
NICHOLS KASTER, PLLP
IDS Center, 80 South 8th Street
Suite 4600
Minneapolis, MN 55402
Phone: 612-256-3200
Facsimile: 612-338-4878
aprakash@nka.com
nschladt@nka.com

Tara L. Borelli, Visiting Attorney
Carl Charles, Visiting Attorney
LAMBDA LEGAL DEFENSE AND EDUCATION
FUND, INC.
730 Peachtree Street NE, Suite 640
Atlanta, GA  30308
Phone: 470-225-5341
Facsimile: 404-897-1884
tborelli@lambdalegal.org
ccharles@lambdalegal.org

Sasha Buchert, Visiting Attorney
LAMBDA LEGAL DEFENSE AND EDUCATION
FUND, INC.
1776 K Street, N.W., 8th Floor
Washington, DC  20006-2304
Phone: 202-804-6245
Facsimile: 202-429-9574
sbuchert@lambdalegal.org

Nora Huppert, Visiting Attorney
LAMBDA LEGAL DEFENSE AND EDUCATION
FUND, INC.
4221 Wilshire Boulevard, Suite 280
Los Angeles, CA  90010
Phone: 213-382-7600
Facsimile: 213-351-6050
nhuppert@lambdalegal.org

*Attorneys for Plaintiffs*