IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

**HUNTINGTON DIVISION**

CHRISTOPHER FAIN;
ZACHARY MARTELL; and
BRIAN MCNEMAR,
individually and on behalf of all others similarly situated,

       Plaintiffs,

v.                                CIVIL ACTION NO.   3:20-0740

WILLIAM CROUCH, in his official capacity as
Cabinet Secretary of the West Virginia
Department of Health and Human Resources;
CYNTHIA BEANE, in her official capacity as
Commissioner for the West Virginia Bureau for
Medical Services;
WEST VIRGINIA DEPARTMENT OF HEALTH
AND HUMAN RESOURCES, BUREAU FOR
MEDICAL SERVICES;
TED CHEATHAM, in his official capacity as
Director of the West Virginia Public Employees
Insurance Agency; and
THE HEALTH PLAN OF WEST VIRGINIA, INC.,

       Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Defendant Ted Cheatham's Motion to Dismiss the Complaint

(ECF No. 22), and Defendants William Crouch, Cynthia Beane, and the West Virginia Department

of Health and Human Resources, Bureau for Medical Services' (collectively, "WVDHHR

Defendants") Motion for Partial Dismissal of Plaintiffs' Class Action Complaint (ECF No. 23) and

Motion to Dismiss (ECF No. 32). For the reasons stated below, the motions are **DENIED**.

Also pending before the Court is Plaintiffs' Motion for Leave to file Sur-Reply (ECF No.

56). For good cause shown, this motion is **GRANTED**.

## I.   BACKGROUND

The putative Class Action Complaint asserts several claims, each of which is rooted in the same theory: that Defendants discriminated against Plaintiffs by denying coverage for gender-confirming health care. The Complaint defines "gender-confirming care" as health care which "includes, but is not limited to, counseling, hormone replacement therapy, and surgical care . . . . for the treatment of gender dysphoria—the clinically significant distress that can result from the dissonance between an individual's gender identity and sex assigned at birth . . . . " *Compl*. ¶¶ 1-2. According to the Complaint, these treatments are denied to transgender individuals despite being available to cisgender individuals.[1]

Based on this overarching theory, the Complaint raises two types of individual and class action claims: (1) those brought by Medicaid recipients against the WVDHHR Defendants and (2) those brought by state employees and their dependents against Ted Cheatham, the Director of the West Virginia Public Employee Insurance Administration, and The Health Plan, a health maintenance organization permitted to offer health plans to state employees through PEIA.[2]

### (1) WVDHHR Defendants

Christopher Fain, a transgender male, brings four discrimination claims individually and on behalf of the proposed Medicaid Class against the WVDHHR Defendants. As a Medicaid recipient, Fain relies on WVDHHR Medicaid plans for insurance coverage. However, Fain alleges that he has been denied hormone replacement therapy and surgical care (double mastectomy), despite needing that care to treat his gender dysphoria diagnosis. According to Fain, WVDHHR has denied this treatment under its Medicaid Policy Manual, which excludes "[t]ranssexual surgery" from coverage (the "Exclusion"). *Compl*. ¶ 61. Fain challenges the Exclusion as well as

---

[1]  The Complaint defines "cisgender" as "people who are not transgender." *Compl*. ¶ 1 n.1.
[2]  The Health Plan filed a separate motion to dismiss (ECF No. 20), which the Court will address in a subsequent opinion.

similar policies adopted by the three managed care organizations ("MCO") in the Mountain Health Trust system. This includes Fain's MCO, UniCare, which excludes coverage for "[s]ex transformation procedures and hormone therapy for sex transformation procedures." *Id*. at ¶ 61.

Since lodging the Complaint, WVDHHR Defendants submitted an affidavit stating that, "[i]n providing prior authorization services for the West Virginia Bureau of Medical Services' pharmaceuticals program, the Rational Drug Therapy Program does not have a policy of denying testosterone for treatment of gender dysphoria." *Wowczuk Aff.* ¶ 7, ECF No. 32-1. Based on this affidavit, Fain agreed not to pursue his claims based on denial of hormone therapy. *See Stipulation* ¶ 10, ECF No. 53.

With surgical care as his sole basis for recovery, Fain alleges that WVDHHR Defendants' policies are discriminatory because "the same treatments are covered for cisgender people who are Medicaid participants." *Compl*. ¶ 62. According to Plaintiffs, this discrimination violates (1) the Equal Protection clause, (2) the nondiscrimination clause under Section 1557 of the Patient Protection and Affordable Care Act (42 U.S.C. § 18116), (3) the Medicaid Act's Availability Requirements (42 U.S.C. § 1396a(a)(10)(A)), and (4) the Medicaid Act's Comparability Requirements (42 U.S.C. § 1396a(a)(10)(B)). Fain seeks declaratory and injunctive relief for himself and the Medicaid Class as to each of these claims. He also individually seeks compensatory damages under the ACA.

(2) Defendants Cheatham

Plaintiff Brian McNemar is a state employee who is insured through West Virginia's PEIA. McNemar is married to Plaintiff Zachary Martell, who is McNemar's dependent. Martell is a transgender man diagnosed with gender dysphoria and is seeking both hormone replacement therapy and surgical care to treat that diagnosis. McNemar and Martell bring two claims

individually and on behalf of the proposed State Employee Class and The Health Plan Subclass.

Like Plaintiff Fain, McNemar and Martell challenge PEIA and The Health Plan policies and practices which exclude gender-confirming care. According to the Complaint, the PEIA plans exclude "[s]urgical or pharmaceutical treatments associated with gender dysphoria or any physical, psychiatric, or psychological examinations, testing, treatments or services provided or performed in preparation for, or as a result of, sex transformation surgery." *Compl*. ¶ 64. Additionally, there is a similar exclusion in all plans provided by The Health Plan, which are approved by Cheatham. *Id*. Plaintiffs allege Cheatham's approval of discriminatory policies and failure to offer a non-discriminatory option violates the Equal Protection clause. They seek declaratory and injunctive relief on behalf of the class.[3]

## II.  WVDHHR DEFENDANTS' MOTIONS TO DISMISS

On January 11, 2021, WVDHHR Defendants moved for partial dismissal (ECF No. 23), challenging Fain's claim for compensatory damages under the Eleventh Amendment and the sufficiency of Fain's class action allegations. On February 2, 2021, WVDHHR Defendants filed a second motion to dismiss (ECF No. 32), this time challenging standing and ripeness, as well as Fain's ability to represent the proposed class. With the filing of Plaintiffs' Unopposed Motion for Leave to File Sur-Reply in Opposition to WVDHHR Defendants' Motion to Dismiss on April 5, 2021, the motions became ripe for review.

(1) Eleventh Amendment Immunity

The first jurisdictional issue raised by WVDHHR Defendants is whether Fain's claim for compensatory damages against WVDHHR under the ACA must be dismissed. WVDHHR argues that this claim is barred by the Eleventh Amendment, whereas Plaintiff argues that WVDHHR

---

[3] Plaintiffs also alleged that Cheatham violated the ACA but have voluntarily dismissed that claim. *Order*, ECF No. 38.

waived its Eleventh Amendment immunity by accepting federal assistance.

The waiver exception applies if a state "voluntarily participat[es] in federal spending programs [and] Congress expresses 'a clear intent to condition participation in the programs . . . on a State's consent to waive its constitutional immunity.'" *Litman v. George Mason Univ.*, 186 F.3d 544, 550 (4th Cir. 1999) (quoting *Booth v. Maryland*, 112 F.3d 139, 145 (4th Cir.1997)). Such a waiver must be a "clear and unambiguous" condition of the funding. *Arlington Cent. Sch. Dist. Bd. Of Educ. v. Murphy*, 548 U.S. 291, 296 (2006).

Here, Fain argues that Congress clearly and unambiguously conditioned federal Medicaid funding on states' waiver of immunity for nondiscrimination provisions when it enacted Section 1003 of the Civil Rights Remedies Equalization Act of 1986. That Section reads:

> A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973, title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, title VI of the Civil Rights Act of 1964, or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

42 U.S.C. § 2000d-7(a)(1). According to Plaintiff, the so-called Residual Clause ("or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance") incorporates Section 1557 of the ACA, which is a nondiscrimination provision. The Court agrees.

The text of the Residual Clause unequivocally waives immunity against violations of "provisions of any other Federal statute prohibiting discrimination." Section 1557 is unambiguously a federal statue which prohibits discrimination by recipients of Federal financial assistance; it states:

> Except as otherwise provided for in this title (or an amendment made by this title), an individual shall not, . . . be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part

of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments).

42 U.S.C. § 18116. Although there is not yet[4] controlling precedent on Section 1003's application to the ACA, several district courts have held that the Residual Clause incorporates Section 1557. *See, e.g.*, *Kadel v. Folwell*, 446 F. Supp. 3d 1, 17 (M.D.N.C. 2020) ("[T]he Court concludes that Section 1557, when read in conjunction with CRREA, effectuates a valid waiver of sovereign immunity."); *Boyden v. Conlin*, 341 F. Supp. 3d 979, 998 (W.D. Wis. 2018) (same); *Esparza v. Univ. Med. Ctr. Mgmt. Corp.*, No. CV 17-4803, 2017 WL 4791185, at *9 (E.D. La. Oct. 24, 2017) (same).

Defendants argue that Section 1003 is not a sufficient waiver because the Supreme Court requires waivers to be "unequivocally expressed *in the text of the relevant statute*." *Sossamon v. Texas*, 563 U.S. 277, 284 (2011) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984)) (emphasis added). WVDHHR Defendants reason that because Section 1557 does not contain an express waiver, Plaintiffs' claim must be dismissed.

WVDHHR's reading of *Sossamon* is oversimplified and ignores the final section of the opinion. After the Court remarked that the waiver must be "in the text of the relevant statute," it declined to invalidate Section 1003 or the Residual Clause. Instead, it held: "[e]ven assuming that a residual clause like the one in § 1003 could constitute an unequivocal textual waiver, § 3 [of the Religious Land Use and Institutionalized Persons Act] is not unequivocally a 'statute prohibiting discrimination' within the meaning of § 1003." *Sossamon*, 563 U.S. at 292. This analysis supports the finding that Section 1003 may constitute a "relevant statute" under *Sossamon*.

In addition to being undermined by *Sossamon's* analysis, the Court rejects WVDHHR's

---

[4] The issue was recently submitted to the Fourth Circuit in *Kadel v. N.C. State Health Plan*, No. 20-1409 (4th Cir. argued March 11, 2021).

reasoning because it would lead to untenable results. If the Court held that Section 1557 cannot be read in conjunction with Section 1003, it would invalidate the waivers for Section 504 of the Rehabilitation Act of 1973, Title IX of the Education Amendments of 1972, the Age Discrimination Act of 1975, and Title VI of the Civil Rights Act of 1964. That contradicts Congress' intent in enacting Section 1003, states' longstanding acceptance of these waivers, and the body of case law upholding Section 1003. *See, e.g.*, *Litman*, 186 F.3d at 554. The Court cannot disregard this longstanding precedent.

In sum, the Court finds that West Virginia waived its immunity from suit under Section 1557 by accepting federal assistance under the ACA, as provided by Section 1003's Residual Clause. WVDHHR's Motion is denied as to immunity.

(2) <u>Standing and Ripeness</u>

WVDHHR Defendants next argue that Fain lacks standing and that his claims are not ripe for review because he has not requested the gender-confirming surgery he claims to have been denied. Consequently, says WVDHHR, Fain's injuries are speculative, and his claims are not ripe.

Federal courts do not have jurisdiction over a suit unless the plaintiff can establish standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). In general, standing requires three elements: (1) an injury in fact that is both concrete and actual or imminent; (2) a causal connection between the injury and the defendant's alleged wrongdoing; and (3) a substantial likelihood that a favorable judgment will redress the injury. *Id*.

Ripeness, like standing, is a constitutional and prudential doctrine that limits federal courts' jurisdiction to the "cases" and "controversies" described in Article III, § 2 of the United States Constitution. The doctrine's "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative

policies." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967). In evaluating whether a dispute is ripe, courts must consider "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Cooksey v. Futrell*, 721 F.3d 226, 240 (4th Cir. 2013). "A case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006).

Fain argues that the Complaint meets these standards because he has alleged injury from the denial of care established by the WVDHHR Exclusion, which renders any request for surgery futile. As indicated in the Complaint, the WVDHHR Medicaid Policy Manual excludes coverage for "[t]ranssexual surgery." *Compl.* ¶ 61. According to Fain, this Exclusion dispels WVDHHR's argument that its denial is speculative because it demonstrates that WVDHHR has *already* made the decision to exclude the surgery he requires. The Court again agrees with Plaintiff.

Assuming that the Plaintiffs' allegations are true, as the Court must at the pleading stage, WVDHHR enacted a clear policy that excludes gender-confirming surgical care with no exceptions. In doing so, WVDHHR caused a concrete injury to Plaintiff Fain by constructing an allegedly discriminatory barrier between him and health insurance coverage. This barrier constitutes a concrete, non-speculative injury. Given this injury, Fain has standing to sue, and his claims challenging the policy are ripe for review.

To the extent that the Exclusion does not constitute an outright denial, the Court finds that a request for gender-confirming surgery would be futile. To hold otherwise would require an individual to request a benefit even when he or she knows that the defendant maintains a clear policy to deny that request. Such a request would be nothing more than a formality and is unnecessary for the purposes of Plaintiffs' claims, which are purely legal. Courts do not require

plaintiffs to perform such futile acts, especially when those acts could subject them to "personal rebuffs." *See, e.g.*, *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365-66 (1977)) ("If an employer should announce his policy of discrimination by a sign reading 'Whites Only' on the hiring-office door, his victims would not be limited to the few who ignored the sign and subjected themselves to personal rebuffs."); *see also Pinchback v. Armistead Homes Corp.*, 907 F.2d 1447, 1452 (4th Cir. 1990) (quoting same).

This is not the first time a court has extended the futile gesture doctrine to allegations of health care discrimination. In *Cruz v. Zucker*, 116 F. Supp. 3d 334 (S.D.N.Y. 2015), *aff'd on mot. for reconsideration* 195 F.Supp.3d 554 (July 5, 2016), the transgender plaintiffs challenged a New York Medicaid policy which excluded all "cosmetic" procedures, including gender confirming surgeries. *Id*. at 336. The court held that plaintiffs were not required to seek coverage for their gender-confirming procedures before filing suit because such an attempt would have been futile under the blanket cosmetic exclusion. *Id*. at 349. The court also noted that the question was purely legal, which rendered such fact development unnecessary. *Id*.

WVDHHR contends that Fain should have been required to request the surgery because it is possible that that the request will be granted. In support of this argument, WVDHHR Defendants point to previous approvals of Fain's hormone therapy, despite its policy excluding coverage for "hormone therapy for sex transformation procedures." *WVDHHR Defs.' Reply* 4-5, ECF No. 55. However, WVDHHR's past approvals for hormonal therapy are inapposite because WVDHHR did not just grant an exception for Fain, it filed an affidavit stating that it was not their policy to deny hormone therapy. WVDHHR Defendants do not contest that their explicit policy is to deny gender confirming surgical care without exception. Moreover, even if WVDHHR is earnest in assertion that Fain's surgical request may be granted, dismissing the suit on that ground would

allow defendants to dodge liability by granting litigants' requests, all while maintaining an allegedly discriminatory policy and practice for anyone who does not file suit. Such a loophole cannot be permitted.

WVDHHR's final argument is that Fain's request would not be futile because it could be denied on grounds other than the Exclusion. However, Plaintiffs allege that the Exclusion denies of coverage without exception. Accordingly, WVDHHR's policy acts as a barrier to Fain's surgery in every instance and renders alternative grounds for denial irrelevant. The Court rejects this argument and concludes that Plaintiffs have plausibly alleged a ripe claim for which they have standing to bring.

(3) Sufficiency of Class Allegations

Lastly, WVDHHR Defendants argue that the class allegations should be dismissed because the Complaint does not sufficiently allege a viable class action under Federal Rule Civil Procedure 23(c)(1)(A). Rule 23 provides that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Because this determination requires a "rigorous" factual and legal analysis, it is rare for a court to make a class determination at the pleadings stage. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (internal citation omitted). As recently held in this District, class allegations should be stricken only when "it is clear from the face of the complaint that the plaintiff cannot and could not meet Fed. R. Civ. P. 23's requirements for certification . . . . " *Sommerville v. Union Carbide Corp.*, No. 2:19-CV-00878, 2020 WL 2945541, at *3 (S.D. W. Va. June 3, 2020) (Goodwin, J.) (quoting *Williams v. Potomac Family Dining Grp. Operating Co.*, No. GJH-19-1780, 2019 WL 5309628, at *5 (D. Md. Oct. 21, 2019)) (internal quotation marks omitted).

WVDHHR argues that Plaintiffs will not be able to meet the commonality requirement under Fed. R. Civ. Pro. 23(a)(2), which mandates "questions of law or fact common to the class." Although "[a] single common question will suffice, . . . it must be of such a nature that its determination 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *EQT Prod. Co. v. Adair*, 764 F.3d 347, 360 (4th Cir. 2014) (quoting *Wal-Mart*, 564 U.S. at 350). This is evident when the "plaintiff shows that the class members have suffered the same injury," and when the common injury arises from "a common contention." *Wal-Mart*, 564 U.S. at 349.

In the discrimination context, the common contention acts as the "glue" which holds each of the claims together and ensures "that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored.*" *Brown v. Nucor Corp.*, 785 F.3d 895, 909 (4th Cir. 2015) (quoting *Wal-Mart*, 564 U.S. at 349) (emphasis in original) (internal quotation marks omitted). This requirement can be met when the plaintiff shows that the defendant "operated under a general policy of discrimination." *Wal-Mart*, 564 U.S. at 353 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 159 n.15 (1982)) (internal quotation marks omitted).

Plaintiffs' allegations are consistent with this standard. As noted above, Plaintiffs allege that the class members suffer from a common injury which arises from a general policy of discrimination: the denial of coverage for "[t]ranssexual surgery" in the WVDHHR Medicaid Policy Manual. *Compl.* ¶ 61. As alleged, this denial generally effects the proposed class, which includes "[a]ll transgender people who are or will be enrolled in West Virginia Medicaid and who are seeking or will seek gender-confirming care barred by the Exclusions." *Id.* at ¶ 108.[5]

Based on this common contention, Plaintiffs have appropriately framed the common

---

[5] To the extent that this definition must be amended to reflect the parties' Stipulation (ECF No. 53), the Court finds that the class certification stage is the appropriate time to do so.

questions as follows: (1) whether WVDHHR's Exclusion facially, and as applied to the proposed

Class, violates the U.S. Constitution, the ACA, and the federal Medicaid Act; and (2) whether

WVDHHR should be enjoined from enforcing the Exclusion and denying Mr. Fain and members

of the proposed Medicaid Class coverage for and access to gender-confirming care. *See Compl.* ¶¶

118-56. These questions are primarily legal and have the potential to relieve the common injury

"in one stroke." *See Wal-Mart*, 564 U.S. at 350.

 WVDHHR Defendants attempt to rebut this common contention by representing that "a

word search of the Medicaid State Plan contains not a single instance of the use of the words

'transgender,' 'gender-confirming care,' or 'gender dysphoria.'" *WVDHHR Defs.' Mot. for Part.*

*Dismissal* 14, ECF No. 25. This is a classic red herring. The Policy Manual's exclusion of

"[t]ranssexual surgery" and Plaintiffs' resulting injury are not disproved by the absence of other

terms in the State Plan. This is especially true given WVDHHR's apparent refusal to deny the

Exclusion's application to Plaintiffs' alleged surgical needs.

 WVDHHR's further attempts to reframe the Complaint are also unconvincing. Defendants

argue that Plaintiffs will not be able to establish commonality because "the majority of the factual,

and, therefore, legal, questions are unique to each class member . . . ." *WVDHHR Defs.' Mot. for*

*Part. Dismissal* 8, ECF No. 25. WVDHHR Defendants have it backwards; legal standards inform

the necessary fact findings. Having started with the conclusion that particularized discovery will

be required, Defendants crafted a legal standard which resembles a common negligence claim:

> particularized discovery would be necessary in order to determine the
> individualized facts relative to Defendants' duty to each class member, the
> underlying facts of the breach of that duty as experienced by each class member,
> and any causation between that breach and each particular class member's
> alleged damages. . . .

*WVDHHR Defs.' Motion to Dismiss* 9, ECF No. 55. Plaintiffs neither assert a negligence claim,

nor do they seek compensatory damages on behalf of the class. Additionally, their Equal Protection, ACA, and Medicaid Act claims do not require evidence of individual "duty" or "breach." These claims are purely legal and require little to no fact development. Having failed to identify any ground upon which the Parties will be required to make particularized and individualized factual findings, WVDHHR's argument must be rejected. The Court denies WVDHHR's Motion for Partial Dismissal of Plaintiffs' Class Action Complaint (ECF No. 23) and Motion to Dismiss (ECF No. 32).

### III. CHEATHAM MOTION TO DISMISS

On January 11, 2021, Defendant Cheatham moved for dismissal, arguing that McNemar and Martell lack standing and have failed to state an Equal Protection Clause claim. For the reasons stated below, the Court finds that dismissal is unwarranted on both grounds.

(1) <u>Standing</u>

Unlike WVDHHR, Cheatham does not contest injury; he argues that Plaintiffs McNemar and Martell's injuries are neither traceable to nor redressable by him. First, Cheatham argues that Plaintiffs' injuries cannot be traced back to PEIA because the insurance policy at issue is drafted, created, and offered by The Health Plan. According to Cheatham, PEIA only facilitates this contractual relationship and "do[es] not contract with these outside agencies on the basis of what is covered under their policies." *Cheatham Mot. to Dismiss* 7-8, ECF No. 24. Second, Cheatham argues that the claims are not redressable by PEIA because the insurance policy is under the control of The Health Plan. Accordingly, PEIA cannot change that plan even if the Court grants Plaintiffs' request for an injunction. As explained below, the Court rejects both arguments.

*Traceability*

Traceability requires a causal connection between the defendant's conduct and the plaintiff's injury such that "there is a genuine nexus" between the two. *Friends of the Earth, Inc. v.*

*Gaston Copper Recycling Corp.*, 204 F.3d 149, 161 (4th Cir. 2000). However, as the Fourth Circuit has explained, "the fairly traceable standard is not equivalent to a requirement of tort causation." *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 623 (4th Cir. 2018). At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561.

As noted above, Defendant Cheatham argues that Plaintiffs' injuries are not traceable to him because the policy precluding coverage for Martell's gender-confirming care is contained in The Health Plan's HMO policy. However, that does not accurately address Plaintiffs' allegations. Plaintiffs have alleged that their injuries can be traced to Cheatham because he only approves the discriminatory policies (including The Health Plan's HMO policy) and refuses to provide a non-discriminatory alternative. Both allegations are plausible because Cheatham is statutorily responsible for administering PEIA, including overseeing "provider negotiations, provider contracting and payment, designation of covered and noncovered services, [and] offering of additional coverage options or cost containment incentives." W. Va. Code § 5-16-3(c). [6] Therefore, the Court finds that Plaintiffs' have plausibly alleged traceability.

*Redressability*

The same statutory authority under West Virginia Code § 5-16-3(c) enables Cheatham to redress Plaintiffs' injuries if such relief is granted. The Complaint requests an order "directing Defendants and their agents to provide access to coverage for all gender-confirming care without regard to the Exclusion[]." *Compl.* at p. 37(C). According to Plaintiffs, this type of order would prevent Defendant Cheatham from contracting for private plans with a discriminatory policy,

---

[6] Although Cheatham denies that he intentionally chooses discriminatory plans, that is a factual dispute that cannot be resolved at the pleading stage. Even if it could, Cheatham has not submitted any evidence supporting this argument.

prohibit enforcement of discriminatory policies in those plans, or affirmatively require him to provide access to gender-confirming care.

Cheatham provides evidence that he does not have control over existing policies under the PEIA's agreement with The Health Plan.[7] However, even if the Court were to accept this assertion, Cheatham has not shown that the other proposed remedies are inadequate. Given that Cheatham is tasked with "designation of covered and noncovered services" and "offering [] additional coverage options," W. Va. Code § 5-16-3(c), he is statutorily authorized to grant Plaintiffs access to gender-confirming care. Therefore, the Court finds that Plaintiffs' have sufficiently alleged that their injuries are redressable.

(2) Failure to State an Equal Protection Clause Claim

Cheatham's last argument is that Plaintiffs failed to state an Equal Protection claim upon which relief may be granted because the PEIA policy passes heightened scrutiny. In short, Cheatham argues that there are three important government interests which are substantially related to PEIA's policies: (1) "guarantee[ing] the health and safety of the enrollees," (2) "maintain[ing] the medical standards of physicians and other entities that accept the insurance of enrollees," and (3) "sav[ing] taxpayer dollars from use for procedures that are not medically necessary, or FDA approved." *Cheatham Mot*. 11-12, ECF No. 24.

As Plaintiffs argue in their Response, Cheatham's argument is improper because it relies on facts outside of the Complaint. For example, Cheatham's representations regarding patient "safety" and "medically necessary [procedures]" assume facts that are neither in the Complaint nor

---

[7] *See* Exhibit A, ECF No. 24-1 ("The responsibility for determining and providing appropriate health care services in a competent manner to enrollees shall remain with the HMO and the enrollees[,] treating physicians and other health care professionals and facilities, not PEIA.").

the record. In fact, the Complaint alleges the opposite: that gender-confirming care is medically necessary and safe. *See Compl*. ¶ 67. Therefore, the Court will not entertain Cheatham's fact-based arguments at this stage and denies Cheatham's Motion to Dismiss (ECF No. 22.)

## IV.  CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant Cheatham's Motion to Dismiss the Complaint (ECF No. 22), and WVDHHR Defendants' Motion for Partial Dismissal of Plaintiffs' Class Action Complaint (ECF No. 23) and Motion to Dismiss (ECF No. 32). The Court also **GRANTS** Plaintiffs' Motion for Leave to file Sur-Reply (ECF No. 56).

The Clerk is **DIRECTED** to send a copy of this Opinion to counsel of Record and any unrepresented party.

ENTER:        May 19, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE