IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

CHRISTOPHER FAIN, *et al.*,
individually and on behalf of all others
similarly situated,

        *Plaintiffs,*

  v.

WILLIAM CROUCH, *et al.*,

        *Defendants.*

CIVIL ACTION NO. 3:20-cv-00740
HON. ROBERT C. CHAMBERS

## PLAINTIFFS' SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Defendants' arguments are based on a fundamental misunderstanding of the theory of class certification in this case.[1] As discovery will undoubtedly demonstrate, nothing about the narrowed scope of Plaintiff Fain's claims makes the issues in this case too "particularized" for class resolution. This is all the more true because of the type of class certification Plaintiffs intend to seek and the systematic nature of insurance coverage to which Mr. Fain is and will continue to be subject as he pursues gender-confirming care such as the surgery detailed in his Complaint.[2]

***First***, that Mr. Fain has opted not to rely on the hormone-related allegations in the Complaint to advance the claims in this case does not mean that his or any class members' claims

---

[1] Defendants moved to strike only the Medicaid Class. (*See* Compl. ¶ 108, ECF No. 1.) No Defendant has so moved as to the State Employee Health Plan Class for which Plaintiffs Martell and McNemar are proposed class representatives. (*See id.* ¶¶ 109-10; *see generally* Mot. to Dismiss Mems., ECF Nos. 21, 24, 25, 33.) Plaintiffs, therefore, only address the Medicaid Class here.

[2] As to Defendants' other arguments, Plaintiffs—consistent with the Parties' agreement and the motion for leave to file a sur-reply—rely upon their response brief (ECF No. 50) and here advance only a rebuttal to matters closely connected to the narrowed scope of Mr. Fain's claims.

would require unmanageable individualized fact-finding. As Defendants' proffered sworn statements represent, "[i]n providing prior authorization services for the West Virginia Bureau of Medical Services' pharmaceuticals program, the Rational Drug Therapy Program does not have a *policy* of denying testosterone for treatment of gender dysphoria." (Wowczuk Aff., ¶ 7, ECF No. 32-1 (emphasis added); *accord* Thompson Aff. ¶ 3, ECF No. 32-2.) In other words, insurance coverage—unlike the individual employment decisions in *Wal-Mart Stores, Inc. v. Dukes*—is governed by the existence or nonexistence of a policy. 564 U.S. 338, 343 (2011). And, while Defendants represent that there is no policy for denying testosterone (i.e., hormone therapy), they have not made the same representation as to any other form of gender-confirming care that is excluded under Defendants' written policies. As alleged, West Virginia's Medicaid Policy Manual provides that the Medicaid Plan does not cover "[t]ranssexual surgery." (Compl. ¶ 61, ECF No. 1.) Mr. Fain's managed care organization, UniCare, lists "[s]ex transformation procedures" as Medicaid non-covered services in its Member Handbook, available online. (*Id.*) The two other managed care organizations that work with West Virginia Medicaid, similarly exclude gender-confirming care. (*Id.*)

These categorical exclusions are a far cry from the fact pattern in *Dukes*, which Defendants heavily rely upon. *See* 564 U.S. at 343-34 ("Pay and promotion decisions at Wal–Mart are generally committed to local managers' broad discretion, which is exercised in a largely subjective manner…. Promotions work in a similar fashion…. [The plaintiffs in *Dukes*] do not allege that Wal–Mart has any express corporate policy against the advancement of women.") (internal quotations omitted). Insurance policies, by definition, are policies that govern coverage decisions. They are neither subjective nor left to an individual's broad discretion. Here, those policies categorically exclude gender-confirming care. And, to the extent there are policies that are no

longer accurate, Defendants are free to raise any such fact-based issues in discovery and, to the extent necessary, Plaintiffs will seek a narrower class at the class certification stage. *See, e.g., Harris v. Rainey,* 299 F.R.D. 486, 490 (W.D. Va. 2014) (amending the class definition to meet ascertainability and cohesiveness requirements at certification); *see also Christman v. Am. Cyanamid Co.,* 92 F.R.D. 441, 446 (N.D.W. Va. 1981) (redefining the class at the certification stage to make it more cohesive). But, here, at the pleadings stage, the allegations of Defendants' categorical bar to all other forms of gender-confirming care suffice.

*Second*, Plaintiffs' lawsuit seeks class-wide injunctive relief under Fed. R. Civ. P. 23(b)(2), the objective being to stop Defendants from excluding coverage in a manner that violates the civil rights of transgender West Virginian Medicaid participants. *See Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 330 n.24 (4th Cir. 2006) ("Indeed, Rule 23(b)(2) was created to facilitate civil rights class actions."). While Defendants characterize this case as one involving "any number of specific factual health situations and claims histories," (Defs.' Reply at 10, ECF No. 55), the reality is that the Court's certification inquiry under Rule 23(b)(2) will be focused on *Defendants'* behavior. *See Thorn*, 445 F.3d at 330 ("Where the requested relief is declaratory or injunctive, … the goal of the remedy phase is either to make a declaration about or enjoin the *defendant's actions* affecting the class as a whole, and individual hearings will not be necessary.") (emphasis in original). Put another way, the Court will not analyze the putative class members' "presentations, diagnoses, prescriptive and other histories" at the certification stage. (*See* Defs.' Reply at 10.) Rather, the Court will analyze *Defendants'* decision to deny gender-confirming care to all transgender Medicaid participants. (*See* Compl. ¶ 113.)

Defendants do not dispute that they deny transgender West Virginians gender-confirming care, including surgical care, as a matter of course. They do not dispute that their Medicaid Policy

Manual contains an exclusion for "[t]ranssexual surgery" or that Unicare's handbook contains an exclusion for "[s]ex transformation procedures and hormone therapy for sex transformation procedures." (*Id.* ¶ 61.) Plaintiffs more than adequately alleged that Defendants' policies and practices, i.e., their refusal to cover gender-confirming surgical procedures, discriminate against Mr. Fain and members of the putative class. (*Id.* ¶ 62.) Whether "surgeries may or may not be indicated for a variety of reasons" is not an appropriate question to ask at this juncture. (*See* Defs.' Reply at 10.) How can it be? As alleged in the Complaint, Defendants do not even ask that question themselves. Instead, without any review, Defendants categorically deny transgender West Virginian Medicaid participants, like Mr. Fain, gender-confirming care. This is precisely the fact pattern that Rule 23(b)(2) is designed to address. *See Thorn*, 445 F.3d at 330 ("Rule 23(b)(2)'s categorical exclusion of class actions seeking primarily monetary relief … ensures that the class is sufficiently cohesive that the class-action device is properly employed."); *see also Flack v. Wisconsin Dep't of Health Servs.*, 331 F.R.D. 361, 370 (W.D. Wis. 2019) ("As plaintiffs argue, '[c]ertification… under Rule 23(b)(2) because the categorical coverage ban on gender-confirming care under the Challenged Exclusion is generally applicable to the class, making a final injunction and corresponding declaratory judgment appropriate to the full class.'").

***Finally***, despite Defendants' thinly veiled suggestions otherwise, Mr. Fain's allegations are made in good faith and do not undercut his adequacy to serve as a class representative. Though Mr. Fain is no longer relying on certain allegations based on new information from Defendants, Defendants should not be allowed to wield such technicalities against him. Defendants have done nothing to show that they actually cover the other forms of care Mr. Fain requires. Their silence on this issue speaks volumes. Mr. Fain is—at this pleadings stage and before discovery—more than adequate and typical such that discovery should move forward. (*See* Plfs.' Resp. to Defs.'

4

Mots. to Dismiss at 32-33, ECF No. 50.) Indeed, testing allegations in a complaint is what discovery—not a motion to dismiss—was designed to do.

For all of these reasons, Plaintiffs respectfully request that the Court deny Defendants' motions to dismiss.

Dated: May 25, 2021                                    Respectfully submitted,

 s/Walt Auvil                                          Avatara Smith-Carrington, Visiting Attorney
Walt Auvil, WVSB No. 190                               LAMBDA LEGAL DEFENSE AND EDUCATION
THE EMPLOYMENT LAW CENTER, PLLC                        FUND, INC.
1208 Market Street                                     3500 Oak Lawn Avenue, Suite 500
Parkersburg, WV 26101                                  Dallas, TX  75219
Phone: 304-485-3058                                    Phone: 214-219-8585
Facsimile: 304-485-6344                                Facsimile: 214-219-4455
auvil@theemploymentlawcenter.com                       asmithcarrington@lambdalegal.org

Anna P. Prakash, Visiting Attorney                     Tara L. Borelli, Visiting Attorney
Nicole J. Schladt, Visiting Attorney                   Carl Charles, Visiting Attorney
NICHOLS KASTER, PLLP                                   LAMBDA LEGAL DEFENSE AND EDUCATION
IDS Center, 80 South 8th Street                        FUND, INC.
Suite 4600                                             730 Peachtree Street NE, Suite 640
Minneapolis, MN 55402                                  Atlanta, GA  30308
Phone: 612-256-3200                                    Phone: 470-225-5341
Facsimile: 612-338-4878                                Facsimile: 404-897-1884
aprakash@nka.com                                       tborelli@lambdalegal.org
nschladt@nka.com                                       ccharles@lambdalegal.org

Sasha Buchert, Visiting Attorney                       Nora Huppert, Visiting Attorney
LAMBDA LEGAL DEFENSE AND EDUCATION                     LAMBDA LEGAL DEFENSE AND EDUCATION
FUND, INC.                                             FUND, INC.
1776 K Street, N.W., 8th Floor                         4221 Wilshire Boulevard, Suite 280
Washington, DC  20006-2304                             Los Angeles, CA  90010
Phone: 202-804-6245                                    Phone: 213-382-7600
Facsimile: 202-429-9574                                Facsimile: 213-351-6050
sbuchert@lambdalegal.org                               nhuppert@lambdalegal.org

*Attorneys for Plaintiffs*