IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

CHRISTOPHER FAIN;
ZACHARY MARTELL; and
BRIAN MCNEMAR,
individually and on behalf of all others similarly situated,

      Plaintiffs,

v.            CIVIL ACTION NO. 3:20-0740

WILLIAM CROUCH, in his official capacity as
Cabinet Secretary of the West Virginia
Department of Health and Human Resources;
CYNTHIA BEANE, in her official capacity as
Commissioner for the West Virginia Bureau for
Medical Services;
WEST VIRGINIA DEPARTMENT OF HEALTH
AND HUMAN RESOURCES, BUREAU FOR
MEDICAL SERVICES;
TED CHEATHAM, in his official capacity as
Director of the West Virginia Public Employees
Insurance Agency; and
THE HEALTH PLAN OF WEST VIRGINIA, INC.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is The Health Plan of West Virginia's Motion to Dismiss (ECF No. 20). For the following reasons, the motion is **DENIED**.

### I. BACKGROUND

Plaintiffs' sole claim against The Health Plan is discrimination in violation of Section 1557 of the Patient Protection and Affordable Care Act. Section 1557 (also known as the ACA's "nondiscrimination provision") prohibits discrimination under "any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts

of insurance . . . . " 42 U.S.C. § 18116. As previously detailed in this Court's May 19, 2021, Memorandum Opinion and Order (ECF No. 57), Plaintiffs Brian McNemar and Zachary Martell allege that The Health Plan's policy excluding gender-confirming care discriminates against transgender individuals. The Health Plan now seeks dismissal of this claim under Federal Rule of Civil Procedure 12(b)(6).

## II. DISCUSSION

The crux of the parties' dispute is about the scope of Section 1557, and in particular, the meaning of "any health program or activity." The scope of this language has a sharply disputed administrative history. In 2016, the Obama Administration promulgated a final rule which interpreted Section 1557 to expressly include health insurance issuers: "'health program or activity' must be interpreted in a manner that uniformly covers all of the operations of any entity that receives Federal financial assistance and that is principally engaged in . . . health insurance coverage . . . . " 81 Fed. Reg. 31376, 31386 (2016).

But in 2020, the Trump Administration finalized a rule repealing that definition and narrowing Section 1557 to entities "principally engaged in the business of providing healthcare." 85 Fed. Reg. 37160, 37172 (2020) ("2020 Rule"). The Trump Administration further limited Section 1557 by determining that health insurance issuers are not "principally or otherwise engaged in the business of healthcare." *Id*.; 45 C.F.R. § 92.3(b)-(c).[1] Having construed Section

---

[1] The regulation resulting from the 2020 Rule, 45 C.F.R. § 92.3(b)-(c) (2020), states:

> (b) As used in this part, "health program or activity" encompasses all of the operations of entities principally engaged in the business of providing healthcare that receive Federal financial assistance as described in paragraph (a)(1) of this section. For any entity not principally engaged in the business of providing healthcare, the requirements applicable to a "health program or activity" under this part shall apply to such entity's operations only to the extent any such operation receives Federal financial assistance as described in paragraph (a)(1) of this section. (c) For purposes of this part, an entity principally or otherwise engaged in the

1557 to exclude health insurance issuers like The Health Plan, the 2020 Rule provides that such entities are prohibited from discriminating against individuals "only to the extent any such operation receives Federal financial assistance." *Id*. at (b).

Although the 2020 Rule remains in effect, Plaintiffs argue that it does not control this Court's analysis because Section 1557's plain text unambiguously prohibits discrimination by The Health Plan under its entire portfolio. The Court agrees with Plaintiffs and declines to defer to the 2020 Rule. [2]

When determining whether deference to an agency interpretation is owed, the Court must apply the two-step analysis under *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). The first step considers "whether Congress has directly spoken to the precise question at issue." *Id*. at 842. If so, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id*. at 842-43. "However, if the statute is silent or ambiguous in expressing Congress' intent," the court must "defer to the agency's reasonable construction of the statute." *Id*. at 843-44. Although this analysis focuses on the statute at issue, "a reviewing court should not confine itself to examining a particular statutory provision in isolation. Rather, [t]he meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *King v. Burwell*, 759 F.3d 358, 368-69 (4th Cir. 2014), *aff'd*, 576 U.S. 473 (2015) (quoting *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 666

---

business of providing health insurance shall not, by virtue of such provision, be considered to be principally engaged in the business of providing healthcare.

[2] As best this Court can tell, this issue is one of first impression. Although several courts have considered challenges to the 2020 Rule, none have addressed whether its interpretation of "health program or activity" must be granted *Chevron* deference. At least one court has concluded that Section 1557 is ambiguous under *Chevron* step one. *See Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817 (D. S.C. 2015). However, in that case, the court did not consider whether an insurance issuer could be held liable under Section 1557 and instead applied the law to pharmacies. *Id*. at 850.

(2007)) (internal citation and quotation marks omitted).

If the Court concludes that the statute is ambiguous, it must turn to whether the regulation is a permissible interpretation. The Fourth Circuit has held that agency interpretations carry controlling weight unless they are "arbitrary, capricious, or manifestly contrary to the statute." *People for the Ethical Treatment of Animals v. United States Dep't of Agric.*, 861 F.3d 502, 510 (4th Cir. 2017) (citing *Chevron*, 467 U.S. at 843-44).

As to step one, the precise question before the Court is whether Section 1557 prohibits The Health Plan, a health insurance issuer that accepts federal financial assistance for its Medicare Advantage program, from discriminating against Plaintiffs under its HMO plan. *Compl.* ¶ 139(B). As noted above, Section 1557 prohibits discrimination under "any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance . . . ." 42 U.S.C. § 18116. In analyzing this section, the Court must consider two sub-issues: (1) whether The Health Plan is a "health program or activity," and if so, (2) whether "any part" of The Health Plan accepts federal financial assistance. The parties do not dispute that The Health Plan accepts federal financial assistance through its Medicare Advantage program for the purposes of Section 1557. Accordingly, the viability of Plaintiffs' claim hinges on the first issue.

By extending nondiscrimination protections to individuals under "any health program or activity," Congress clearly intended to prohibit discrimination by any entity acting within the "health" system. Here, The Health Plan's role as a health insurance provider undoubtedly implicates the health of persons falling within the scope of ACA protections. For example, in the instant case, Plaintiff Martell alleges that The Health Plan's exclusion has limited his access to health care by virtue of its authority to design health benefits. Therefore, as the gatekeeper to Martell's health services, The Health Plan qualifies as a "health program" that Congress intended

to rid of discrimination.

Although "health program or activity" is not defined by the ACA, its meaning becomes evident as the Court widens its analytical lens beyond the phrase itself. In the same section, Congress provides that applicable "Federal financial assistance[] include[es] . . . contracts of insurance[.]" 42 U.S.C. § 18116. It is unclear to whom this clause would apply if not health insurance issuers like The Health Plan.[3] Other sections of the ACA provide further support, including one section which permits states to offer insurance plans under a "basic health program." *See id*. at § 18051. Lastly, when looking at the ACA as a whole, the Act clearly "aims to increase the number of Americans covered by health insurance" by transforming the health insurance industry. *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 538 (2012). In addition to creating a public option, the Act implemented substantial health insurance market reforms by establishing minimum coverage requirements, mandating open enrollment and guaranteed renewal, and limiting risk-based pricing. *See* Tom Baker, *Health Insurance, Risk, and Responsibility After the Patient Protection and Affordable Care Act*, 159 U. Pa. L. Rev. 1577 (2011) (outlining the ACA's

---

[3] The Department of Health and Human Services' refusal to elaborate on the scope of "contracts of insurance" appears to be rooted in its position that assistance under Medicare Part B should be excluded from Section 1557. *See* 85 Fed. Reg. at 37174 ("As for Medicare Part B, it is not Federal financial assistance."); *see also* 81 Fed. Reg. at 31383 ("[T]he definition of Federal financial assistance does not include Medicare Part B."). Although the Court does not express an opinion as to Section 1557's application to Medicare Part B providers, it notes that this exclusion is not rooted in any controlling legal authority or theory. HHS' position stems from its interpretation of Title VI, which expressly excludes "contracts of insurance" from the definition of qualifying federal financial assistance. *See* 45 C.F.R. pt. 80 App A; 81 Fed. Reg. at 31383, 31385. However, as observed by several commenters to the proposed rules in 2015 and 2019, that basis for exclusion does not exist under Section 1557, which expressly includes "contracts of insurance" in its definition of federal financial assistance. *See, e.g.*, Disability Rights Education and Defense Fund, Comment Letter on Proposed Rule on Nondiscrimination in Health and Health Education Programs or Activities (Nov. 9, 2015), https://www.regulations.gov/comment/HHS-OCR-2015-0006-0828. Therefore, HHS' prior exclusions of Medicare Part B has no impact on this Court's reading of "contracts of insurance."

"most dramatic changes" to the insurance market); *see also* 42 U.S.C. § 18022 (Essential health benefits requirements); *id*. at §300gg-1 (Guaranteed availability of coverage); *id*. at §300gg (Fair health insurance premiums). Given this context, the Court finds "health program or activity" under Section 1557 necessarily includes health insurance issuers such as The Health Plan.

Unlike other proponents of the 2020 Rule, The Health Plan argues that Section 1557 is unambiguous and asserts two narrow interpretations. The Court finds neither persuasive. First, The Health Plan asserts that "health program or activity" should be equated to individual health plans rather than entities. In support of this argument, The Health Plan reasons that, if Congress intended Section 1557 to apply to entities, it would have used language like "health insurance issuer" or "health maintenance organization," as it did under 42 U.S.C. § 300gg-91. *See Reply* 3, ECF No. 45.

However, Congress' choice to use "health program or activity" over "health insurance issuer" does not mean that it intended to exclude entities from Section 1557; it shows that Congress intended the provision to apply broadly. It also shows that Congress adopted language consistent with other nondiscrimination provisions. *See, e.g.*, 20 U.S.C. § 1681 (prohibiting discrimination "under any education program or activity"), 42 U.S.C. § 2000d (prohibiting discrimination "under any program or activity"), and *id*. at § 6101 (same).

The ACA's other use of the term "health program" further undermines The Health Plan's position. As noted above, 42 U.S.C. § 18051(a)(1) permits states to create a "basic health program . . . under which a State may enter into contracts to offer 1 or more standard health plans." Farther down under § 18051(c)(1), Congress clarifies that "[a] State basic health program shall establish a competitive process for entering into *contracts with standard health plans* . . . ." (emphasis added). This supports the Court's conclusion that individual plans are not programs with "parts" that

receive federal financial assistance; health plans are the "parts" that receive assistance within programs.

Lastly, The Health Plan's position contradicts the very rule it relies upon. Under the 2020 Rule, "'health program or activity' encompasses *all of the operations of entities* principally engaged in the business of providing healthcare that receive Federal financial assistance." 85 Fed. Reg. at 37244 (emphasis added). In essence, The Health Plan asks this Court to grant *Chevron* deference to the 2020 Rule by adopting an interpretation that contradicts the same. Such a position is untenable and must be rejected.

The Health Plan's second argument is that "the phrase 'health program or activity' refers to those programs and activities established under Chapter 157 that receive Federal Assistance" in light of Section 1557's place within Chapter 157. *Reply* 4, ECF No. 45. The Court can easily dispose of this argument as well. Section 1557 prohibits discrimination under (1) "any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance," and (2) "any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments)." 42 U.S.C. § 18116. Plaintiffs' claim relies upon the first clause, which limits Section 1557's applicability by the type of federal assistance received. To state the obvious, Congress did not limit this clause to programs established under Chapter 157 (the codification of Title I of the ACA), as it did under the second clause. Therefore, The Health Plan's second argument must also be rejected.

The Court concludes that The Health Plan is unambiguously a "health program or activity" under the plain text of Section 1557. Consequently, by virtue of its acceptance of federal assistance under its Medicare Advantage program, The Health Plan must comply with Section 1557 under its entire portfolio. Accordingly, Plaintiffs have stated a claim upon which relief may be granted and

The Health Plan's Motion to Dismiss is **DENIED**.

The Clerk is **DIRECTED** to send a copy of this Order to counsel of record and any unrepresented parties.

        ENTER:    June 28, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE