IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

CHRISTOPHER FAIN, *et al.*, individually and
on behalf of all others similarly situated,

        *Plaintiffs*,

        v.

WILLIAM CROUCH, *et al.*,

        *Defendants.*

CIVIL ACTION NO. 3:20-cv-00740

HON. ROBERT C. CHAMBERS

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23**

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................1

II.    RELEVANT BACKGROUND ...........................................................................2

    A.  Defendants' Exclusion applies to all transgender
       West Virginia Medicaid participants ..........................................................2

    B.  Plaintiff Christopher Fain, like all transgender West Virginia Medicaid
       participants, is subject to the Exclusion ......................................................4

    C.  Plaintiff Shauntae Anderson, like all transgender West Virginia Medicaid
       participants, is subject to the Exclusion ......................................................5

    D.  Proposed Class Counsel is experienced
       in civil rights litigation and class actions ...................................................6

III.   ARGUMENT ......................................................................................................6

    A.  The proposed class satisfies the requirements of Rule 23(a) .......................7

       1.  The size of the proposed class exceeds the numerosity requirement,
          and joinder of all class members is impracticable ..................................7

       2.  Commonality is satisfied because the Exclusion subjects all class members
          to the same categorical ban on gender-confirming surgical services ....................8

       3.  Plaintiffs' claims are typical of those of the proposed class .................11

       4.  Plaintiffs and their counsel will adequately represent the proposed class. ...........12

          a.  Plaintiffs are adequate Class Representatives...................................12

          b.  Proposed Class Counsel are adequate............................................13

    B.  The proposed class satisfies the requirements of Rule 23(b)(2) .................17

IV.   CONCLUSION.................................................................................................17

i

## I.   INTRODUCTION

This is the type of case for which the class certification mechanism under Federal Rule of Civil Procedure 23(a) and (b)(2) was made. Defendants admit that West Virginia's Medicaid program does not provide insurance coverage for gender-confirming surgical care as treatment for gender dysphoria (the "Exclusion").[1] And they admit that the Exclusion is universal. In other words, the Exclusion applies to all transgender West Virginia Medicaid participants. This lawsuit calls the blanket ban what it is: discrimination. On behalf of themselves and the proposed Medicaid Class of all transgender people who are or will be enrolled in West Virginia Medicaid and who are seeking or will seek gender-confirming care barred by the Exclusion, Plaintiffs seek (1) judgment declaring the ban unlawful, and (2) a universal injunction against its future enforcement. The Court should certify the proposed Medicaid Class.

_First_, Plaintiffs easily meet the requirements under Rule 23(a). The proposed class is sufficiently numerous. In fact, just the number of West Virginia Medicaid participants who submit claims related to a diagnosis of gender dysphoria alone exceeds 600 people annually. There is commonality. None of these individuals or any other transgender Medicaid participant have or could have received coverage for gender-confirming surgical care given the Exclusion. And the Exclusion extends directly from Defendants' policy decision to exclude "transexual surgery," without regard to medical necessity and despite routinely covering the same care for cisgender individuals. Proposed Class Representatives Christopher Fain and Shauntae Anderson ("Plaintiffs") are adequate and typical. They brought and diligently followed through with this

---

[1] To the extent Defendants exclude other gender-confirming care from coverage, that is also part of the Exclusion. _See_ Pls.' Summ. J. Br. at Pt. II.C. (regarding puberty-delaying treatment). Notably, surgery, hormones, counseling, and puberty-delaying treatment are all gender-confirming care. Thus, whether Defendants exclude any one, a combination, or all such types of care from coverage, the Exclusion is discriminatory. _See id._ at Pt. IV.

lawsuit, and they are members of the proposed class because they are "transgender people who are or will be enrolled in West Virginia Medicaid and who are seeking or will seek gender-confirming care barred by the Exclusion[ ]."[2] Plaintiffs' counsel, too, are experienced civil rights and class action lawyers, making them more than adequate Class Counsel.

_Second_, Plaintiffs meet the requirements of Rule 23(b)(2). Defendants' Exclusion "appl[ies] generally to the [proposed Medicaid C]lass, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Indeed, Plaintiffs seek a class-wide declaratory judgment that Defendants' Exclusion violates the Patient Protection and Affordable Care Act ("ACA"); the Medicaid Act's Comparability and Availability Requirements; and the Equal Protection Clause of the Fourteenth Amendment. They also seek an injunction barring Defendants from enforcing the Exclusion.

In short, this case is perfectly suited for certification under Rule 23(b)(2). Accordingly, Plaintiffs respectfully request that the Court certify the proposed Medicaid Class, designate the Plaintiffs as Class Representatives, and appoint the undersigned attorneys as Class Counsel.

## II.   RELEVANT BACKGROUND

Plaintiffs here incorporate by reference the background set out in their contemporaneously filed motion for summary judgment and accompanying papers. Plaintiffs state below only those facts most relevant to certification.

### A. Defendants' Exclusion applies to all transgender West Virginia Medicaid participants.

Defendant Bureau for Medical Services ("BMS") oversees all matters pertaining to access to West Virginia Medicaid services for the approximately 628,000 West Virginians enrolled in the

---

[2] First Am. Compl. ¶ 147, ECF No. 140 (class definition).

state's Medicaid program.[3] Defendant Cynthia Beane ("Beane") presides over Defendant BMS as the Bureau's Commissioner.[4] Defendant BMS is one of six bureaus housed within the West Virginia Department of Health and Human Resources ("DHHR").[5] Defendant Bill Crouch ("Crouch") serves as Cabinet Secretary of DHHR.[6] Though some enrollees receive health coverage through a "fee for service" program and some through one of the three managed care organizations ("MCOs") that contract with the state,[7] Defendants do not provide insurance coverage—directly, through the MCOs, or otherwise—to any enrollee for gender-confirming surgical care.[8] Indeed, the BMS Policy Manual states, "The West Virginia Medicaid program does not cover certain services and items regardless of medical necessity," including "[t]ranssexual surgery."[9] Further, all of the MCOs are required to abide by exclusions in the BMS Policy Manual and contract if they are reimbursing providers out of their Medicaid money.[10] Accordingly, MCO UniCare's health plan for Medicaid participants excludes coverage for "[s]ex transformation procedures" and for "hormone therapy for sex transformation procedures."[11] MCO Aetna Better Health's plan excludes coverage for "[s]ex transformation procedures and hormone therapy for sex transformation procedures."[12] MCO The Health Plan provides that "[s]ex change, hormone therapy for sex transformation, and gender transition procedures/expenses will not be paid for by

---

[3] Pls.' Summ. J. Br. Ex. 14, Young Dep. Tr. at 75:8-12; Pls.' Summ. J. Br. Ex. 9, Beane Dep. Tr. at 110:16-20.
[4] Pls.' Summ. J. Br. Ex. 9, Beane Dep. Tr. at 15:8-9.
[5] Pls.' Summ. J. Br. Ex. 8, Crouch Dep. Tr. at 34:14-25, 35:1-4.
[6] *Id.* at 11:10-13.
[7] Pls.' Summ. J. Br. Ex. 9, Beane Dep. Tr. at 13:5-8, 82:20-25, 83:1-18.
[8] *Id.* at 13:18-21, 45:13-15, 84:19-22, 89:8-25, 90:1-13.
[9] Pls.' Summ. J. Br. Ex. 23 at CFAIN0001662; Pls.' Summ. J. Br. Ex. 24 at 77.
[10] Pls.' Summ. J. Br. Ex. 14, Young Dep. Tr. at 72:3-6.
[11] Pls.' Summ. J. Br. Ex. 25, Health Plan Composite.
[12] *Id.*

The Health Plan."[13] In other words, Defendants deny gender-confirming surgical care to **all** transgender people enrolled in West Virginia Medicaid as a matter of course.

At minimum, the number of those transgender West Virginia Medicaid participants is 686.[14] To explain, approximately 602 participants submitted one or more claims with a diagnosis code for gender dysphoria or gender incongruence under the West Virginia Medicaid program in 2020.[15] In 2021, that number grew to 686 participants during the period from January 1 to September 30, 2021.[16] The number of transgender participants enrolled in West Virginia Medicaid is likely larger. Plaintiffs note Defendants continue to enforce the Exclusion to this day.

### B. Plaintiff Christopher Fain, like all transgender West Virginia Medicaid participants, is subject to the Exclusion.

Christopher Fain is a 46-year-old transgender man who lives in Huntington, West Virginia.[17] Mr. Fain, who was incorrectly designated female at birth, has a male gender identity.[18] Mr. Fain has been enrolled in Medicaid coverage for most of his adult life and relies on it for his health care needs.[19] He was diagnosed with gender dysphoria and began hormone replacement therapy to alleviate his gender dysphoria on or around March 2019.[20] Mr. Fain requires a bilateral mastectomy as medically necessary care to treat his gender dysphoria.[21] But the Exclusion prevents Mr. Fain from receiving insurance coverage for—and, thus, receipt of—such treatment.[22] Mr. Fain

---

[13] *Id.*
[14] Pls.' Summ. J. Br. Ex. 3 at 3-4, Interrog. 11.
[15] *Id.*
[16] *Id.*
[17] Pls.' Summ. J. Br., Fain Decl. ¶ 3.
[18] *Id.* ¶ 5.
[19] *Id.* ¶ 4.
[20] *Id.* ¶ 15.
[21] Mot. to Seal, Ex. A, Karasic Rep. ¶ 73.
[22] Ex. 23 at CFAIN0001662; Pls.' Summ. J. Br. Ex. 24 at 77; Pls.' Summ. J. Br. Ex. 25, Health Plan Composite.

suffers harm every day he is denied coverage for this care.[23] In the words of Mr. Fain, "I want top surgery, and therefore I need, just like everybody else in the state of West Virginia like me needs, to have the exclusion struck down."[24] This testimony highlights Mr. Fain's express wish and continued goal of representing the proposed class. He agreed to be a Class Representative because he believes all people deserve equal treatment within West Virginia's Medicaid program, regardless of sex and/or transgender status.[25] Moreover, Mr. Fain has kept in close contact with the undersigned counsel and has kept the best interests of the proposed class in mind throughout the case.[26] He assisted counsel with preparing the Complaints, collected and produced documents, responded to written discovery, and sat for a deposition in which he demonstrated his adequacy as a Class Representative.[27]

### C. Plaintiff Shauntae Anderson, like all transgender West Virginia Medicaid participants, is subject to the Exclusion.

Shauntae Anderson is a 45-year-old transgender woman who lives in Charleston, West Virginia.[28] Ms. Anderson, who was incorrectly designated male at birth, has a female gender identity.[29] Ms. Anderson has been enrolled in Medicaid coverage since 2019 and relies on it for her healthcare needs.[30] In or around 2019, Ms. Anderson's healthcare providers recommended she begin hormone replacement therapy to alleviate her gender dysphoria.[31] Shortly thereafter, she began hormone replacement therapy in or around May 2019.[32] Ms. Anderson requires, but has not

---

[23] Pls.' Summ. J. Br., Fain Decl. ¶¶ 17-22.
[24] Pls.' Summ. J. Br. Ex. 6, Fain Dep. Tr. at 81:21-23.
[25] Pls.' Summ. J. Br., Fain Decl. ¶ 2.
[26] *Id.*
[27] Declaration of Nicole J. Schladt ("Schladt Decl.") ¶ 3.
[28] Pls.' Summ. J. Br., Anderson Decl. ¶ 3.
[29] *Id.* ¶ 5.
[30] *Id.* ¶ 4.
[31] *Id.* ¶ 14.
[32] *Id.*

received, gender-confirming surgery.[33] As with Mr. Fain and all other transgender Medicaid participants in West Virginia, the Exclusion prevents Ms. Anderson from receiving insurance coverage for—and, thus, receipt of—such treatment.[34] The emotional toll of being denied gender-confirming surgery, and the distress it causes, significantly impacts Ms. Anderson.[35] Ms. Anderson agreed to be a Class Representative because she hopes that other transgender Medicaid participants will not have to suffer like she does.[36] Like Mr. Fain, Ms. Anderson has participated fully in the litigation by assisting with the preparation of the Amended Complaint, responding to discovery requests, collecting and producing documents, and sitting for a deposition about her claims.[37]

**D. Proposed Class Counsel is experienced in civil rights litigation and class actions.**

Proposed Class Counsel at the law firm of Nichols Kaster is experienced in class action and civil rights litigation.[38] Similarly, proposed Class Counsel at Lambda Legal are experts in the substantive area of law and, too, have class action experience.[39] Proposed Class Counsel at the Employment Law Center is well-versed in West Virginia federal and state court practice, as well as civil rights law.[40] Proposed Class Counsel's experience and qualifications are further discussed below and in the accompanying declarations.[41]

**III.   ARGUMENT**

A major goal of class action litigation is to promote judicial economy and efficiency by

---

[33] Mot. to Seal, Ex. A, Karasic Rep. ¶ 93.
[34] Ex. 23 at CFAIN0001662; Pls.' Summ. J. Br. Ex. 24 at 77; Pls.' Summ. J. Br. Ex. 25, Health Plan Composite.
[35] Mot. to Seal, Ex. A, Karasic Rep. ¶ 92.
[36] Pls.' Summ. J. Br., Anderson Decl. ¶ 20.
[37] Schladt Decl. ¶ 3.
[38] Schladt Decl. ¶¶ 4-7.
[39] Declaration of Avatara Smith-Carrington ("Smith-Carrington Decl.") ¶¶ 7-9.
[40] Declaration of Walt Auvil ("Auvil Decl.") ¶¶ 3-8.
[41] *See infra* Pt. III.A.4.b.; Schladt Decl.; Smith-Carrington Decl.; Auvil Decl.

"simplify[ing] litigation involving a large number of class members with similar claims." *Devlin v. Scardelletti*, 536 U.S. 1, 10 (2002); *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003). The requirements of Rule 23 focus on those goals, requiring a plaintiff to meet the requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and also one of the conditions outlined in Rule 23(b). *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 654 (4th Cir. 2019). Where, as here, a plaintiff seeks certification under Rule 23(b)(2), to certify the class, a court must find that the defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *Berry v. Schulman*, 807 F.3d 600, 608–10 (4th Cir. 2015). Notably, class actions provide for relief when multiple individual actions are unfeasible. *Gunnells*, 348 F.3d at 424. To that end, Rule 23 must be liberally construed for the purpose of "best serv[ing] the ends of justice for the affected parties and . . . promot[ing] judicial efficiency." *Nelson v. Warner*, 336 F.R.D. 118, 122 (S.D.W. Va. 2020) (Chambers, J.) (quoting *Gunnells*, 348 F.3d at 424). Here, where Plaintiffs easily meet the requirements of Rule 23(a) and (b)(2), class certification would promote such judicial efficiency and justice and is warranted.

### A.  The proposed class satisfies the requirements of Rule 23(a).

#### 1.  *The size of the proposed class exceeds the numerosity requirement, and joinder of all class members is impracticable.*

While there is no "mechanical test" or minimum class member requirement, courts generally find numerosity exists when a class has 40 or more members. *Nelson*, 336 F.R.D. at 122; *Baxley v. Jividen*, 338 F.R.D. 80, 86 (S.D.W. Va. 2020); *Cyrus ex rel. McSweeney v. Walker*, 233 F.R.D. 467, 470 (S.D.W. Va. 2005) ("Impracticality of joinder does not mean that it must be impossible.").

7

Numerosity is easily satisfied here. Defendants' records have identified a proposed class of *at least* 686 people during the period from January 1 to September 30, 2021, alone.[42] The full scope of the proposed class plainly exceeds the practical limits of joinder. Fed. R. Civ. P. 23(a)(1). Joinder of such a large group, particularly given that Defendants continue to enforce the Exclusion, would be impracticable. *Cyrus*, 233 F.R.D. at 470 (finding numerosity requirement satisfied because it would be "impracticable to identify and join each new individual" of a fluid class of Medicaid recipients scattered across the State); *see Baxley,* 338 F.R.D. at 86 (finding numerosity requirement satisfied due to the "overwhelmingly large and continuously changing size of the class" of jail detainees). As one court held:

> [T]he proposed class may be too numerous to join in a single lawsuit, especially since some members of the class are not capable of being identified until sometime in the future. Likewise, as plaintiffs point out, even if joinder were possible it would be ill-advised and difficult to achieve due to the sensitive nature of the claims, the plaintiffs' limited financial means, and their varied locations across the state.

*Flack v. Wisconsin Dep't of Health Servs.*, 331 F.R.D. 361, 370 (W.D. Wis. 2019). It is no different here. Numerosity is satisfied.

### 2. Commonality is satisfied because the Exclusion subjects all class members to the same categorical ban on gender-confirming surgical services.

Commonality requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A single common question is sufficient, so long as its determination "will resolve an issue that is central to the validity of each one of the claims in one stroke." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 360 (4th Cir. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011); *Cyrus*, 233 F.R.D. at 471 ("Rule 23 does not require that each and every class

---

[42] *See supra* Pt. II.A. Moving forward, additional members of the proposed class will become known to Defendants if and when they apply for coverage or make claims subject to the Exclusion at issue in this case.

member have identical factual and legal situations. Rather, there need be only a common question

of law or fact."). Commonality is evident when the "plaintiff shows that the class members have

suffered the same injury," and when the injury arises from "a common contention." *Wal-Mart*, 564

U.S. at 349. As this Court recognized earlier in this case, a common contention in the

discrimination context:

> acts as the "glue" which holds each of the claims together and ensures "that
> examination of all the class members' claims for relief will produce a common
> answer to the crucial question *why was I disfavored*." *Brown v. Nucor Corp.*, 785
> F.3d 895, 909 (4th Cir. 2015) (quoting *Wal-Mart*, 564 U.S. at 349) (emphasis in
> original) (internal quotation marks omitted). This requirement can be met when the
> plaintiff shows that the defendant "operated under a general policy of
> discrimination." *Wal-Mart*, 564 U.S. at 353 (quoting *Gen. Tel. Co. of Sw. v. Falcon*,
> 457 U.S. 147, 159 n.15 (1982)) (internal quotation marks omitted).[43]

Here, Defendants plainly operate under such "a general policy of discrimination." And all

proposed class members, including Plaintiffs, suffer from a common injury arising from that

common policy. That is, Defendants' policy—the Exclusion—categorically denies transgender

participants coverage for gender-confirming surgical care. That all transgender people enrolled in

West Virginia Medicaid are denied gender-confirming surgery as a matter of course, without even

a chance to demonstrate medical necessity, binds members of the proposed class and supports class

certification. *See Scott v. Clarke,* 61 F. Supp. 3d 569, 590 (W.D. Va. 2014) (granting class

certification where plaintiffs established a threshold question binding a class of incarcerated

individuals, namely whether a prison's systemic policies prevented class members from obtaining

the medical care they needed); *see also Baxley*, 338 F.R.D. at 87 ("The evidence provided is

sufficient to support a finding that the members of the putative class are commonly exposed to

systemic policies and practices.... Accordingly, Plaintiffs have presented more than the one

---

[43] Order & Mem., ECF No. 57, at 11.

common question that is required by Rule 23 and have therefore satisfied the commonality requirement.").

Put another way, there are several questions of law and fact common to the class in this case. These include, (1) whether the blanket Exclusion in health plans offered to Medicaid participants facially violate the U.S. Constitution, the ACA, and the federal Medicaid Act; and (2) whether Defendants should be enjoined from enforcing the Exclusion and denying Plaintiffs and members of the proposed class coverage for and access to gender-confirming surgical care. As demonstrated in their contemporaneously filed Motion for Summary Judgment, the answer to both questions is "yes," thereby resolving issues central to the validity of Plaintiffs' claims in one stroke. This supports commonality. *See EQT*, 764 F.3d at 360.

Plaintiffs' requested injunctive relief of lifting the ban on coverage, too, supports commonality. *See e.g., G.T. by Michelle v. Bd. of Educ. of Cnty. of Kanawha*, No. 2:20-CV-00057, 2021 WL 3744607, at *14 (S.D.W. Va. Aug. 24, 2021) ("Injunctive relief related to district-wide policies, procedures, and resources would resolve the claims for the class as a whole. Therefore, the Court finds that the Plaintiffs have adequately demonstrated commonality."); *see also Gaston v. LexisNexis Risk Sols., Inc.*, 483 F. Supp. 3d 318, 342 (W.D.N.C. 2020*), appeal dismissed*, No. 20-1960 (L), 2021 WL 4144028 (4th Cir. June 28, 2021) ("While any differences among class members may be relevant to certification of a class seeking money damages under Rule 23(b)(3)... such differences are not relevant to the certification of a class limited to seeking only injunctive rather than monetary relief. As to such a class, so long as 'each individual class member' is not 'entitled to a *different* injunction' then alleged individual differences do not counsel against certification of a class under Rule 23(b)(2).").

In sum, here, where Plaintiffs and the proposed class are all subject to Defendants'

10

Exclusion—which functions as a uniform threshold bar to coverage for gender-confirming surgical care for all transgender West Virginia Medicaid participants without regard to any individual's circumstances—and where Plaintiffs and the proposed class all seek the same injunctive relief, commonality is satisfied. *See e.g., Flack*, 331 F.R.D. at 369 (finding commonality based on nearly identical common questions).

### 3.  *Plaintiffs' claims are typical of those of the proposed class.*

Typicality requires a showing that "the claims or defenses of the class and class representatives arise from the same event or pattern or practice and are based on the same legal theory*." In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 238 (S.D.W. Va. 2005) (quotation omitted). This is not a high bar for certification, *see Baxley*, 338 F.3d at 88, and class members need not have suffered identical injuries or harm, *Serzone*, 231 F.R.D. at 238. The typicality requirement of Fed. R. Civ. P. 23(a)(3) is met because "the claims . . . of the representative parties are typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3).

The legal claims of proposed Class Representatives Fain and Anderson are identical to those of the class they seek to represent. Plaintiffs share with the proposed class the experience of being denied access to surgical care on the basis of sex and/or transgender status, regardless of medical necessity or individualized circumstances. Their claims arise from the same blanket Exclusion that targets transgender people on its face. As discussed in the context of commonality, the core facts that will drive liability and damages are identical for both the Class Representatives and the class that they seek to represent. *See Bullock v. Bd. of Educ. of Montgomery Cnty.,* 210 F.R.D. 556, 560 (D. Md. 2002) (finding typicality where the class representatives' claims stemmed from "the policies, patterns, and practices of Defendants concerning homeless students [that] denied them their rights under the McKinney–Vento Act"); *Flack*, 331 F.R.D. at 369 (finding

typicality where "the claims arise from defendants' enforcing the Challenged Exclusion, and the relief sought simply seeks to allow the class members the right to individually seek treatment based on medical necessity, free from enforcement of the Challenged Exclusion.").

Further, there are no legitimate defenses that would apply only to Mr. Fain or Ms. Anderson and would be inapplicable to the other class members. The interests and incentives of the Class Representatives are aligned with those of the putative class that they seek to represent. This makes Plaintiffs' claims typical. *See George v. Duke Energy Ret. Cash Balance Plan*, 259 F.R.D. 225, 232 (D.S.C. 2009) ("[T]ypicality . . . tends to merge with . . . commonality and adequacy . . . .") (citing *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006)).

### 4. *Plaintiffs and their counsel will adequately represent the proposed class.*

Rule 23(a)(4) requires Class Representatives and their counsel to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy is satisfied here because (1) Plaintiffs have demonstrated that they will effectively protect the interests of the proposed Medicaid Class, and (2) Plaintiffs' undersigned counsel will capably represent the proposed class as well. *See* Fed. R. Civ. P. 23(a)(4) & (g)(1).

#### a.   Plaintiffs are adequate Class Representatives.

Plaintiffs are adequate Class Representatives because no conflicts of interest exist between them and the proposed class, and because they do not "have interests antagonistic to those of the class." *Serzone*, 231 F.R.D. at 238; *see Ward v. Dixie Nat. Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010) (reasoning that adequacy is defeated only by a "fundamental," not "merely speculative or hypothetical," conflict of interest); *Good v. Am. Water Works Co., Inc.*, 310 F.R.D. 274, 295 (S.D.W. Va. 2015) (finding adequacy requirement satisfied).

Plaintiffs and the putative class share a common interest in seeking relief from Defendants'

discriminatory Exclusion. As Mr. Fain testified, "I want top surgery, and therefore I need, just like everybody else in the state of West Virginia like me needs, to have the exclusion struck down."[44] Both Mr. Fain and Ms. Anderson have demonstrated a commitment to the class and have represented the class capably and diligently. They have assisted in the preparation of the Complaints, searched for and produced documents, responded to written discovery, traveled for this case, been deposed and demonstrated adequate knowledge concerning the litigation, and maintained regular contact with counsel.[45] They are committed to this case and are adequate Class Representatives.

b.   Proposed Class Counsel are adequate.

Plaintiffs and their counsel are committed to "vigorously prosecut[ing] the matter on behalf of the class," *Nelson*, 336 F.R.D. at 123–24 (citing *Stay the Course W.Va. v. Tennant*, No. 1:12-CV-01658, 2013 WL 209479, at *3 (S.D.W. Va. Jan. 17, 2013)). The vigorous prosecution standard considers the abilities—i.e., the "competence and experience"—of class counsel. *In re W. Virginia Rezulin Litig.*, 585 S.E.2d 52, 69 (W. Va. 2003); *see Black v. Rhone-Poulenc, Inc.*, 173 F.R.D. 156, 162 (S.D.W. Va. 1996); *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 218 (D. Md. 1997) ("In the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to prosecute vigorously the action on behalf of the class.").

There is no question here that Nichols Kaster, PLLP; Lambda Legal Defense and Education Fund, Inc. ("Lambda Legal"); and The Employment Law Center, PLLC can fairly and adequately represent the members of the putative class. Since representation began in 2020, the undersigned counsel have demonstrated knowledge of the applicable law. In addition to this motion for class

---

[44] Pls.' Summ. J. Br. Ex. 6, Fain Dep. Tr. at 81:21-23.
[45] *See supra* Pt. II.B-C.

certification, Plaintiffs have successfully opposed multiple motions to dismiss, have filed two motions for leave to amend the complaint, and have engaged in significant and proactive discovery with Defendants.[46] Further, all three firms have considerable experience litigating complex class actions and/or discrimination cases.

*Lambda Legal* has extensive experience with civil rights and class action litigation.[47] Lambda Legal is the oldest and largest legal organization committed to achieving full recognition of the civil rights of LGBT people and everyone living with HIV through impact litigation, education, and public policy work.[48]  Lambda Legal has been party counsel and counsel for *amici curiae* in numerous constitutional and civil rights law challenges seeking equal treatment for transgender people. *See e.g., Kadel v. Folwell*, No. 19-cv-00272 (M.D.N.C.); *C.P. v. Blue Cross Blue Shield of Illinois*, No. 20-cv-06145-RJB (W.D. Washington); *Fletcher v. State of Alaska*, 443 F. Supp. 3d 1024, 1026 (D. Alaska 2020); *Simonson v. Oswego Cty.*, No. 5:17-cv-01309-MAD-DEP (N.D.N.Y.); *Conforti v. St. Joseph's Healthcare System*, No. 2:17-cv-00050 (D.N.J.); *Esquivel v. State of Oregon*, No. 11C17487 (Or. Cir. Ct. 2011); *Lawrence v. Cobert*, No. 510-2014-00396X (E.E.O.C.). Lambda Legal's work on behalf of transgender people also is integrally tied to Lambda Legal's 45-year history of advancing sex and sexual orientation anti-discrimination doctrines on behalf of the LGBT community, which has led to Lambda Legal's involvement as party counsel, and on behalf of *amici curiae*, in leading Supreme Court cases addressing the rights of LGBT people.[49] *See Bostock v. Clayton County,* 140 S. Ct. 1731 (2020) (*amicus*); *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015) (party counsel); *United States v. Windsor*, 133 S. Ct. 2675 (2013)

---

[46] Schladt Decl. ¶ 2.
[47] Smith-Carrington Decl. ¶¶ 7-9.
[48] *Id.*
[49] Smith-Carrington Decl. ¶ 8.

14

(*amicus*); *Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661 (2010) (*amicus*); *Lawrence v. Texas*, 539 U.S. 558 (2003) (party counsel); *Romer v. Evans*, 517 U.S. 620 (1996) (party counsel). And each of the counsel from Lambda Legal in this case has significant experience with civil litigation, advocating for the rights of LGBT people, and as lead counsel in such litigation.[50]

Lambda Legal's class action experience is also notable.[51] *See e.g., Bostic v. Schaefer*, 760 F.3d 352 (4th Cir. 2014) (counsel for plaintiff-intervenor class); *Diaz v. Brewer*, 656 F.3d 1008 (9th Cir. 2011) (counsel for plaintiff class certified in subsequent proceedings); *Thornton v. Comm'r of Soc. Sec.*, No. C18-1409JLR, 2020 WL 5494891 (W.D. Wash. Sept. 11, 2020) (counsel for plaintiff class); *Ely v. Saul*, No. 18-cv-0557, 2020 WL 2744138 (D. Ariz. May 27, 2020), appeal dismissed (Nov. 2, 2021) (counsel for plaintiff class); *Being v. Crum*, No. 3:19-cv-00060 (D. Alaska filed March 4, 2019) (counsel for putative plaintiff class); *Birchfield v. Armstrong*, No. 4:15-cv-00615, 2017 WL 1433032, at *1 (N.D. Fla. Mar. 23, 2017) (counsel for plaintiff class); *Torres v. Rhoades*, No. 3:15-cv-00288-bbc (N.D. Ill. filed May 13, 2015) (counsel for putative plaintiff class); *Inniss v. Aderhold*, No. 1:14-cv-01180-WSD (N.D. Ga. filed April 22, 2014) (counsel for putative plaintiff class); *Lee v. Orr*, No. 1:13–cv–08719, 2014 WL 683680 (N.D. Ill. Feb. 21, 2014) (counsel for plaintiff class); *East v. Blue Cross & Blue Shield of La.*, No. 3:14-CV-00115 (M.D. La. filed Feb. 20, 2014) (counsel for putative plaintiff class).

***Counsel from Nichols Kaster, PLLP ("NK")*** are well-qualified, experienced, and able to conduct this litigation.[52] Over the course of its forty-five year history, NK has earned the reputation

---

[50] Smith-Carrington Decl. ¶¶ 10-15.
[51] Smith-Carrington Decl. ¶ 9.
[52] Schladt Decl. ¶¶ 5-7; Schladt Decl. Ex. A: NK firm resume.

of being a top plaintiffs' litigation firm.[53] The firm represents people across the country in individual, collective, and class litigation.[54] The lawyers are routinely lauded for their work and high quality of representation.[55] The firm has been appointed class or collective counsel on numerous occasions in federal courts around the country.[56] *See, e.g., Ruffin v. Ent. of the E. Panhandle*, No. 3:11-CV-19, 2012 WL 5472165, at *9 (N.D.W. Va. Nov. 9, 2012) (appointing NK class counsel); *MacDonald v. Cashcall, Inc.,* 333 F.R.D. 331, 346 (D.N.J. 2019) (same); *Hart v. RCI Hospitality Holdings, Inc. et al*, No. 09 CIV. 3043 (S.D.N.Y Dec. 20, 2010) (same). Counsel in the instant matter are well-versed in both civil rights and class action law, have a depth of experience litigating complex class actions, routinely speak on class matters at seminars around the country, and are dedicated to serving the classes they represent.[57] The firm and counsel's proven results show that they are willing to put forward the resources necessary to pursue the case through verdict.[58]

***Walt Auvil***, owner and sole member of the Employment Law Center, is a founder and past president of the West Virginia Employment Lawyers Association, a Fellow of the College of Labor and Employment Lawyers, and past chair of the College of Labor and Employment Lawyers Fourth Circuit Credentials Committee.[59] He has served as lead counsel on dozens of discrimination cases in state and federal courts throughout West Virginia.[60] Auvil has also been appointed lead counsel on several class action matters during the past 30 years.[61]

---

[53] Schladt Decl. Ex. A at 2.
[54] *Id.*
[55] *Id.* at 3-10.
[56] *Id.* at 22-24.
[57] *Id.* at 32, 38; Schladt Decl. ¶¶ 5-7.
[58] *See* Schladt Decl. Ex. A at 12-27.
[59] Auvil Decl. ¶¶ 3, 6.
[60] *Id.* ¶ 5.
[61] *Id.*

16

Accordingly, pursuant to Rule 23(g), the Court should appoint NK, Lambda Legal, and the Employment Law Center as Class Counsel.

### B.  The proposed class satisfies the requirements of Rule 23(b)(2).

A class should be certified under Rule 23(b)(2) "when the plaintiffs' primary goal is not monetary relief, but rather to require the defendant to do or not do something that would benefit the whole class." *Chi. Teachers Union, Loc. No. 1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 440 (7th Cir. 2015); *cf. Berry*, 807 F.3d at 608–09 (noting that "incidental" monetary relief remains permissible under Rule 23(b)(2)). "Not surprisingly, 'civil rights cases against parties charged with unlawful, class-based discrimination are prime examples' of Rule 23(b)(2) classes." *Chi. Teachers Union*, 797 F.3d at 440 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)).

Certification of the proposed class is appropriate under Rule 23(b)(2) because Defendants' blanket exclusion of gender-confirming surgical care applies generally to members of the proposed class, making a final injunction and declaratory judgment appropriate to the full class. *See* Fed. R. Civ. P. 23(b)(2); *Wal-Mart*, 564 U.S. at 360; *Berry*, 807 F.3d at 608–10. Plaintiffs and all members of the proposed class are subject to the same Exclusion. They now seek a declaratory judgment that the Exclusion enumerated by West Virginia Medicaid violates the ACA, the Medicaid Act's Comparability and Availability Requirements, and the Equal Protection Clause, as well as an order permanently enjoining enforcement of such blanket Exclusion based on that illegality. If Plaintiffs prevail on the merits, a single injunction would necessarily apply to all class members and provide "meaningful, valuable" and "indivisible" relief to each member, with no need for individual differing injunctions. *Berry*, 807 F.3d at 609. This is precisely the kind of class-wide relief typically sought through Rule 23(b)(2). *See Baxley*, 338 F.3d at 90–91 (certifying class under Rule 23(b)(2) where plaintiffs sought "uniform injunctive relief in the form of 'constitutionally

17

sufficient medical and mental health care'"); *Nelson*, 336 F.R.D. at 125 (certifying class under Rule 23(b)(2) where defendant generally applies challenged statute to the proposed class and plaintiffs seek to prevent application of the statute statewide, rather than in any individual county or locality); *Heritage Ops. Grp., LLC v. Norwood*, 322 F.R.D. 321, 326 (N.D. Ill. 2017) (certifying class of Medicaid recipients where plaintiffs "request declaratory and injunctive relief that would require defendant to comply with the timeliness and benefit requirements of the Medicaid Act"); *G.T. by Michelle*, 2021 WL 3744607, at *15 (holding that "class certification under Rule 23(b)(2) is appropriate because [plaintiffs] allege that [defendant] has acted or refused to act on grounds generally applicable to the class, and injunctive and declaratory relief are suitable remedies").

Notably, courts in other circuits have certified nearly identical classes under Rule 23(b)(2). *See, e.g., Monroe v. Meeks*, 335 F.R.D. 201 (S.D. Ill. 2020) (certifying class of transgender people incarcerated in Illinois who have requested evaluation or treatment for gender dysphoria); *Flack*, 331 F.R.D. at 370 (certifying class of transgender Medicaid recipients where plaintiffs seek to enjoin enforcement of "categorical coverage ban in gender-confirming care" under a generally-applied policy). *Flack* is instructive. There, the court certified a class of: "All transgender individuals who are or will be enrolled in Wisconsin Medicaid, have or will have a diagnosis of gender dysphoria, and who are seeking or will seek surgical or medical treatments or services to treat gender dysphoria." *Id.* at 368. In certifying the class, the court held that certification was warranted under Rule 23(b)(2) "because the categorical coverage ban on gender-confirming care under the Challenged Exclusion is generally applicable to the class, making a final injunction and corresponding declaratory judgment appropriate to the full class." *Id.* at 370. This Court should hold the same.

18

## IV.    CONCLUSION

This case is about Defendants' categorical refusal to provide transgender Medicaid participants in West Virginia insurance coverage for gender-confirming surgical care. That refusal is not dependent on any single person's individual circumstances, needs, or wishes. Nor does it vary based on which MCO or type of Medicaid program in which one is enrolled. Rather, if you are a transgender West Virginian on Medicaid, you will not receive Medicaid coverage for gender-confirming surgical care. Accordingly, Plaintiffs seek declaratory relief and an injunction that does not vary from person to person but, rather, would apply across the board as does Defendants' Exclusion. These facts and those discussed above demonstrate that Plaintiffs have met all applicable Rule 23 factors. Accordingly, Plaintiffs respectfully request that the Court grant class certification.

Dated: May 31, 2022

/s/ Walt Auvil
Walt Auvil, WVSB No. 190
THE EMPLOYMENT LAW CENTER, PLLC
1208 Market Street
Parkersburg, WV 26101
Phone: 304-485-3058
Facsimile: 304-485-6344
auvil@theemploymentlawcenter.com

Anna P. Prakash, MN Bar No. 0351362*
Nicole J. Schladt, MN Bar No. 0400234*
NICHOLS KASTER, PLLP
IDS Center, 80 South 8th Street
Suite 4700
Minneapolis, MN 55402
Phone: 612-256-3200
Facsimile: 612-338-4878
aprakash@nka.com
nschladt@nka.com

Sasha Buchert, OR Bar No. 070686*
LAMBDA LEGAL DEFENSE AND EDUCATION
FUND, INC.
1776 K Street, N.W., 8th Floor
Washington, DC  20006-2304
Phone: 202-804-6245
Facsimile: 202-429-9574
sbuchert@lambdalegal.org

*Attorneys for Plaintiffs*

* Admitted *pro hac vice*

Respectfully submitted,

Avatara Smith-Carrington, MD Bar*
LAMBDA LEGAL DEFENSE AND EDUCATION
FUND, INC.
3500 Oak Lawn Avenue, Suite 500
Dallas, TX  75219
Phone: 214-219-8585
Facsimile: 214-481-9140
asmithcarrington@lambdalegal.org

Tara L. Borelli, GA Bar No. 265084*
Carl Charles, NY Bar No. 5427026*
LAMBDA LEGAL DEFENSE AND EDUCATION
FUND, INC.
158 West Ponce De Leon Ave., Ste. 105
Decatur, GA 30030
Phone: 470-225-5341
Facsimile: 404-506-9320
tborelli@lambdalegal.org
ccharles@lambdalegal.org

Nora Huppert, CA Bar No. 330552*
LAMBDA LEGAL DEFENSE AND EDUCATION
FUND, INC.
4221 Wilshire Boulevard, Suite 280
Los Angeles, CA  90010
Phone: 213-382-7600
Facsimile: 213-351-6050
nhuppert@lambdalegal.org

20

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

CHRISTOPHER FAIN, *et al.*, individually and
on behalf of all others similarly situated,

      *Plaintiffs*,

    v.

WILLIAM CROUCH, *et al.*,

      *Defendants.*

CIVIL ACTION NO. 3:20-cv-00740
HON. ROBERT C. CHAMBERS

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document, and any attachments, were served

electronically on May 31, 2022 on the following counsel for Defendants in this case:

Lou Ann S. Cyrus (WVSB # 6558)
Roberta F. Green (WVSB #6598)
Caleb B. David (WVSB #12732)
Kimberly M. Bandy (WVSB #10081)
SHUMAN MCCUSKEY SLICER PLLC
P.O. Box 3953, Charleston, WV 25339
(304) 345-1400; (304) 343-1826 (fax)
lcyrus@shumanlaw.com, rgreen@shumanlaw.com
cdavid@shumanlaw.com, kbandy@shumanlaw.com

*Attorneys for Defendants William Crouch; Cynthia Beane; and West Virginia Department of
Health and Human Resources, Bureau for Medical Services*

Dated: May 31, 2022

Respectfully submitted,

s/ Walt Auvil
Walt Auvil, WV Bar No. 190
THE EMPLOYMENT LAW CENTER, PLLC
1208 Market Street
Parkersburg, WV 26101
Phone: 304-485-3058
Facsimile: 304-485-3058
auvil@theemploymentlawcenter.com