IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

CHRISTOPHER FAIN,
SHAUNTAE ANDERSON,
individually and on behalf of all others similarly situated,

    Plaintiffs,

v.            CIVIL ACTION NO.   3:20-0740

WILLIAM CROUCH, in his official capacity as
Cabinet Secretary of the West Virginia
Department of Health and Human Resources;
CYNTHIA BEANE, in her official capacity as
Commissioner for the West Virginia Bureau for
Medical Services;
WEST VIRGINIA DEPARTMENTOF HEALTH AND
HUMAN RESOURCES, BUREAU FOR MEDICAL SERVICES,

    Defendants.

### MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs' Motion for Class Certification Pursuant to Federal Rule of Civil Procedure 23. ECF No. 248. Plaintiffs ask this Court to certify the proposed class of "all transgender people who are or will be enrolled in west Virginia Medicaid and who are seeking or will seek gender-confirming care barred by the Exclusion." It is clear to this Court that Plaintiffs meet the requirements of Rule 23 to justify the certification of this class. Accordingly, the Court **GRANTS** Plaintiffs' Motion. ECF No. 248.

### BACKGROUND

The Plaintiffs in this case are transgender West Virginian Medicaid participants. Plaintiff Christopher Fain is a 46-year-old transgender man enrolled in West Virginia Medicaid and is seeking surgical treatment for his gender dysphoria diagnosis. *Fain Tr.*, ECF No. 252-5, at 22, 23.

Plaintiff Shauntae Anderson is a 45-year-old transgender woman enrolled in West Virginia Medicaid and is also seeking the surgical treatment for her gender dysphoria. *Anderson Dep.*, ECF No. 250-11, at 11–12. The proposed class in this class exceeds 600 people annually, as 686 participants in the West Virginia Medicaid Program submitted at least one claim with a diagnosis for gender dysphoria or gender incongruence in 2021. *Defs.' Resp. to Pls.' Second Set of Interrogs.*, ECF No. 250-6, at 5.

The West Virginia Medicaid Program provides a blanket exclusion for "transsexual surgery," stating that such a service is not covered "regardless of medical necessity." *Ex. 23*, ECF No. 250-27, at 5–6. Thus, any transgender Medicaid participant in West Virginia who may be diagnosed with gender dysphoria is barred from coverage for the surgical treatment of this diagnosis.

## STANDARD OF REVIEW

Rule 23(a) of the Federal Rules of Civil Procedure establishes four class certification requirements: (1) a class so numerous that joinder of all members is impracticable; (2) questions of law or fact common to the class; (3) a representative party whose claims and defenses are typical of the class's claims and defenses; and (4) a representative party that will fairly and adequately protect the class's interests. Fed. R. Civ. P. 23(a); *Monroe v. City of Charlottesville*, 579 F.3d 380, 384 (4th Cir. 2009). In addition to these four requirements, a plaintiff must also demonstrate that the proposed class action fits into one of three forms permitted by Rule 23(b). *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 163 (1974).

"Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The plaintiffs seeking certification "must affirmatively demonstrate [their] compliance with the Rule—that is, [they] must be prepared to prove that there are in fact

sufficiently numerous parties, common questions of law or fact, etc." *Id.*; *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (noting that the plaintiff bears the burden of proving it has complied with Rule 23). Nevertheless, "the district court has an independent obligation to perform a 'rigorous analysis' to ensure that all of the prerequisites have been satisfied." *EQT*, 764 F.3d at 358 (quoting *Wal-Mart*, 564 U.S. at 350–51). This "rigorous analysis" may "entail some overlap with the merits of the plaintiff's underlying claim," *Wal-Mart*, 564 U.S. at 351, but courts have been cautioned not to "engage in free-ranging merits inquiries at the certification stage," *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

## DISCUSSION

As a threshold matter, this Circuit requires that, in addition to the explicit requirements of Rule 23, proposed classes must be "readily identifiable." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (quoting *Hammond v. Powell*, 462 F.2d 1053, 1055 (4th Cir. 1972)). This means that "[a] class cannot be certified unless a court can readily identify the class members in reference to objective criteria." *Id.* The goal of this requirement is to avoid "mini-trials" to determine who is or is not a class member. *Id.* (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012)).

While all potential class members have yet to be identified, it does not mean that such class members are not identifiable. *Id.* at 358 ("The plaintiffs need not be able to identify every class member at the time of certification."). Here, the criteria Plaintiffs present are clear. The class is comprised of all transgender people who are or will be enrolled in west Virginia Medicaid and who are seeking or will seek gender-confirming care. Such factors are well documented and easily ascertainable. Thus, while not all class members have been identified, such members can be easily identified.

1. <u>Numerosity</u>

Plaintiffs assert that the size of the class exceeds the numerosity requirement and that joinder of all class members is impracticable. *See* Fed. R. Civ. P. 23(a)(1) (noting that the first requirement for a class action is that "the class is so numerous that joinder of all members is impracticable"). There is no "mechanical test" or minimum class size requirement, but courts have generally found numerosity present when a class has 40 or more members. *Baxley v. Jividen*, 338 F.R.D. 80, 86 (S.D.W. Va. 2020) (citing *Holsey v. Armour & Co.*, 734 F.2d 199, 217 (4th Cir. 1984)). Plaintiffs argue they easily satisfy the numerosity requirement, as their proposed class includes at least 686 Medicaid participants (which filed claims related to gender dysphoria or gender incongruence between January 1 and September 30, 2021). This Court agrees. The joinder of this many plaintiffs would be impracticable, given that all potential plaintiffs are not yet known and reside all over the state of West Virginia. *See Flack v. Wisconsin Dep't of Health Servs.*, 331 F.R.D. 361, 368 (W.D. Wis. 2019) (noting that, in a motion to certify a class challenging the exclusion of gender confirming surgeries in a state Medicaid program, "the proposed class may be too numerous to join in a single lawsuit, especially since some members of the class are not capable of being identified until sometime in the future).

Defendants argue that the characterization of the 686 Medicaid members is not accurate, explaining that, while 686 participants made claims related to a number of gender identity disorders, the number does not necessarily mean that those claims were all related to that particular gender identity diagnosis. Further, not all of those participants necessarily made claims related to gender-confirming care. But Defendants misunderstand the boundaries of the proposed class. Plaintiffs seek to ensure that all transgender Medicaid participants who may experience gender

dysphoria are not precluded from surgical treatment by the current Medicaid exclusion. While all 686 transgender Medicaid participants are not currently seeking surgical care for gender dysphoria, it is <u>only</u> transgender participants that have the potential to receive this diagnosis. The boundaries of this class include all transgender Medicaid participants who may experience gender dysphoria and who may require the surgical treatment of such diagnosis; this includes all 686 identified Medicaid participants and any individual who meets these criteria in the future.

Defendants also argue that the proposed class is unworkable, as it is broadly made up of transgender individuals who seek gender-confirming care, while the determination of whether such individuals would be eligible for this care must be assessed on a case-by-case basis. However, this position mischaracterizes the issue. The exclusion precludes the surgical care categorically—it is a barrier to surgical care altogether. A doctor providing someone an individualized assessment determining whether surgical treatment would be appropriate would not be meaningful when surgical care to treat gender dysphoria is not available to any transgender Medicaid participants. The exclusion precluding coverage for surgical care must be eliminated before such determinations can be made, giving transgender Medicaid participants with gender dysphoria this treatment option.

Thus, the Court finds that Plaintiffs have met the numerosity requirement.

2. <u>Commonality</u>

Plaintiffs argue that commonality is met because each member has suffered the same injury due to exclusion that categorically denies transgender participants coverage for gender-confirming surgical care. Commonality requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Although "[a] single common question will suffice, . . . it must be of such a nature that its determination 'will resolve an issue that is central to the validity of each one of the

claims in one stroke." *EQT*, 764 F.3d at 360 (quoting *Wal-Mart*, 564 U.S. at 350).

The exclusion precludes coverage to all transgender Medicaid participants with gender dysphoria from receiving surgical treatment for that diagnosis. This exclusion applies to every member of the class without exception; it is a barrier for all transgender participants who seek or who may seek this treatment. Defendants argue that the proposed class do not present common questions of law, rather, that the question as to whether a class member may be approved or denied coverage for a surgical treatment of gender dysphoria cannot be answered by this Court in the resolution of this case. But again, Defendants' position misunderstands the nature of the issue. Plaintiffs do not ask this Court to make a determination about whether the individual transgender Medicaid participants with gender dysphoria diagnoses may get surgical treatment. Like Defendants point out, the determination of whether surgical treatment is appropriate is a case-by-case analysis done by a health professional. Plaintiffs merely ask this Court to 1) determine whether the exclusion violates the Constitution, the ACA, and the Medicaid Act, and 2) enjoin Defendants from enforcing the exclusion. *See Baxley*, 338 F.R.D. at 87 (finding that plaintiffs challenged defendants' policies and practices and that such claims were "consistent with common questions presented" by other similar certified jail classes); *see Flack*, 331 F.R.D. at *369 (finding that the lawfulness of the exclusion for gender-confirming surgery was a question common to all members of the proposed class). Only once these issues have been resolved can the individualized determinations regarding the appropriateness of the surgical treatment be take place. These issues are common to all members of the proposed class; thus, the Court finds Plaintiffs have meet the commonality requirement.

3. <u>Typicality of proposed class representatives</u>

Federal Rule 23 requires that "the claims… of the representative parties are typical of the claims… of the class." Fed. R. Civ. P. 23(a)(3). To meet the typicality requirement, the proposed class representatives must show that "the claims or defenses of the class and class representatives arise from the same event or pattern or practice and are based on the same legal theory." *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 238 (S.D.W. Va. 2005) (quotations omitted).

Plaintiffs argue that the proposed class representatives have claims identical to the those of the class they seek to represent, as, like all transgender Medicaid participants, they are denied without exception access to surgical care for gender dysphoria on the basis of sex and transgender status. This Court agrees. The exclusion invidiously discriminates against Plaintiffs as much as it would other members of the class (transgender Medicaid participants who are seeking or may seek surgical treatment for gender dysphoria). The relief sought is identical to other class members—the declaration of the exclusion's unlawfulness and an injunction precluding the enforcement of it. *See Flack*, 331 F.R.D. at 369 (finding that the plaintiffs' claims were identical to those of the other class members, as they arose from the enforcement of the challenged exclusion).

Defendants argue that the claims of each proposed class member are unique and thus are not common. To Defendants, the claims of each proposed class members are actually individualized assessments of whether the participants experience gender dysphoria and whether surgical care is appropriate to treat this diagnosis—a case-by-case determination. Due to the individualized nature of this determination, Defendants also assert that, as a matter of law, they are entitled to assert any individual affirmative defenses. As previously discussed, this mischaracterizes the issue before the Court. The determination of whether surgical care is appropriate for a participant is still individualized. Defendants may still assert affirmative defenses

to demonstrate that a participant was denied care for a lawful reason. Plaintiffs merely ask the Court to preclude Defendants from asserting the exclusion as a reason to deny coverage.

Thus, Plaintiffs have met the typicality requirement.

4. Plaintiffs as representatives

The class representatives must "fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). The counsel representing the class must also be capable of "fairly and adequately" representing the interest of the class. Fed. R. Civ. P. 23(g). This analysis takes into consideration "(1) whether there is conflict between the representatives and class members, and (2) whether the representatives will vigorously prosecute the matter on behalf of the class." *Baxley*, 338 F.R.D. at *89 (internal quotations omitted).

Plaintiffs here are adequate representatives. There are no conflicts of interest between Plaintiffs and the proposed class. Plaintiffs also share a common interest with the proposed class in seeking a declaration that the exclusion is unlawful and seeking an injunction precluding Defendants from enforcing the exclusion. While Defendants argue that Plaintiffs are inadequate because they have not presented any facts that an exclusion for puberty-delaying treatment exists nor have they sought such treatments, this argument again misses the mark. Plaintiffs seek to represent all transgender people who are or will be enrolled in west Virginia Medicaid and who are seeking or will seek gender-confirming care barred by the exclusion. If puberty-confirming care is barred by the exclusion, then Plaintiffs' representation—seeking the declaration of the exclusion's unlawfulness and an injunction against its enforcement—is adequate. If this care is not barred from the exclusion, then such care is not the subject of this matter and the proposed class and Plaintiffs would have equal access to it, as it would not be excluded on the basis of sex and transgender status.

Further, Plaintiffs' proposed class counsel can fairly and adequately represent the proposed class. Plaintiffs have provided ample background on their counsel, Nichols Kaster, Lambda Legal Defense and Education Fund, Inc., and the Employment Law Center. Lambda Legal has extensive experience with civil right and class action litigation, specifically with LGBT issues. *See generally Aff. of Smith-Carrington*, ECF No. 248-4. Nichols Kaster is a top plaintiffs' litigation firm representing many class litigation matters. *See generally Aff. of Schladt*, ECF No. 248-2; *see Ex. A. to Aff. of Schladt*, ECF No 248-3. Walt Auvil, as the sole member of the Employment Law Center, has served as lead counsel on many discrimination cases in state and federal court in West Virginia and has also been lead counsel on class action matters. *See generally Aff. of Walt Auvil*, ECF No. 248-1.

5. The proposed class satisfies the requirements of Rule 23(b)(2)

Rule 23(b)(2) provides that "[a] class action may be maintained if Rule 23(a) is satisfied and if…the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "As the Supreme Court has instructed, '[t]he key to the (b)(2) class is the indivisible nature of the…remedy warranted.'" *EQT Prod. Co.*, 764 F.3d at 357 (citing *Wal-Mart Stores, Inc.*, 564 U.S. at 360). Class certification is appropriate "only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart Stores, Inc.*, 564 U.S. at 360.

Here, certification of the class seems appropriate given that the exclusion applies broadly to all members of the proposed class. A declaratory judgment finding that the exclusion is unlawful and an injunction enjoining Defendants from enforcing the exclusion would be appropriate to the class as a whole. Upon Plaintiffs' successful motion for summary judgment, the

declaratory judgment and injunction sought would provide "meaningful, valuable" and "indivisible" relief to each class member. *Berry v. Schulman*, 807 F.3d 600, 609 (4th Cir. 2015).

The Court finds that certification here is warranted, as the exclusion affects all proposed class members, and the declaratory and injunctive relief sought would benefit all class members. *See Flack*, 331 F.R.D at *370 ("[C]ertification of the Proposed Class is warranted under Rule 23(b)(2) because the categorical coverage ban on gender-confirming care under the Challenged Exclusion is generally applicable to the class, making a final injunction and corresponding declaratory judgment appropriate to the full class." (internal citations omitted)).

## CONCLUSION

For the foregoing reasons, the Court finds that certification of the proposed class is appropriate. Accordingly, the Court **GRANTS** Plaintiffs' Motion for Class Certification. ECF No. 248.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        August 2, 2022

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE